SCOTT N. SCHOOLS (South Carolina Bar No. 9990)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
KATHERINE B. DOWLING (CSBN 220767)
Assistant United States Attorney

   450 Golden Gate Avenue, 9th Floor
   San Francisco, California 94102-3495
   Telephone:   (415) 436-6833
   Facsimile:   (415) 436-6748
   Email:       katherine.dowling@usdoj.gov

Attorneys for Federal Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM LEONARD PICKARD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DEPARTMENT OF JUSTICE, ) <br> ) <br> Defendant. ) <br> ) | C 06-0185 CRB <br><br> **DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In response to this Court's order dated March 30, 2007 to provide further briefing on why a Glomar response was appropriate in light of the documents requested, Defendant provides the following supplemental brief and attached First Supplemental Declaration of William Little ("Little Supp. Decl.") in further support of Defendant's Motion for Summary Judgment filed on August 29, 2006 and attached declaration of Leila Wassom, Defendant's Reply filed on November 27, 2006 and attached Declaration of William Little.

**FACTUAL SUMMARY**

In this FOIA matter, plaintiff William Leonard Pickard is asking that Defendant DEA, a component of the Department of Justice, provide him "access to or copies of information and documents pertaining to DEA informant Skinner." *See* Complaint at ¶ 6. Plaintiff's request which goes on to specify and describe the types of documents he seeks in more detail was

attached to the Wassom Decl. as Exhibit A.  *See* Wassom Decl., Exhibit A.

Plaintiff Pickard is currently in prison at the Federal Correctional Institute Victorville in California, serving concurrent life sentences for conspiracy and possession with intent to distribute 10 grams or more of LSD.[1]  Plaintiff's FOIA request was made on January 25, 2005 to DEA and was ultimately denied on February 11, 2005. *Id.* at Exhibit F. The existence of requested records were neither confirmed or denied. *Id.*  Plaintiff was informed that in order to receive information about third parties it would be necessary for him to provide either proof of death or an original notarized authorization from that third party.  *Id.*  Plaintiff appealed this denial to the Office of Information and Privacy ("OIP") which subsequently affirmed DEA's action on August 8, 2005. *Id.* at Exhibit M.  DEA denied Mr. Pickard's request for records under the Privacy Act, 5 U.S.C. § 552a(j)(2) and (k)(2) and FOIA Exemptions b(6), b(7)(C), b(7)(D) and b(7)(F).

To date Plaintiff still has (1) failed to provide either proof of death or an authorization from Mr. Skinner (to him personally)[2], (2) failed to provide any admissible evidence establishing that DEA officially acknowledged Skinner as a confidential source (3) failed to provide any admissible evidence of DEA misconduct. None of Plaintiff's approximately 300 pages of attachments has been attested or sworn to, therefore it is impossible to assess the authenticity of the vast majority of the documents and this is not admissible evidence to support Plaintiff's arguments. *See* Declaration of William Little ¶ 14.

**ARGUMENT**

**1.    "GLOMAR RESPONSE"?**

---

[1] *See* Complaint ¶ 4 and Plaintiff's website www.freepickard.org.

[2] On May 29, 2007, Plaintiff filed a "Notice of Notarized Authorization to DOJ From Gordon Todd Skinner To Release Records to a Third Party". The alleged notarized form does not authorize release of information to Plaintiff.  Even if legitimate, the form only authorizes release of information to Mr. Skinner's attorney.  Such information would be further protected by the attorney-client privilege.

1   The term "Glomarization" or "Glomar Response" refers to a law enforcement agency's practice of refusing to confirm or deny that it even maintains an investigative record pertaining to a named individual. These terms came into use when "neither confirm nor deny" FOIA principle originated in a national security case involving CIA *Glomar Explorer* submarine-retrieval ship, a case that initially involved highly classified facts. See Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act 26 (Dec. 1987). Under the FOIA this principle can be used when necessary to protect information cognizable under a FOIA exemption, that would be revealed by any other response. *Id.*

In the context of law enforcement records, entities such as DEA, employ the "neither confirm nor deny" principle, in conjunction with Exemption 7(C) when responding to third-party FOIA requests based upon the foundation principle that "disclosure of the mere fact that an individual is mentioned in an agency's law enforcement files carries a stigmatizing connotation, one certainly cognizable under FOIA Exemption 7. *See Fitzgibbons v. CIA*, 911 F. 2d 755, 767 (D.C. Cir. 1990). Because of the inherent sensitivity of the files maintained by law enforcement agencies, any FOIA request received by them for records on a named individual potentially raises a threshold privacy concern. *See United States Department of Justice v. Reporter's Comm. For Freedom of the Press*, 489 U.S. 776 (1989).

