MELINDA HAAG (CABN 132612)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
NEILL T. TSENG (CSBN 220348)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7155
    FAX: (415) 436-6927
    neill.tseng@usdoj.gov

Attorneys for Defendant
UNITED STATES DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM PICKARD,<br><br>              Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>             Defendant. | C 06-00185 CRB<br><br>**DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT**<br><br>Date: July 13, 2012<br>Time: 10:00 a.m.<br>Place: Courtroom 6, 17th Floor, 450 Golden Gate Ave, San Francisco, California<br><br>Honorable Charles R. Breyer |

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that defendant U.S. Customs and Border Protection will move this court on July 13, 2012, at 10:00 a.m. in Courtroom 6, 17th Floor, United States Federal Building, 450 Golden Gate Ave., San Francisco, California, before the Honorable Charles R. Breyer, United States District Judge, for an order granting summary judgment in favor of defendant United States Department of Justice and against plaintiff William Pickard. The motion is based on this notice, the memorandum of points and authorities, all the matters of record filed with the court, and such other evidence as may be submitted.

**STATEMENT OF RELIEF**

Defendant United States Department of Justice moves for an order granting summary judgment in its favor and against plaintiff William Pickard ("plaintiff" or "Pickard").

**ISSUE TO BE DECIDED**

Did the Drug Enforcement Administration ("DEA"), a component of defendant United States Department of Justice, properly withhold the requested documents under applicable FOIA exemptions?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION.**

Plaintiff, a convicted criminal serving life imprisonment, made a FOIA request to the DEA for information pertaining to a third party, Gordon Todd Skinner. This Court granted summary judgment for the DEA based on a Glomar response. The Ninth Circuit reversed and remanded, holding that the Glomar response was inappropriate. Summary judgment should be granted once again, this time on the ground that the requested documents were properly withheld under applicable FOIA exemptions.

**II.   STATEMENT OF FACTS.**

Plaintiff is a federal prisoner at the U.S. Penitentiary in Tucson, Arizona. Doc. #110. He was convicted in the District of Kansas in 2003 of offenses relating to LSD and was sentenced to life in prison. United States v. Apperson, 441 F.3d 1162, 1175 (10th Cir. 2006).

The Court previously summarized the facts pertaining to the FOIA request at issue in this

case as follows:

> On January 25, 2005, plaintiff submitted a request for information to the DEA, a component of the United States Department of Justice, for "information and documents pertaining to DEA informant Skinner." Plaintiff specifically sought any information on Skinner's criminal history (including records of arrests, convictions, warrants, or other pending cases), records of all case names, numbers, and judicial districts where he testified under oath, records of all monies paid in his capacity as a federal government informant, all records of instances where the DEA intervened on his behalf to assist him in avoiding criminal prosecution, all records of administrative sanctions imposed for dishonesty, false claims, or other deceit, all records of any benefits of any nature conferred, all records of deactivation as a confidential informant and the reasons for deactivation, and all records concerning Skinner's participation in criminal investigations.
>
> On February 11, 2005, the DEA denied plaintiff's request. Citing FOIA Exemptions 6 and 7(C), and without confirming or denying the existence of any records relating to Skinner, the DEA advised plaintiff that he would have to provide either proof of death or an original notarized authorization (privacy waiver) from Skinner before any information would be released. Plaintiff appealed to the Office of Information and Privacy ("OIP").
>
> On August 8, 2005, the OIP upheld the DEA's response. The instant FOIA court action followed.
>
> After the court reviewed the complaint and ordered it served, the DEA moved for summary judgment arguing that the Privacy Act, 5 U.S.C. § 552a, subsections (j)(2) and (k)(2), and FOIA Exemptions 6 and 7(C), (D) and (F), applied to plaintiff's request. The court denied the motion without prejudice, noting that the DEA had not adequately justified its response to the request.
>
> The DEA again moved for summary judgment, this time fully briefing why a "Glomar" response (i.e., the practice of refusing to confirm or deny the existence of records pertaining to a named individual) was appropriate to plaintiff's request and attaching a detailed declaration in support of its response. Plaintiff filed an opposition, as well as numerous unsolicited documents and miscellaneous requests, and the DEA filed a reply.

Doc. #108 at 1:23-s:26.

