MELINDA HAAG (CABN 132612)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
NEILL T. TSENG (CSBN 220348)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7155
FAX: (415) 436-6927
neill.tseng@usdoj.gov

Attorneys for Defendant
UNITED STATES DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

WILLIAM PICKARD,
Plaintiff,
v.
UNITED STATES DEPARTMENT OF JUSTICE,
Defendat.

C 06-00185 CRB

**[PROPOSED] ORDER GRANTING DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION.

Plaintiff, a federal prisoner serving life imprisonment, seeks enforcement of his Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), request to the Drug Enforcement Administration ("DEA") for records pertaining to Gordon Todd Skinner. For the reasons below, defendant's third motion for summary judgment will be granted.

## II. STATEMENT OF FACTS.

Plaintiff is a federal prisoner at the U.S. Penitentiary in Tucson, Arizona. Doc. #110. He was convicted in the District of Kansas in 2003 of offenses relating to LSD and was sentenced to life in prison. United States v. Apperson, 441 F.3d 1162, 1175 (10th Cir. 2006).

On January 25, 2005, plaintiff submitted a request for information to the DEA, a component of the United States Department of Justice, for "information and documents

pertaining to DEA informant Skinner." Plaintiff specifically sought any information on Skinner's criminal history (including records of arrests, convictions, warrants, or other pending cases), records of all case names, numbers, and judicial districts where he testified under oath, records of all monies paid in his capacity as a federal government informant, all records of instances where the DEA intervened on his behalf to assist him in avoiding criminal prosecution, all records of administrative sanctions imposed for dishonesty, false claims, or other deceit, all records of any benefits of any nature conferred, all records of deactivation as a confidential informant and the reasons for deactivation, and all records concerning Skinner's participation in criminal investigations.

On February 11, 2005, the DEA denied plaintiff's request. Citing FOIA Exemptions 6 and 7(C), and without confirming or denying the existence of any records relating to Skinner, the DEA advised plaintiff that he would have to provide either proof of death or an original notarized authorization (privacy waiver) from Skinner before any information would be released. Plaintiff appealed to the Office of Information and Privacy ("OIP").

On August 8, 2005, the OIP upheld the DEA's response. The instant FOIA court action followed.

After the court reviewed the complaint and ordered it served, the DEA moved for summary judgment arguing that the Privacy Act, 5 U.S.C. § 552a, subsections (j)(2) and (k)(2), and FOIA Exemptions 6 and 7(C), (D) and (F), applied to plaintiff's request. The court denied the motion without prejudice, noting that the DEA had not adequately justified its response to the request.

The DEA again moved for summary judgment, this time fully briefing why a "Glomar" response (i.e., the practice of refusing to confirm or deny the existence of records pertaining to a named individual) was appropriate to plaintiff's request and attaching a detailed declaration in support of its response. Plaintiff filed an opposition, as well as numerous unsolicited documents and miscellaneous requests, and the DEA filed a reply.

This Court granted the DEA's second motion for summary judgment on February 11, 2008, stating, "The DEA has adequately justified its decision neither to confirm nor deny the

existence of responsive records pertaining to Skinner." Id. at 10:12-13. Plaintiff then appealed to the Ninth Circuit. Doc. #112. The Ninth Circuit reversed and remanded on July 27, 2011, holding that the Glomar response was inappropriate. See Pickard v. Dep't of Justice, 653 F.3d 782 (9th Cir. 2011). The Ninth Circuit stated that the DEA "must proceed to the next step—provide an index of the documents it has and make whatever additional objections to disclosure it deems appropriate." Id. at 784.

## III. LEGAL STANDARD.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323.

In a FOIA case, "[t]he Court reviews the government's withholding of agency records de novo, and the government bears the burden of justifying non-disclosure." Asian Law Caucus v. U.S. Dep't of Homeland Sec., No. C 08-00842 CW, 2008 WL 5047839, at *3 (N.D. Cal. Nov. 24, 2008) (citing 5 U.S.C. § 552(a)(4)(B)). "The agency may meet its burden by submitting a detailed affidavit showing that the information logically falls within one of the claimed exemptions," but "may not rely upon conclusory and generalized allegations of exemptions." Asian Law Caucus, 2008 WL 5047839, at #3 (internal quotation marks and citations omitted). The Court is to "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." Shannahan v. IRS, – F.3d –, 2012 WL 807096, at *5 (9th Cir. Mar. 13, 2012) (citation omitted). "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." Lane v. Dep't of the Interior, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (internal quotation marks and citation omitted).