A *Glomar* response is not necessary in those cases where it is shown that the individual is deceased or has consented to a requested disclosure or where it is determined that a federal investigation involving the individual is so well known to the public that his or her privacy interest is diminished or that is was conducted under such circumstances that the privacy interest is outweighed by the public interest.  As will be shown below, Plaintiff can not establish any of these factors in an effort to circumvent Glomar.

This Court's Order questions whether the prior DEA declarations are sufficient to establish the use of the *Glomar* response in responding to Pickard's requests based on the standards of the *Military Audit Project*. *See Military Audit Project v. Casey*, 656 F.2d 724 (D.C.Cir. 1981).  The *Military Audit Project* case dealt with the sufficiency of the Government's affidavits to establish the withholding of information requested from the CIA under the FOIA

Defendant's Supplemental Brief
C 06-0185 CRB                                                3

1 Exemptions (b)(1) and (b)(3) and the rationale for the use on neither confirming or denying the
2 existence of any responsive records.

3 What *Military Audit Project* requires is that the Government "affidavits describe the
4 documents and the justifications for nondisclosure with reasonably specific detail, demonstrate
5 that the information withheld logically falls within the claimed exemption, and are not
6 controverted by either contrary evidence in the record nor by evidence of agency bad faith. *Id* at
7 738, citing *Baez v. United States Dep't of Justice*, 647 F.2d 1328 at 1335 (D.C.Cir. 25 Aug.
8 1980); *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 481 (D.C.Cir.1980); *Hayden v.*
9 *National Security Agency/Central Security Serv.*, 608 F.2d 1381, 1386-87 (D.C.Cir.1979), cert.
10 denied, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); *Ray v. Turner*, 587 F.2d 1187,
11 1194-95 (D.C.Cir.1978); *Weissman v. CIA*, 565 F.2d 692, 696-98 (D.C.Cir.1977).

12 Since *Military Audit Project,* several case have been decided that uphold the use of the
13 *Glomar* response in cases related to the application of other FOIA Exemptions.  *See e.g.*
14 *McNamera v. U.S. Dept. Of Justice,* 974 F.Supp 946 (D.C.W.D.Tex 1997).

15 The application of the *Glomar* response was reviewed by the Ninth Circuit in 1992 in
16 *Hunt v. C.I.A.* 981 F.2d 1116 (9th Cir 1992).  The court opined that in evaluating an agencies
17 claim for exemption, the district court was required to accord "substantial weight" to the agencies
18 affidavits. *Id* at 738; citing *Miller v. Casey,* 730 F.2d 773, 776 & 778 (D.C.Cir.1984).  Defendant
19 contends that the declaration submitted by Leila Wassom is substantively no different than
20 declarations previously submitted by DEA in the cases cited above, however, the supplemental
21 declaration of William Little, (referenced *supra,* Little Supp. Decl.) is attached hereto to provide
22 additional information to the Court.

23 The use of the *Glomar* response by DEA has been reviewed on numerous occasions
24 dating back to 1972.  DEA uses "neither confirm or deny" in cases where a requester is seeking
25 information related to a third-party and/or a confidential source.  *See Benavides v. Drug*
26 *Enforcement Admin*. 968 F.2d 1243 (D.C. Cir 1992); *McNamera v. U.S. Dept. Of Justice,* 974
27 F.Supp 946 (D.C.W.D.tex 1997); *Butler v. Drug Enforcement Admin.* No. 05-1798 WL 398653
28 (D.C.D.C. 2006); *Valdez v. U.S. Depart. of Justice*, 474 F.Supp.2d 128 (D.C.D.C. 2007);

Defendant's Supplemental Brief
C 06-0185 CRB                          4

1  *DeGlace v. Drug Enforcement Admin.*, No. 05-2275 WL 521896 (D.C.D.C. 2007.);  *See e.g.*
2  *Gardels v, CIA,* 510 F.Supp 977 (D.C.D.C. 1981).  The practice by DEA of using the *Glomar*
3  response in cases where an individual has requested information related to a third party who is
4  alleged to be a confidential source, was justified, deemed to be appropriate and its use has been
5  the practice since the early 1990s and continues today.  *See Benavides v. Drug Enforcement*
6  *Admin.*, at 752.

7      What the court in *Hunt* required is that the agency affidavits must describe the
8  justifications for nondisclosure with reasonably specific detail, demonstrate that the information
9  withheld logically falls within the claimed exemptions, and show that the justifications are not
10 controverted by contrary evidence in the record or by evidence of bad faith. *Id* at 1119.  The
11 supplemental Little declaration is submitted to supplement the previously filed Wassom
12 declaration in an effort to provide the Court further information along the lines of that outlined in
13 *Hunt*.