This Court granted the DEA's second motion for summary judgment on February 11, 2008, stating, "The DEA has adequately justified its decision neither to confirm nor deny the existence of responsive records pertaining to Skinner." Id. at 10:12-13. Plaintiff then appealed to the Ninth Circuit. Doc. #112. The Ninth Circuit reversed and remanded on July 27, 2011, holding that the Glomar response was inappropriate. See Pickard v. Dep't of Justice, 653 F.3d 782 (9th Cir. 2011). The Ninth Circuit stated that the DEA "must proceed to the next step—provide an index of the documents it has and make whatever additional objections to

disclosure it deems appropriate." Id. at 784.  However, the Ninth Circuit expressly stated that the DEA was not necessarily required to produce any of the requested documents:

> This is not to say that the DEA is now required to disclose any of the particular information requested by Pickard.  We must maintain equipoise between the public's interest in knowing "what [its] government is up to" and the "legitimate governmental and private interests" in withholding documents subject to otherwise valid FOIA exemptions.

Id. at 788 (citations omitted).

### III.   LEGAL STANDARD.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.

### IV.   ARGUMENT.

#### A.   Legal Framework.

"FOIA was enacted to facilitate public access to Government documents." Lahr v. Nat'l Transp. Safety Board, 569 F.3d 964, 973 (9th Cir. 2009) (internal quotation marks and citation omitted).  "At the same time, FOIA contemplates that some information may legitimately be kept from the public.  The statute contains nine enumerated exemptions allowing the government to withhold documents or portions of documents." Id. (citing 5 U.S.C. § 552(b)(1)-(9)).

"The Court reviews the government's withholding of agency records de novo, and the government bears the burden of justifying non-disclosure." Asian Law Caucus v. U.S. Dep't of Homeland Sec., No. C 08-00842 CW, 2008 WL 5047839, at *3 (N.D. Cal. Nov. 24, 2008) (citing 5 U.S.C. § 552(a)(4)(B)).  "The agency may meet its burden by submitting a detailed affidavit showing that the information logically falls within one of the claimed exemptions," but "may not rely upon conclusory and generalized allegations of exemptions." Asian Law Caucus, 2008 WL 5047839, at #3 (internal quotation marks and citations omitted).  The Court is to

1  "accord substantial weight to an agency's declarations regarding the application of a FOIA
2  exemption." Shannahan v. IRS, – F.3d –, 2012 WL 807096, at *5 (9th Cir. Mar. 13, 2012)
3  (citation omitted). "If the affidavits contain reasonably detailed descriptions of the documents
4  and allege facts sufficient to establish an exemption, the district court need look no further."
5  Lane v. Dep't of the Interior, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (internal quotation marks
6  and citation omitted).

    **B.    Exemption 2.**

8  The DEA applied Exemption 2 to withhold internal DEA telephone numbers. Third
9  Supp. Decl. of William C. Little, Jr. ("Third Supp. Little Decl.") ¶ 34. FOIA Exemption 2
10 "shields from compelled disclosure documents 'related solely to the internal personnel rules and
11 practices of an agency.'" Milner v. Dep't of the Navy, - U.S. -, 131 S. Ct. 1259, 1262 (Mar. 7,
12 2011) (quoting 5 U.S.C. § 552(b)(2)). "An agency's 'personnel rules and practices' are its rules
13 and practices dealing with employee relations or human resources." Id. at 1265. Previously,
14 courts had carved out what were referred to as the "Low 2" exemption, "when discussing
15 materials concerning human resources and employee relations," and the "High 2" exemption,
16 "when assessing records whose disclosure would risk circumvention of the law." Id. at 1263
17 (citations omitted). In Milner, the Supreme Court overruled this dichotomy and made clear "that
18 Low 2 is all of 2 (and that High 2 is not 2 at all)." Id. at 1265 (internal citation omitted). The
19 Supreme Court held that "Exemption 2 . . . encompasses only records relating to issues of
20 employee relations and human resources." Id. at 1271.