## IV. DISCUSSION.

**A. Exemption 2.**

The DEA applied Exemption 2 to withhold internal DEA telephone numbers. Third Supp. Decl. of William C. Little, Jr. ("Third Supp. Little Decl.") ¶ 34. FOIA Exemption 2 "shields from compelled disclosure documents 'related solely to the internal personnel rules and practices of an agency.'" Milner v. Dep't of the Navy, - U.S. -, 131 S. Ct. 1259, 1262 (Mar. 7, 2011) (quoting 5 U.S.C. § 552(b)(2)). "An agency's 'personnel rules and practices' are its rules and practices dealing with employee relations or human resources." Id. at 1265. Previously, courts had carved out what were referred to as the "Low 2" exemption, "when discussing materials concerning human resources and employee relations," and the "High 2" exemption, "when assessing records whose disclosure would risk circumvention of the law." Id. at 1263 (citations omitted). In Milner, the Supreme Court overruled this dichotomy and made clear "that Low 2 is all of 2 (and that High 2 is not 2 at all)." Id. at 1265 (internal citation omitted). "Exemption 2 . . . encompasses only records relating to issues of employee relations and human resources." Id. at 1271.

Information was protected under "Low 2" if (1) the information was used for predominantly internal purposes, and (2) the material related to trivial administrative matters of no genuine public interest. See Coleman v. Lappin, 607 F. Supp. 2d 15, 21 (D.D.C. 2009) (citations omitted). "Internal agency telephone numbers routinely are withheld under Exemption 2." Id. at 21 (citing cases); see also Odle v. Dep't of Justice, No. C 05-2711 MMC, 2006 WL 1344813, at *13 (N.D. Cal. May 17, 2006) ("Defendants' reliance on Exemption 2 as providing an additional basis for withholding various internal telephone numbers and codes from said documents likewise was appropriate.").

The DEA's withholding of internal telephone numbers under Exemption 2 was proper. First, the numbers are used for predominantly internal purposes. See Third Supp. Little Decl. ¶ 34 ("These numbers are assigned as a personnel practice to individuals that are employed at DEA."). Second, the numbers relate to trivial administrative matters of no genuine public interest. As the Little declaration explains, "There is no public interest in the release of the telephone numbers. Release of the telephone numbers could enable violators to identify law

enforcement personnel and interfere with DEA operations." Id. Release of the telephone numbers could also enable violators to "disrupt official DEA business, subject DEA employees to harassing phone calls and cause interference with the DEA internal communications network." Id. ¶ 35.

**B. Exemptions 7(C), 7(D), 7(E) and 7(F).**

**1. The Threshold Requirement of Exemption 7.**

The DEA properly withheld information pursuant to FOIA Exemptions 7(C), 7(D), 7(E) and 7(F), 5 U.S.C. § 552(b)(7)(C) - (F). "[J]udicial review of an asserted Exemption 7 privilege requires a two-part inquiry. First, a requested document must be shown to have been an investigatory record 'compiled for law enforcement purposes.' If so, the agency must demonstrate that release of the material would have one of the six results specified in the Act." FBI v. Abramson, 456 U.S. 615, 622 (1982) (footnote omitted).

The first part of the inquiry is met. When, as here, the agency "has a clear law enforcement mandate," it "need only establish a 'rational nexus' between enforcement of a federal law and the document for which an exemption is claimed." Church of Scientology of Cal. v. U.S. Dep't of the Army, 611 F.2d 738, 748 (9th Cir. 1979) (citation omitted). The DEA has a clear law enforcement mandate, as it "performs as its principal function activity pertaining to the enforcement of criminal laws, specifically those activities related to the illicit trafficking in controlled substances and chemicals." Third Supp. Little Decl. ¶ 2. The Little declaration satisfies the "rational nexus" test, explaining in detail the DEA's systems of records, the various information contained in those records, and that any responsive records would have been criminal investigative records. Id. ¶¶ 6-9, 13-32.

The second part of the inquiry concerns whether disclosure would cause one or more of the six delineated harms. It would for the reasons discussed below.

**2. Exemption 7(C).**

Exemption 7(C) applies when the production of records compiled for law enforcement purposes "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); Taylor v. U.S. Dep't of Justice, 257 F. Supp. 2d 101, 113

(D.D.C. 2003) (citation omitted). In applying exemption 7(C), the court must balance the public interest in disclosure against the privacy interest of the third parties involved. Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 7676 (1989).