14     The DEA's use of the "Glomar" response is based on the Privacy Act, 5 U.S.C. 552a
15 (b)(1) and (j)(2) and (k)(2), and the FOIA Exemption (b)(7)(C) as it relates to a third-party, and
16 (b)(7)(D) as it relates to information that would disclose the identity of and information provided
17 by a confidential source.  The application of FOIA (b)(7)(C) and (b)(7)(D) are distinguishable.
18 *See Davis v. U.S. Dept. Of Justice*, at 410.  Once an individual is established as a confidential
19 source, the application of Exemption (b)(7)(D) is automatic.  *Id.*

20     There are two recent cases decided by the D.C. District Court where the facts are virtually
21 indistinguishable from the case at hand.  First, in the case of *Butler v. DEA*, No. 06-5084 (D.C.
22 Cir. 2006), mandate issued October 3, 2006, granting summary judgment, the court noted it did
23 not a need to consider whether DEA erred by refusing to confirm or deny the existence of
24 records, since right or wrong the refusal deprived the requester of nothing. *Citing Oguagu v.*
25 *U.S.*, 288 F.3d 448, 451 (D.C. Cir 2002) vacated and remanded, 541 U.S. 970, judgment
26 reinstated, 378 F.3d 1115 (D.C. Cir), remanded, 386 F.3d 273 (D.C. Cir 2004).  Second, in
27 *Valdez v. U.S. Department of Justice*, 474 F. Supp.2d 128 (D.C.D.C. 2007), the D.C. District, in
28 granting summary judgment, held that "a Glomar response relieves an agency of its usual

obligation to 'provide detailed affidavits providing that it performed an adequate search for documents.'"

There are several reasons for the use of the Glomar response by DEA, as it relates to confidential sources. One reason is that to confirm that an individual is a source would violate the Privacy Act since it is a release of information contained in a PA system of records, and release is not required by the FOIA (b)(7)(C) and (b)(7)(D). Also, the FOIA, 5 U.S.C. 552(c)(2), specifically states that "[w]henever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant's status as an informant has been officially confirmed."

As stated in the DEA's declarations, denying that a particular individual is a confidential source would allow an individual, through the process of elimination, to narrow the possible individuals who may have been sources and identify the actual source(s). *See* Wassom declaration and Little Suppl. Declaration. To deny would allow Pickard to determine, through multiple FOIA requests, by the process of elimination, who a source may have been in the investigations that resulted in his conviction. *See e.g. Gardels v, CIA,* 510 F.Supp 977 (D.C.D.C. 1981).

It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on "the citizens' right to be informed about 'what their government is up to.' " *Reporters Committee,* 489 U.S. at 773, 109 S.Ct. at 1481 (quoting *EPA v. Mink,* 410 U.S. 73, 105, 93 S.Ct. 827, 845, 35 L.Ed.2d 119 (1973) (Douglas, J., dissenting)); *Painting & Drywall Work Preservation Fund, Inc. v. HUD,* 936 F.2d 1300, 1303 (D.C.Cir.1991). Although Marcello's alleged involvement in organized crime and racketeering activities, as well as his possible role in the Kennedy assassination, are undoubtedly of considerable interest, they "reveal[ ] little or nothing about an agency's own conduct." *Reporters Committee,* 489 U.S. at 773, 109 S.Ct. at 1481. Davis points out that "the Marcello prosecution involved the bribery of public officials." But it did not involve federal government officials, let alone officials " 'of the

1 agency that has possession of the requested records.' " *Burge v. Eastburn,* 934 F.2d 577, 580
2 (5th Cir.1991) (quoting *Reporters Committee,* 489 U.S. at 773, 109 S.Ct. at 1481); *accord*
3 *Landano v. United States Dep't of Justice,* 956 F.2d 422, 430 (3d Cir.1992).

4       In FOIA cases, summary judgment is often entered from a record composed of
5 government affidavits or declarations that explain how requested information falls within a
6 claimed exemption, as long as the affidavits or declarations are sufficiently detailed,
7 nonconclusory, and submitted in good faith, and a plaintiff has no significant basis for
8 questioning their reliability. *The National Security Archive Fund, Inc. v. the Central Intelligence*
9 *Agency,* at 215, citing *Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1978).