21 Information was protected under "Low 2" if (1) the information was used for
22 predominantly internal purposes, and (2) the material related to trivial administrative matters of
23 no genuine public interest. See Coleman v. Lappin, 607 F. Supp. 2d 15, 21 (D.D.C. 2009)
24 (citations omitted). "Internal agency telephone numbers routinely are withheld under Exemption
25 2." Coleman, 607 F. Supp. 2d at 21 (citing cases). Thus, the court in Coleman held, "The
26 [Bureau of Prisons]'s decision to withhold fax and extension numbers as 'low 2' exempt
27 information is proper." Id. Similarly, this court in Odle v. Dep't of Justice, No. C 05-2711
28 MMC, 2006 WL 1344813, at *13 (N.D. Cal. May 17, 2006), held that "Defendants' reliance on

DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT
C 06-00185 CRB                           5

Exemption 2 as providing an additional basis for withholding various internal telephone numbers and codes from said documents likewise was appropriate."

Likewise here, the DEA's withholding of internal telephone numbers under Exemption 2 was proper. First, the numbers are used for predominantly internal purposes. See Third Supp. Little Decl. ¶ 34 ("These numbers are assigned as a personnel practice to individuals that are employed at DEA."). Second, the numbers relate to trivial administrative matters of no genuine public interest. As the Little declaration explains, "There is no public interest in the release of the telephone numbers. Release of the telephone numbers could enable violators to identify law enforcement personnel and interfere with DEA operations." Id. Release of the telephone numbers could also enable violators to "disrupt official DEA business, subject DEA employees to harassing phone calls and cause interference with the DEA internal communications network." Id. ¶ 35.

    C.     **Exemptions 7(C), 7(D), 7(E) and 7(F).**

          1.     **The Threshold Requirement of Exemption 7 Is Met Because The Documents At Issue Were Investigatory Records Compiled For Law Enforcement Purposes.**

DEA properly withheld information pursuant to FOIA Exemptions 7(C), 7(D), 7(E) and 7(F), 5 U.S.C. § 552(b)(7)(C) - (F). "[J]udicial review of an asserted Exemption 7 privilege requires a two-part inquiry. First, a requested document must be shown to have been an investigatory record 'compiled for law enforcement purposes.' If so, the agency must demonstrate that release of the material would have one of the six results specified in the Act." FBI v. Abramson, 456 U.S. 615, 622 (1982) (footnote omitted).

The first part of the inquiry is met. When, as here, an agency "has a clear law enforcement mandate," its "burden for satisfying the threshold requirement of exemption 7 is easier to satisfy than the burden for other requirements." Rosenfeld v. United States Dep't of Justice, 57 F.3d 803, 808 (9th Cir. 1995). It cannot reasonably be disputed that the DEA has a law enforcement mandate. The DEA "performs as its principal function activity pertaining to the enforcement of criminal laws, specifically those activities related to the illicit trafficking in controlled substances and chemicals." Third Supp. Little Decl. ¶ 2.

When, as here, the agency "has a clear law enforcement mandate," it "need only establish a 'rational nexus' between enforcement of a federal law and the document for which an exemption is claimed." Church of Scientology of Cal. v. U.S. Dep't of the Army, 611 F.2d 738, 748 (9th Cir. 1979) (citation omitted). The Little declaration satisfies this low bar, explaining in detail the DEA's systems of records, the various information contained in those records, and that any responsive records would have been criminal investigative records. Third Supp. Little Decl.¶¶ 6-9, 13-32. Additionally, the Vaughn index describes each record withheld on an individual basis to state the material withheld and the applicable exemptions. See id., Ex. A.

The second part of the inquiry concerns whether disclosure would cause one or more of the six delineated harms. It would for the reasons discussed below.

### 2. Exemption 7(C).

Exemption 7(C) applies when the production of records compiled for law enforcement purposes "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); Taylor v. U.S. Dep't of Justice, 257 F. Supp. 2d 101, 113 (D.D.C. 2003) (citation omitted). In applying exemption 7(C), the court must balance the public interest in disclosure against the privacy interest of the third parties involved. Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 7676 (1989).

#### a. The Third Parties' Privacy Interest Is Substantial.

"[T]he Supreme Court has emphasized that 'the concept of personal privacy under Exemption 7(C) is not some limited or cramped notion of that idea.'" Lahr, 569 F.3d at 974 (citing Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 165 (2004)). "Instead, personal privacy interests encompass a broad range of concerns relating to an 'individual's control of information concerning his or her person,' Reporters Comm., 489 U.S. at 763, and an 'interest in keeping personal facts away from the public eye.'" Lahr, 569 F.3d at 974 (citing Reporters Comm., 489 U.S. at 769). "The Supreme Court has broadly interpreted the personal privacy interests protected by Exemption 7(C)." North v. United States Dep't of Justice, 658 F. Supp. 2d 163, 172 (D.D.C. 2009) (footnote and citations omitted).