**a. Privacy Interest.**

"[T]he Supreme Court has emphasized that 'the concept of personal privacy under Exemption 7(C) is not some limited or cramped notion of that idea.'" Lahr, 569 F.3d at 974 (citing Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 165 (2004)). "Instead, personal privacy interests encompass a broad range of concerns relating to an 'individual's control of information concerning his or her person,' Reporters Comm., 489 U.S. at 763, and an 'interest in keeping personal facts away from the public eye.'" Lahr, 569 F.3d at 974 (citing Reporters Comm., 489 U.S. at 769).

Exemption 7(C) protects the privacy interest of various third parties identified in the withheld records, including DEA Special Agents, DEA laboratory personnel, other Federal, state or local law enforcement officers and personnel, other government employees, suspects, co-defendants, witnesses, potential witnesses, and confidential sources. Third Supp. Little Decl. ¶¶ 38-43. "Many of the documents requested contain names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the Gordon Todd Skinner or with a law enforcement investigation." Id. ¶ 38. "[T]he release of such information can have a potentially stigmatizing or embarrassing effect on the individual and cause them to be subjected to unnecessary public scrutiny and scorn." Id. The third parties could also suffer undue invasions of privacy, harassment and humiliation. Id. ¶¶ 41-43.

These third parties' privacy interest is "substantial." Fitzgibbon v. Central Intellig. Agency, 911 F.2d 755, 767 (D.C. Cir. 1990) ("persons involved in FBI investigations – even if they are not the subject of the investigation – have a substantial interest in seeing that their participation remains secret") (internal quotation marks and citation omitted). "It is surely beyond dispute that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." Id. (internal quotation marks

and citation omitted). "Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." Id. (internal quotation marks and citation omitted); accord Schiffer v. Federal Bur. of Investigation, 78 F.3d 1405, 1410 (9th Cir. 1996).

The privacy interest is not diminished even if some informant activities may already be known. See Lane v. Department of the Interior, 523 F.3d 1128, 1137 (9th Cir. 2008) ("That the public may be aware of the allegations against Antonich does not lessen his privacy interest, because notions of privacy in the FOIA exemption context encompass information already revealed to the public.") (citing Reporters Comm., 489 U.S. at 770); Schiffer, 78 F.3d at 1411 ("'The fact that 'an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information.''") (citing Reporters Comm., 489 U.S. at 770).

**b. Public Interest.**

Plaintiff did not provide proof of death or a written authorization of release to overcome the privacy interest of any third party. Third Supp. Little Decl. ¶¶ 12. Nor did plaintiff provide any facts to show any cognizable public interest that would outweigh the privacy interests of the third parties. Id. ¶ 39. The DEA determined the public interest in disclosure and balanced it against the nature of the privacy interest for each piece of information. Id. ¶ 40. It determined that there was "no legitimate public interest in the information withheld under exemption (b)(7)(C), and release of any information about a third-party would constitute an unwarranted invasion of that third-party's personal privacy." Id.

"It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" Davis v. United States Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting Reporters Comm., 489 U.S. at 773; second set of internal quotation marks and citations omitted). "[I]t is clear that the public's interest in disclosure is not furthered by disclosure of information about individuals that is accumulated in governmental files but that reveals little or nothing about an agency's own conduct." Taylor, 257 F. Supp. 2d at 114 (internal quotation marks, ellipses and

citation omitted).

In his FOIA request, plaintiff vaguely alluded to "concerns about government misconduct." Doc. #25, Ex. A at 2. "Allegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing." Favish, 541 U.S. at 175 (internal quotation marks and citation omitted). Plaintiff has not made this showing and has failed to "establish more than a bare suspicion in order to obtain disclosure." Id. at 174. Thus, the public interest is nonexistent or negligible. See Hunt v. Federal Bur. of Investigation, 972 F.2d 286, 289-90 (9th Cir. 1992) (holding that the public interest was negligible when there was no evidence of government wrongdoing).

Ultimately, Pickard's assertion of a "public interest" is nothing more than a smokescreen. His interest in the requested information pertaining to Skinner is purely selfish and personal, as he hopes to obtain information he can use to launch more collateral attacks on his conviction or life sentence. This personal interest does not qualify as a public interest for purposes of Exemption 7(C). See Clay v. United States Dep't of Justice, 680 F. Supp. 2d 239, 249 (D.D.C. 2010) ( "any personal interest the plaintiff may have in the withheld material does not qualify as a public interest favoring disclosure under FOIA exemption 7(C).") (footnote and citations omitted). Given the lack of any public interest, nondisclosure is justified. See Davis, 968 F.2d at 1282 (D.C. Cir. 1992) ("But even if a particular privacy interest is minor, nondisclosure remains justified where, as here, the public interest in disclosure is virtually nonexistent.").