10       Furthermore, it is well established that summary judgment on the basis of such agency
11 affidavits is warranted if the affidavits describe the documents and the justifications for
12 nondisclosure with reasonably specific detail, demonstrate that the information withheld logically
13 falls within the claimed exemption, and are not controverted by either contrary evidence in the
14 record nor by evidence of agency bad faith. *See, e. g., Baez v. United States Dep't of Justice*, 647
15 F.2d 1328 at 1335 (D.C.Cir. 25 Aug. 1980); *Lesar v. United States Dep't of Justice*, 636 F.2d
16 472, 481 (D.C.Cir.1980); *Hayden v. National Security Agency/Central Security Serv*., 608 F.2d
17 1381, 1386-87 (D.C.Cir.1979), cert. denied, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790
18 (1980); *Ray v. Turner*, 587 F.2d 1187, 1194-95 (D.C.Cir.1978); *Weissman v. CIA*, 565 F.2d 692,
19 696-98 (D.C.Cir.1977).

20       FOIA was meant to give citizens a window into the workings of their government.  It
21 was not intended to serve as a mechanism for obtaining private information about private
22 individuals. *McNamera v. U.S. Dept. of Justice*, 974 F.Supp 946, 949 (W.D.Tex.1997).  Where a
23 FOIA request is analogous to the one made in *Reporters Committee,* where it is clear that the
24 request will not contribute significantly to public understanding of the operations or activities of
25 the government and seeks law enforcement information on private individuals, the court need not
26 undertake a balancing test or order an *in camera* inspection before it decides that the documents
27 are exempt from disclosure. *Id* at 955.

28

Defendant's Supplemental Brief
C 06-0185 CRB                                          7

## 2. GOVERNMENT MISCONDUCT AS BASIS FOR DISCLOSURE?

Plaintiff contends that alleged government misconduct establishes a public interest that favors disclosure of the information about Skinner that he is requesting over the privacy interest of Mr. Skinner.

The court states in the Order that "Pickard explicitly stated in his request that the purpose of his request was to reveal government misconduct . . .". *See Plaintiff's Complaint for Declaratory and Injunctive Relief Pursuant to the Freedom of information Act*, Exhibit A.

Plaintiff has not made this explicit statement in any of his plaintiff's requests stating that the information was requested to "reveal" government misconduct. In the requests that relate to Gordon Todd Skinner directed to DEA and for which DEA was responsible to process, the plaintiff states that his "request is based solely on **concerns** about government misconduct . . .". (emphasis added). *See* Declaration of Leila I. Wassom dated August 29, 2006, ¶ 31 and Exhibits A and B; Little Supp. Decl. ¶ 28. Plaintiff failed state with any degree of specificity the nature of the alleged misconduct about which he was "concerned." Plaintiff must establish more than a bare suspicion supported by inadmissible "evidence" in order to obtain disclosure. As the Supreme Court held in *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 174, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004), where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred. *Id.*

When governmental misconduct is alleged as the justification for disclosure, the public interest is "insubstantial" unless the requester puts forward "compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and shows that the information sought "is necessary in order to confirm or refute that evidence." *Davis v. U.S. Dept. Of Justice*, 968 F.2d 1276, 1281. (D.C.Cir. 1992) *citing Safecard Servs., Inc. v. SEC,* 926 F.2d at 1205-06 (D.C.Cir. 1991).

Plaintiff's cursory and unsupported allegations of government misconduct do not reach a level sufficient to overcome the substantial privacy interests of Gordon Todd Skinner.

**3.    "OFFICIAL ACKNOWLEDGMENT" AS BASIS FOR DISCLOSURE?**

Plaintiff contends that the DEA has "officially acknowledged" Skinner as an informant and because of this he is entitled to the information about Skinner he is requesting.

In the Order, this Court also asserts that "Pickard filed a second FOIA request for specific documents to which reference was made in a letter from an assistant United States attorney to a defense counsel." However, no such letter was attached to any request for which DEA was responsible. DEA relied on the request addressed to this component of the Department of Justice and received directly or through the Department of Justice, Justice Management Division, FOIA/PA Referral Unit. The letter to which this Court refers was addressed to the Department of Justice, Criminal Division and forwarded to DEA in error. The original request was forwarded on to the Criminal Division for action. *See* Declaration of Leila I. Wassom. Paragraph 11 and Exhibit D.

This letter cannot be the basis for claiming that DEA "officially acknowledged" the status of Gordon Todd Skinner as a confidential source. It is well recognized that the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been "officially acknowledged" or is in the "public domain." *Afshar v. Department of State,* 702 F.2d 1125, 1130-34 (D.C.Cir.1983); *accord Fitzgibbon v. CIA,* 911 F.2d 755, 765-66 (D.C.Cir.1990). To release information otherwise exempt, the information must already have been officially acknowledged. *Fitzgibbon* at 765 (D.C.Cir.1990) (quoting (quoting *Afshar,* 702 F.2d at 1133). *Afshar,* however, established three criteria for an item to be "officially acknowledged":

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed.... Third, ... the information requested must already have been made public through an official and documented disclosure.

*Id.* (citing *Afshar,* 702 F.2d at 1133).

Defendant's Supplemental Brief
C 06-0185 CRB                                                        9

1   However, this is not the case in this instance. Although this Court references a letter from an Assistant U.S. Attorney, the letter is not an acknowledgment by DEA. *See Frugone v. C.I.A.* 169 F.3d 772 (D.C.Cir.1999); *See e.g. Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir.1975). An official acknowledgment from an agency other that the one from which the information is being requested is not sufficient to require release under the FOIA. *Frogone v. CIA,* 169 F.3d 772, 774 (D.C.Cir 1999) *citing Fitzgibon v. CIA*, 911 F.2d 775, 756 (D.C. Cir 1990). In this matter, except for the testimony of Gordon Todd Skinner and the AUSA letter, the plaintiff has failed to show that the specific information he has requested was previously released or that it has been made public. Neither of the above can be considered a public release.

Regardless, the substance of the letter also fails as a basis to show prior release. The letter does not specifically state that Gordon Todd Skinner was a confidential source for DEA. The AUSA merely speaks to "use immunity and derivative use immunity" in the context of the U.S. Marshal Service, Witness Security Program, and does not relate to any prior agreement with DEA as a confidential source. Moreover, this information was apparently submitted in the course of a trial as Defendant's Exhibit P-19. *See* Wassom Declaration, Exhibit D. Information released in discovery or coming out during the course of a trial is not deemed a release to the public. Even when a source testifies in open court, he does not thereby "waive the [government's] right to invoke Exemption 7(D) to withhold ... information furnished by a confidential source not actually revealed in public." *Parker v. Department of Justice,* 934 F.2d 375, 379-80 (D.C.Cir.1991); *See also, Carpenter v. U.S. Dept. Of Justice,* 470 F.3d 434 (1st Cir 2006); *Ferguson v. FBI*, 957 F.2d 1059 (2d Cir 1992).

The government is obliged to disclose only the "exact information" to which the source actually testified. *Dow Jones & Co. v. Department of Justice,* 917 F.2d 571, 577 (D.C.Cir.1990). The party claiming that public disclosure prevents withholding the same information bears the burden of showing that the specific information at issue has been officially disclosed. *James Mason Project v. National Archives,* West Law No. 3129620, (C.A.D.C. 2002)*, citing Afshar v. Dep't of State,* 702 F.2d 1125, 1129 (D.C.Cir.1983). Plaintiff can not and has not met this burden.

Defendant's Supplemental Brief
C 06-0185 CRB                                10

Still, it is established that "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar,* 702 F.2d at 1130.   The ultimate burden of persuasion, to be sure, remains with the government, but a party who asserts that material is publicly available carries the burden of production on that issue.  *See Occidental Petroleum Corp. v. SEC,* 873 F.2d 325, 342 (D.C.Cir.1989): *Davis v. U.S. Dept. Of Justice*, 968 F.2d 1276, 1279 (D.C.Cir. 1992).

Defendant has established that no such official acknowledgment has occurred. Little Supp. Decl. ¶ 31.  A search of the world-wide-web as well as a search of DEA Headquarters and San Francisco Public Affairs offices revealed no such press releases.  *Id.*  Plaintiff failed to provide sufficient or admissible evidence that Skinner was officially acknowledged.

**CONCLUSION**

Disclosure of Mr. Skinner's information, to the extent any exists, would be a significant invasion of his personal privacy.  Pickard has not presented evidence of government wrongdoing sufficient to raise the argument of disclosure for the public interest, he has not presented any evidence that Mr. Skinner is deceased or has authorized Pickard to receive this information and he has not presented any evidence that DEA has officially acknowledged Mr. Sinner as a confidential source such that his privacy interest is sufficiently diminished.  On balance the privacy interests of the individual, especially in the context of law enforcement records, outweighs any interest in disclosure.  Accordingly, DEA should be granted summary judgment.

DATED: May 30, 2007

Respectfully submitted,
SCOTT N. SCHOOLS
United States Attorney


_____/s/_____
KATHERINE B. DOWLING
Assistant United States Attorney

Defendant's Supplemental Brief
C 06-0185 CRB                            11