Exemption 7(C) protects the privacy interest of various third parties identified in the

withheld records, including DEA Special Agents, DEA laboratory personnel, other Federal, state or local law enforcement officers and personnel, other government employees, suspects, co-defendants, witnesses, potential witnesses, and confidential sources.  Third Supp. Little Decl. ¶¶ 38-43. "Many of the documents requested contain names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the Gordon Todd Skinner or with a law enforcement investigation." Third Supp. Little Decl. ¶ 38.  "[T]he release of such information can have a potentially stigmatizing or embarrassing effect on the individual and cause them to be subjected to unnecessary public scrutiny and scorn."  Third Supp. Little Decl. ¶ 38.  The third parties could also suffer undue invasions of privacy, harassment and humiliation.  Third Supp. Little Decl. ¶¶ 41-43.

These third parties' privacy interest is "substantial."  Fitzgibbon v. Central Intellig. Agency, 911 F.2d 755, 767 (D.C. Cir. 1990) ("persons involved in FBI investigations – even if they are not the subject of the investigation – have a substantial interest in seeing that their participation remains secret") (internal quotation marks and citation omitted).  "It is surely beyond dispute that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." Id. (internal quotation marks and citation omitted).  "Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." Id. (internal quotation marks and citation omitted); accord Schiffer v. Federal Bur. of Investigation, 78 F.3d 1405, 1410 (9th Cir. 1996).

The privacy interest is not diminished even if some informant activities may already be known.  See Lane v. Department of the Interior, 523 F.3d 1128, 1137 (9th Cir. 2008) ("That the public may be aware of the allegations against Antonich does not lessen his privacy interest, because notions of privacy in the FOIA exemption context encompass information already revealed to the public.") (citing Reporters Comm., 489 U.S. at 770); Schiffer, 78 F.3d at 1411 ("'The fact that 'an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information.'") (citing Reporters Comm., 489 U.S.

at 770).  That is true even if a witness testified publicly at trial.  See North, 658 F. Supp. 2d at 172 ("The fact that a witness testifies publicly at trial does not diminish or waive his privacy interest.").

                **b.**        **The Public Interest Is Nonexistent and Does Not Outweigh the Substantial Private Interest.**

Plaintiff did not provide proof of death or a written authorization of release to overcome the privacy interest of any third party.  Third Supp. Little Decl. ¶¶ 12.  Nor did plaintiff provide any facts to show any cognizable public interest that would outweigh the privacy interests of the third parties. Third Supp. Little Decl. ¶ 39.  The DEA determined the public interest in disclosure and balanced it against the nature of the privacy interest for each piece of information.  Third Supp. Little Decl. ¶ 40.  It determined that there was "no legitimate public interest in the information withheld under exemption (b)(7)(C), and release of any information about a third-party would constitute an unwarranted invasion of that third-party's personal privacy."  Third Supp. Little Decl. ¶ 40.

"It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" Davis, 968 F.2d at 1282 (quoting Reporters Comm., 489 U.S. at 773; second set of internal quotation marks and citations omitted).  'The asserted public interest in disclosure must be 'a significant one' and 'more specific than having the information for its own sake.'"  North, 658 F. Supp. 2d at 172 (citing National Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004)).  "[I]t is clear that the public's interest in disclosure is not furthered by disclosure of information about individuals that is accumulated in governmental files but that reveals little or nothing about an agency's own conduct." Taylor, 257 F. Supp. 2d at 114 (internal quotation marks, ellipses and citation omitted).

To the extent plaintiff asserts a public interest in showing improper official conduct, he fails to meet the required showing.  Plaintiff must "establish more than a bare suspicion in order to obtain disclosure.  Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  Favish, 541

DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT
C 06-00185 CRB                                        9

U.S. at 174.  "Allegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing."  Id. at 175 (internal quotation marks and citation omitted).  In his FOIA request, Pickard vaguely alluded to "concerns about government misconduct" but did not provide any details or supporting evidence.  Doc. #25, Ex. A at 2.  Plaintiff "provided no facts to show any public interest for which any potential public interest would outweigh the privacy interests of the individuals."  Third Supp. Little Decl. ¶ 46.  Plaintiff's evidence, or lack thereof, falls far short of the "meaningful evidentiary showing" required.  Favish, 541 U.S. at 174.  As such, the public interest is nonexistent or negligible.  See Hunt v. Federal Bur. of Investigation, 972 F.2d 286, 289-90 (9th Cir. 1992) (holding that the public interest was negligible when there was no evidence of government wrongdoing).

   Ultimately, Pickard's assertion of a "public interest" is nothing more than a smokescreen.  His interest in the requested information pertaining to Skinner is purely selfish and personal, as he hopes to obtain information he can use to launch more collateral attacks on his conviction or life sentence.   Pickard already filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, as well as numerous other motions, after the Tenth Circuit affirmed his conviction and sentence.  See United States v. Pickard, 2009 U.S. Dist. LEXIS 30306 (D. Kan. Apr. 6, 2009).  All of the motions were denied.  See id. at *57.  Plaintiff now seeks, through at least two FOIA requests to the DEA (the subject request and a request being litigated in the District of Arizona[1]) to obtain more information for his personal use.

   This personal interest does not qualify as a public interest for purposes of Exemption 7(C).  See Clay v. United States Dep't of Justice, 680 F. Supp. 2d 239, 249 (D.D.C. 2010) ( "any personal interest the plaintiff may have in the withheld material does not qualify as a public interest favoring disclosure under FOIA exemption 7(C).") (footnote and citations omitted).  Directly on point, plaintiff's "personal stake in obtaining documents in order to attack his conviction 'does not count in the calculation of the public interest.'"  North, 658 F. Supp. 2d at 172 (citation omitted).  Given the lack of any public interest, nondisclosure is justified.  See

---

[1] See Pickard v. Dep't of Justice, No. CV-11-443-TUC-DCB (D. Ariz.).

DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT
C 06-00185 CRB         10

Davis v. United States Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) ("But even if a particular privacy interest is minor, nondisclosure remains justified where, as here, the public interest in disclosure is virtually nonexistent."). Records of the kind Pickard seeks, such as Skinner's "criminal history," Third Supp. Little Decl. ¶ 5; see also Doc. #25, Ex. A at 1, "are precisely the sort of documents that have routinely been held to be protected from disclosure under Exemption 7(C)." Taylor, 257 F. Supp. 2d at 113 (citing Reporters Comm., 489 U.S. at 762-63; subsequent citations omitted).

Finally, the public interest would actually be harmed by disclosure of the withheld material. "It is in the public interest not to disclose the identity of special agents so that they may continue to effectively pursue their undercover and investigative assignments." Jimenez v. F.B.I., 938 F.Supp. 21, 31 (D.D.C. 1996); see also Third Supp. Little Decl. ¶ 56. "Public disclosure of the identities of investigatory and other personnel, as well as confidential sources of information, would have a detrimental effect on the successful operation of DEA, as well as risk harassment and danger to special agents, other law enforcement personnel, and confidential sources of information." Id. ¶ 57.

### 3. Exemption 7(D).

Exemption 7(D), in pertinent part, exempts from disclosure records or information compiled for law enforcement purposes if they "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). If those requirements are met, then "the application of Exemption 7(D) is automatic." Davis, 968 F.2d at 1281.

"[A] source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" United States Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993) (citation omitted). Confidentiality does not require "total secrecy. A source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary

for law enforcement purposes." Id. at 174. Just because an individual's identity may have become well-known does not mean he was not a confidential source. See Davis, 968 F.2d at 1281 ("And although he asserts that the informant's identity is 'well-known,' Davis does not dispute that the informant was a 'confidential source.'").

Here, the material withheld under Exemption 7(D) pertains to confidential sources, who are not limited to Skinner, and the information they provided. Third Supp. Little Decl. ¶¶ 44-47. This can also be seen in the description of the documents in the Vaughn index. See id., Ex. A. "Sources of information include those to whom express confidentiality was granted and those about whom, based upon the facts and circumstances, confidentiality could be implied." Third Supp. Little Decl. ¶ 45. Because the documents at issue could reasonably be expected to disclose the identity of, or information furnished by, a confidential source, Exemption 7(D) automatically applies.

### 4. Exemption 7(E).

Exemption 7(E) applies to

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7).

As seen from the statutory text, Exemption 7(E) contains two clauses: the first pertaining to techniques and procedures, and the second pertaining to guidelines. Some courts hold that the first clause "provides categorical protection for techniques and procedures used in law enforcement investigations or prosecutions" and "requires no demonstration of harm or balancing of interests." Keys v. Department of Homeland Sec., 510 F. Supp.2d 121, 129 (D.D.C. 2007) (internal quotation marks, citations and brackets omitted). Other courts disagree and hold that the phrase "could reasonably be expected to risk circumvention of the law" applies to both the first and second clauses. See Asian Law Caucus, 2008 WL 5047839, at *3 (collecting cases on both sides). "The Ninth Circuit has not squarely addressed the issue." Id. However, the Second

Circuit more recently conducted a detailed examination of this issue and concluded that the "risk circumvention of the law" requirement applies only to the second clause, not to the first clause. See Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec., 626 F.3d 678, 681 (2d Cir. 2010). The Second Circuit concluded that this reading was unambiguous from "the plain meaning of the statute's text and structure," applying "basic rules of grammar and punctuation." Id. The Second Circuit further noted that this reading was supported by the legislative history of the statute's amendments. Id.

Regardless of the reading applied, Exemption 7(E) pertains to the information at bar because the information, if released, would disclose "[l]ongstanding, successfully proven enforcement techniques, practice, procedures and methods that are not commonly known to the public." Third Supp. Little Decl. ¶ 48. "In the instant case, any release of the technique would compromise its integrity and assist violators in evading detection and apprehension." Id. ¶ 49. In particular, "many of the pages in this case contain 'violator identifiers' consisting of G-DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and confidential informant numbers. The G-DEP, NADDIS, and confidential informant numbers are part of DEA's internal system of identifying information and individuals." Id. ¶ 50. The Little declaration explains in detail what each of these identifiers is and how disclosure of each identifier would risk circumvention of the law by helping suspects change their pattern of drug trafficking, avoid detection and apprehension, and/or create excuses for suspected activities. See id. ¶¶ 50-53. When, as here, an affidavit "provides detailed assertions why disclosure of the requested information would present a serious threat to future law enforcement . . . investigations," then the agency "has satisfied its burden of showing that exemption 7(E) was properly applied." Bowen v. U.S. Food & Drug Admin., 925 F.2d 1225, 1229 (9th Cir. 1991).

### 5. Exemption 7(F).

Exemption 7(F) exempts records or information compiled for law enforcement purposes if their production "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Exemption 7(F) may be used to withhold the names of DEA special agents and other law enforcement officers. See Amro v. U.S. Customs Serv.,128

F.Supp.2d 776, 789 (E.D.Pa. 2001); Jimenez, 938 F.Supp. at 31.  However, the exemption is not limited to law enforcement personnel.  "'While courts generally have applied Exemption 7(F) to protect law enforcement personnel or other specified third parties, by its terms, the exemption is not so limited; it may be invoked to protect 'any individual' reasonably at risk of harm.'" Amuso v. U.S. Dept. of Justice, 600 F. Supp. 2d 78, 101 (D.D.C. 2009) (citation omitted).  Specifically, the exemption may be used to protect confidential informants and cooperating witnesses.  See id. at 102.  "Within limits, the Court defers to the agency's assessment of danger."  Id. at 101 (citation omitted).

Here, the exemption "is employed to withhold the names of DEA Special Agents, Supervisory Special Agents and other Federal, state and local law enforcement personnel, and confidential sources."  Third Supp. Little Decl. ¶ 54.  "It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents.  It may, therefore, reasonably be anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations."  Id.  Consequently, exemption 7(F) applies.  See Butler v. U.S. Dept. of Justice, 368 F.Supp.2d 776, 786 (E.D. Mich. 2005) ("The Court agrees that the DEA could withhold documents from Plaintiff where disclosing the documents could endanger DEA agents and individuals who provided information to the DEA.").

V.     CONCLUSION.

For the foregoing reasons, the court should grant defendant United States Department of Justice's third motion for summary judgment.

Respectfully submitted,

MELINDA HAAG
United States Attorney

DATED: March 30, 2012          By:            /s/
                                      NEILL T. TSENG
                                      Assistant United States Attorney
                                      Attorneys for Defendant