**3. Exemption 7(D).**

Exemption 7(D), in pertinent part, exempts from disclosure records or information compiled for law enforcement purposes if they "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). If those requirements are met, then "the application of Exemption 7(D) is automatic." Davis, 968 F.2d at 1281.

"[A] source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such

an assurance could be reasonably inferred.'" United States Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993) (citation omitted). Confidentiality does not require "total secrecy. A source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes." Id. at 174. Just because an individual's identity may have become well-known does not mean he was not a confidential source. See Davis, 968 F.2d at 1281 ("And although he asserts that the informant's identity is 'well-known,' Davis does not dispute that the informant was a 'confidential source.'").

Here, the material withheld under Exemption 7(D) pertains to confidential sources, who are not limited to Skinner, and the information they provided. Third Supp. Little Decl. ¶¶ 44-47. "Sources of information include those to whom express confidentiality was granted and those about whom, based upon the facts and circumstances, confidentiality could be implied." Id. ¶ 45. Because the documents at issue could reasonably be expected to disclose the identity of, or information furnished by, a confidential source, Exemption 7(D) automatically applies.

**4. Exemption 7(E).**

Exemption 7(E) applies to

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7).

As seen from the statutory text, Exemption 7(E) contains two clauses: the first pertaining to techniques and procedures, and the second pertaining to guidelines. It is unsettled in the Ninth Circuit whether the "could reasonably be expected to risk circumvention of the law" requirement applies to only the second clause regarding guidelines or applies also to the first clause regarding techniques and procedures. See Asian Law Caucus, 2008 WL 5047839, at *3.

This Court need not decide the issue here, as Exemption 7(E) applies either way. The information, if released, would disclose "[l]ongstanding, successfully proven enforcement

techniques, practice, procedures and methods that are not commonly known to the public." Third Supp. Little Decl. ¶ 48. "[A]ny release of the technique would compromise its integrity and assist violators in evading detection and apprehension." Id. ¶ 49. The Little declaration further explains how the release of certain "violator identifiers" would risk circumvention of the law by helping suspects change their pattern of drug trafficking, avoid detection and apprehension, and/or create excuses for suspected activities. See id. ¶¶ 50-53. When, as here, an affidavit "provides detailed assertions why disclosure of the requested information would present a serious threat to future law enforcement . . . investigations," then the agency "has satisfied its burden of showing that exemption 7(E) was properly applied." Bowen v. U.S. Food & Drug Admin., 925 F.2d 1225, 1229 (9th Cir. 1991).

**5. Exemption 7(F).**

Exemption 7(F) exempts records or information compiled for law enforcement purposes if their production "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Exemption 7(F) may be used to withhold the names of DEA special agents and other law enforcement officers. See Amro v. U.S. Customs Serv.,128 F.Supp.2d 776, 789 (E.D.Pa. 2001); Jimenez, 938 F.Supp. at 31. However, the exemption is not limited to law enforcement personnel. "'While courts generally have applied Exemption 7(F) to protect law enforcement personnel or other specified third parties, by its terms, the exemption is not so limited; it may be invoked to protect 'any individual' reasonably at risk of harm.'" Amuso v. U.S. Dept. of Justice, 600 F. Supp. 2d 78, 101 (D.D.C. 2009) (citation omitted). Specifically, the exemption may be used to protect confidential informants and cooperating witnesses. See id. at 102. "Within limits, the Court defers to the agency's assessment of danger." Id. at 101 (citation omitted).

Here, the exemption "is employed to withhold the names of DEA Special Agents, Supervisory Special Agents and other Federal, state and local law enforcement personnel, and confidential sources." Third Supp. Little Decl. ¶ 54. "It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents.

It may, therefore, reasonably be anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations." Id. Consequently, exemption 7(F) applies. See Butler v. U.S. Dept. of Justice, 368 F.Supp.2d 776, 786 (E.D. Mich. 2005) ("The Court agrees that the DEA could withhold documents from Plaintiff where disclosing the documents could endanger DEA agents and individuals who provided information to the DEA.").

**V. CONCLUSION.**

For the foregoing reasons, the defendant's third motion for summary judgment (Doc. #140) is GRANTED. The clerk is instructed to enter judgment in favor of defendant and close the file.

SO ORDERED.

DATED: ______________________

___________________________________
HONORABLE CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE