1   Mark Rumold (SBN 279060)
    *mark.rumold@gmail.com*
2   901 Cortland Ave., Apt. B
    San Francisco, CA 94110
3   Telephone:   (415) 694-1639

4   Attorney for Plaintiff

5

6

7

8                       **UNITED STATES DISTRICT COURT**

9              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                       **SAN FRANCISCO DIVISION**

11  WILLIAM PICKARD,                  )   Case No. 06-cv-00185-CRB
                                      )
12                      Plaintiff,    )   **NOTICE OF CROSS MOTION AND**
                                      )   **CROSS MOTION FOR SUMMARY**
13       v.                           )   **JUDGMENT; MEMORANDUM OF**
                                      )   **POINTS AND AUTHORITIES IN**
14  DEPARTMENT OF JUSTICE,            )   **SUPPORT OF CROSS MOTION FOR**
                                      )   **SUMMARY JUDGMENT**
15                                    )
                        Defendant.    )   **AND**
16                                    )
                                      )   **OPPOSITION TO DEFENDANT'S**
17                                    )   **THIRD MOTION FOR SUMMARY**
                                      )   **JUDGMENT**
18                                    )
                                      )   Date:      August 17, 2012
19                                    )   Time:      10:00 AM
                                      )   Place:     Ctrm. 6, 17th Floor
20                                    )   Judge:     Hon. Charles R. Breyer
                                      )
21  _____ )

22

23

24

25

26

27

28

1

**NOTICE OF CROSS MOTION**

2

TO DEFENDANT AND ITS COUNSEL OF RECORD:

3

   PLEASE TAKE NOTICE that on August 17, 2012 at 10:00 A.M., or as soon thereafter as

4

the matter may be heard in Courtroom 6 on the 17th Floor at 450 Golden Gate Avenue in San

5

Francisco, California, plaintiff William L. Pickard will, and hereby does, cross move for summary

6

judgment.

7

   Pursuant to Federal Rule of Civil Procedure 56, Mr. Pickard seeks a court order requiring

8

the Department of Justice and its component the Drug Enforcement Administration to release

9

records under the Freedom of Information Act. Mr. Pickard respectfully asks that this Court issue

10

an order requiring the government to release all records improperly withheld from the public. This

11

Cross Motion is based on this Notice of Cross Motion, the Memorandum of Points and Authorities

12

in support of this Cross Motion, the Declaration of William Pickard, the Declaration of Mark

13

Rumold, and all papers and records on file with the Clerk or which may be submitted prior to or at

14

the time of the hearing, and any further evidence which may be offered.

15

DATED:  May 25, 2012                    Respectfully submitted,

16

17

                    /s/ Mark Rumold
                    Mark Rumold

18

                    901 Cortland Ave
                    San Francisco, CA  94110

19

                    Telephone:  (415) 694-1639

20

                    Attorney for Plaintiff

21

22

23

24

25

26

27

28

1

Case No. 06-cv-00185 CRB         NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
                                 OPP. TO DEF'S THIRD MOT. SUMM. J.

# TABLE OF CONTENTS

I.      INTRODUCTION................................................................................................1

II.     SUPPLEMENTAL FACTUAL BACKGROUND ................................................2

        A.      The DEA's Improper Use of Informants ................................................2

        B.      Gordon Todd Skinner's Criminal History and Work as a Federal Informant............3

        C.      Evidence of Government Misconduct and the Public's Interest in the DEA's Use
                of Gordon Todd Skinner as an Informant ................................................5

III.    SUPPLEMENTAL PROCEDURAL HISTORY....................................................7

IV.     ARGUMENT ....................................................................................................8

        A.      The Freedom of Information Act and the Standard of Review...................................9

        B.      Mr. Pickard is Entitled to Summary Judgment Because DEA Has Failed to
                Satisfy the Procedural Requirements Necessary to Carry Its Burden.......................10

                1.      Vaughn Requires a Detailed Description of Each Withheld Record,
                        Correlating Particular Parts of Each Record to the Claimed Exemption ......10

                2.      DEA's Failure to Submit a Vaughn Contravenes the Ninth Circuit's
                        Directive and Necessarily Fails to Satisfy Defendant's Procedural
                        Obligations ...............................................................................11

                3.      DEA's Reliance on the Generic and Conclusory Assertions Contained
                        Within the Little Declaration Does Not Cure the Agency's Procedural
                        Shortcomings.............................................................................13

        C.      Mr. Pickard Is Entitled to Summary Judgment Because DEA Has Failed to
                Segregate and Release All Non-Exempt Information................................................15

        D.      Mr. Pickard Is Entitled to Summary Judgment Because DEA Has Improperly
                Applied Exemption 7 to Withhold Responsive Records...........................................17

                1.      Defendant Improperly Withheld Records Under Exemption 7(C) ..............17

                2.      DEA Improperly Withheld Records Under Exemption 7(D) ......................20

                3.      DEA Improperly Withheld Records Under Exemption 7(E)......................22

                4.      DEA Improperly Withheld Records Under Exemption 7(F) ......................23

V.      CONCLUSION ................................................................................................24

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Asian Law Caucus v. DHS*,
  2008 U.S. Dist. LEXIS 98344 (N.D. Cal. Nov. 24, 2008) ..................................................... 22

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*,
  818 F. Supp. 1291 (N.D. Cal. 1992) ........................................................ 11, 13, 16, 17

*Bennett v. DEA*,
  55 F. Supp. 2d 36 (D.D.C. 1999) ................................................................... 19, 20

*Billington v. Dep't of Justice*,
  233 F.3d 581 (D.C. Cir. 2000) ............................................................................... 16

*Birch v. USPS*,
  803 F.2d 1206 (D.C. Cir. 1986) .............................................................................. 10

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*,
  601 F.3d 143 (2d Cir. 2010) ................................................................................... 10

*Castaneda v. United States*,
  757 F.2d 1010 (9th Cir. 1985) ................................................................................ 18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................. 9

*Church of Scientology v. Dep't of Army*,
  611 F.2d 738 (9th Cir. 1979) ................................................................. 10, 14, 15, 16

*Ctr. for Auto Safety v. EPA*,
  731 F.2d 16 (D.C. Cir. 1984) .................................................................................. 15

*Ctr. for Medicare Advocacy v. Dep't of Health and Human Servs.*,
  577 F. Supp. 2d 221 (D.D.C. 2008) ....................................................................... 12

*Davin v. DOJ*,
  60 F.3d 1043 (3rd Cir. 1995) .................................................................................. 22

*Dep't of Air Force v. Rose*,
  425 U.S. 352 (1976) ................................................................................................. 9

*Dep't of Justice v. Landano*,
  508 U.S. 165 (1993) ............................................................................................... 22

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) ............................................................................. 9, 14, 17, 20

*Dep't of Justice v. Tax Analysts,*
    492 U.S. 136 (1989) ................................................................................................... 9

*Feshbach v. SEC,*
    5 F. Supp. 2d 774 (N.D. Cal. 1997) ................................................................... 9, 22

*Goland v. CIA,*
    607 F.2d 339 (D.C. Cir. 1978) ................................................................................ 10

*Gordon v. FBI,*
    388 F. Supp. 2d 1028 (N.D. Cal. 2005) ................................................................. 22

*Hidalgo v. FBI,*
    Civ. No. 04-0562, 2005 WL 6133690 (D.D.C. Sept. 29, 2005) ..................... 19, 20

*Hudson v. Palmer,*
    468 U.S. 517 (1984) ........................................................................................... 19, 21

*Hunt v. FBI,*
    972 F.2d 286 (9th Cir. 1992) .................................................................................. 18

*Irons v. FBI,*
    880 F.2d 1446 (1st Cir. 1989) ........................................................................... 21, 22

*Kamman v. IRS,*
    56 F.3d 46 (9th Cir. 1995) ...................................................................................... 10

*King v. Dep't of Justice,*
    830 F.2d 210 (D.C. Cir. 1987) ........................................................................... 11, 13

*Kiraly v. FBI,*
    728 F.2d 273 (6th Cir. 1984) .................................................................................. 21

*Lane v. Dep't of the Interior,*
    523 F.3d 1128 (9th Cir. 2008) ........................................................................... 18, 19

*Lawyers' Committee for Civ. Rights of the S.F. Bay Area v. Dep't of Treasury,*
    2009 U.S. Dist. LEXIS 42327 (N.D. Cal. May 11, 2009) .................................... 23

*Lion Raisins v. Dep't. of Agric.,*
    354 F.3d 1072 (9th Cir. 2004) ................................................................................ 11

*Long v. Dep't of Justice,*
    450 F.Supp.2d 42 (D.D.C. 2006) ........................................................................... 20

*Mead Data Cent., Inc. v. Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) .......................................................................*passim*

iii

*Morely v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007) ..........................................................................................11

*Nat'l Archives and Records Admin. v. Favish,*
    541 U.S. 157 (2004) .................................................................................................18, 20

*Nat'l Wildlife Fed'n v. U.S. Forest Service,*
    861 F.2d 1114 (9th Cir. 1988)..............................................................................................9

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978)..............................................................................................................9

*NRDC v. Dep't of Defense,*
    388 F. Supp. 2d 1086 (C.D. Cal. 2005)..............................................................................16

*Ollestad v. Kelley,*
    573 F.2d 1109 (9th Cir. 1978)............................................................................................10

*Pacific Fisheries, Inc. v. United States,*
    539 F.3d 1143 (9th Cir. 2008).............................................................................................15

*Pickard v. Dep't of Justice,*
    653 F.3d 782 (9th Cir. 2011).......................................................................................*passim*

*Powell v. Dep't of Justice,*
    584 F. Supp. 1508 (N.D. Cal. 1984) ..................................................................................21

*Rosenfeld v. United States Dep't of Justice,*
    57 F.3d 803 (9th Cir. 1995)................................................................................................22

*Stern v. FBI,*
    737 F.2d 84 (D.C. Cir. 1984) .............................................................................................14

*Trans-Pacific Policing Agreement v. United States Customs Serv.,*
    177 F.3d 1022 (D.C. Cir. 1999) .........................................................................................16

*United States v. Nabil Ismael,*
    CR No. 04-00376-CRB (N.D. Cal. 2005) .............................................................................2

*United States v. Pickard,*
    211 F.Supp.2d 1287 (D. Kan. 2002) ....................................................................................4

*United States v. Pickard,*
    236 F. Supp. 2d 1204 (D. Kan. 2002) ..................................................................................5

*United States v. Pickard,*
    278 F. Supp. 2d 1217 (D. Kan. 2003) ...........................................................................5, 6, 24

iv

*United States v. Ryan Overton,*
    Cr. No. 01-00341 (W.D. Mo. 2001) .......................................................................4

*United States v. Sam Merit,*
    Cr. No. 87- 00080 (D. Ariz. 1987) ........................................................................4

*United States v. Shaffer,*
    789 F.2d 682 (9th Cir. 1986) ...............................................................................18

*United States v. Skinner,*
    2010 WL 186156 (D. Nev. Jan. 15, 2010) ..........................................................4

*United States v. Tanasis Kanculis,*
    Cr. No. 01-00096 (N.D. Ok. 2001) ......................................................................4

*United States v. Wilson,*
    2009 U.S. Dist. LEXIS 30306 (9th Cir. 1992) ....................................................3

*United States. v. Pickard,*
    2009 WL 939050 (D. Kan. April 6, 2009) ..........................................................24

*Van Bourg, Allen, Weinberg & Roger v. NLRB,*
    751 F.2d 982 (9th Cir. 1985) ...............................................................................21

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973) .....................................................................*passim*

*Wiener v. FBI,*
    943 F.2d 972 (9th Cir. 1991) .......................................................................*passim*

*Zavala v. DEA,*
    667 F.Supp.2d 85 (D.D.C 2009) .........................................................................23

*Zemansky v. EPA,*
    767 F.2d 569 (9th Cir. 1985) ...............................................................................12

**STATE CASES**

*Skinner v. Oklahoma,*
    210 P.3d 840 (Ok. Ct. Crim. App. 2009) .....................................................1, 4, 19

*State v. Worthy,*
    141 N.J. 368 (1995)................................................................................................4

**FEDERAL STATUTE**

5 U.S.C. § 552 ......................................................................................................*passim*

v

Case No. 06-cv-00185 CRB    Not. of Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.;
Opp. to Def's Third Mot. Summ. J.

**FEDERAL RULE**

Fed. R. Civ. P. 56 ............................................................................................................9

**EXECUTIVE ORDER**

Exec. Ord. 13,526.........................................................................................................12

**OTHER AUTHORITIES**

Dean Murphy, *U.S. is Ordered to Investigate Use of Disputed Informant*, N.Y Times (August 23, 2005) ..............................................................................................................2

Hamilton Morris, *Life is a Cosmic Giggle on the Breath of the Universe: A Tour of Gordon Todd Skinner's Subterranean LSD Palace*, Vice Magazine (May 1, 2011) .......................3, 7

John Glionna & Lee Romney, *Snagging a Rogue Snitch*, L.A. Times (Dec. 2, 2005).......................2

Josh Meyer, *Mishandling of Informant Hurt Cases, DEA Concedes*, L.A. Times (June 5, 2001) .....2

Matt Elliott, *Ex-Informant in Tulsa Jail*, Tulsa World (Sept. 3, 2004)................................................7

Matt Elliott, *Life Term Given in Torture Case*, Tulsa World (June 21, 2006)....................................7

Matt Elliott, *Teen Tells of Six Days of Drugged Torment*, Tulsa World (Sept. 14, 2003)................7

Noah Shachtman, *A Room with an Apocalyptic View*, Wired (Oct. 16, 2001) ...................................6

Office of Inspector General, *The Drug Enforcement Administration's Payments to Confidential Sources, Audit Report* (July 2005) (Executive Summary) .......................................................3

Steve Fry, *Defense Questions LSD Witness*, Topeka Capital-Journal (Feb. 5, 2003).......................6

Steve Fry, *LSD Trial: Immunity Granted in Exchange for Help on Case*, Topeka Capital-Journal (Jan. 29, 2003)..............................................................................................................6

vi

Case No. 06-cv-00185 CRB    Not. of Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.;
Opp. to Def's Third Mot. Summ. J.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Over 7 years ago, plaintiff William Pickard ("Mr. Pickard") submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of records held by defendant Drug Enforcement Administration ("DEA"), a component of the Department of Justice ("DOJ"). To date, DEA has not released a single document responsive to Mr. Pickard's request. In an effort to disclose misconduct on the part of DEA, the request sought records[1] concerning the agency's relationship with and use of Gordon Todd Skinner ("Skinner") – an unreliable and notorious DEA informant. After a lengthy career as an informant, Skinner was arrested and convicted of assault and battery with a dangerous weapon, conspiracy, and kidnapping. *Skinner v. Oklahoma*, 210 P.3d 840, 841 (Ok. Ct. Crim. App. 2009). He is currently serving consecutive life, sixty, and thirty-year sentences in Oklahoma. *Id.*

Defendant has moved for summary judgment, asking the Court to sustain its decision to withhold all responsive material. Despite the Ninth Circuit's clear command that DEA "must now produce a *Vaughn* index in response" to Mr. Pickard's FOIA request, *Pickard v. Dep't of Justice*, 653 F.3d 782 (9th Cir. 2011), the agency has simply chosen not to. Instead, DEA relies only on generic, categorical claims of exemption, entirely untethered from the specific documents it seeks to withhold. Because the agency has failed to meet its burden – both procedurally and substantively – the Court should deny DEA's Motion for Summary Judgment and grant Mr. Pickard's Cross Motion. Accordingly, Mr. Pickard respectfully requests entry of an order compelling DEA to disclose all improperly withheld records.

---

[1] In its discussion of the scope of records at issue in this case, (*see* Def. Mot. at 3), DEA reiterates Mr. Pickard's request for specific categories of records, but omits discussion of Mr. Pickard's second FOIA request for Skinner's NADDIS file, which was incorporated by DEA within the request at issue in this litigation. The August 29, 2006 Declaration of Leila I. Wassom stated that, "By letter dated April 25, 2005, to DEA, the plaintiff requested a copy of the DEA 'NADDIS file' for Gordon Skinner. A copy of plaintiff's letter to DEA dated April 25, 2005 is attached as Exhibit H." Wassom also stated, "The letter was incorporated into DEA Request No. 05-0498," the subject of the current litigation. Declaration of Leila I. Wassom (Doc. No. 25). Thus, in addition to the categories of records listed in DEA's motion, this litigation also includes Mr. Pickard's request for Skinner's NADDIS file.

1

## II.   SUPPLEMENTAL FACTUAL BACKGROUND

### A.   The DEA's Improper Use of Informants

Mr. Pickard's request seeks information concerning the DEA's relationship and use of an unreliable and lawless informant – an issue with which there is both a well-documented public interest and a history of agency impropriety.

A 2001 news report, based on an internal report released by DEA, disclosed that "[d]ozens of drug enforcement cases nationwide have been dismissed, plea-bargained or threatened with reversal because of the U.S. Justice Department's abysmal handling of its undercover informant program." Josh Meyer, *Mishandling of Informant Hurt Cases, DEA Concedes*, L.A. Times (June 5, 2001).[2] According to the report, the DEA "ignored repeated warnings about a rogue, unreliable undercover informant for more than 12 years," which resulted in a "pattern of lying under oath and criminal misconduct" on the part of the informant. *Id.*

Despite claims of agency reforms following the DEA's internal investigation, in 2005, in a case before this Court, proceedings revealed that the DEA had similarly relied on a "lawless" informant, who had lied to federal agents, a small claims Court, extorted money from others, and used his influence as an informant to target his enemies. *See United States v. Nabil Ismael*, CR No. 04-00376-CRB (N.D. Cal. 2005); John Glionna & Lee Romney, *Snagging a Rogue Snitch*, L.A. Times (Dec. 2, 2005).[3] Despite knowledge of the informant's lengthy criminal history and ongoing illicit activities, "[i]n exchange for information, the DEA, FBI, IRS and other agencies paid the informant hundreds of thousands of dollars. Prosecutors dismissed some felony charges against him and sought to expunge others." Glionna, *Snagging a Rogue Snitch*; *see also* Dean Murphy, *U.S. is Ordered to Investigate Use of Disputed Informant*, N.Y Times (August 23, 2005).[4]

The DEA's misuse and improper handling of informants led to a 2005 DOJ Office of Inspector General ("OIG") report on the DEA's use of confidential informants. Office of Inspector General, *The Drug Enforcement Administration's Payments to Confidential Sources*, Audit Report

---

[2] *Available at* http://articles.latimes.com/2001/jun/05/news/mn-6527.

[3] *Available at* http://articles.latimes.com/2005/dec/02/local/me-snitch2.

[4] *Available at* http://www.nytimes.com/2005/08/23/politics/23snitch.html?pagewanted=print.

2

Case No. 06-cv-00185 CRB          NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S THIRD MOT. SUMM. J.

(July 2005) (Executive Summary).[5] The OIG concluded that aspects of the DEA's "management of the use of confidential sources" required reform, including inadequate documentation of confidential source assessments and an ineffective system for tracking confidential source payments." *Id.* at 8.

Public disclosure of the DEA's improper use of criminal informants animates this FOIA litigation.

**B.    Gordon Todd Skinner's Criminal History and Work as a Federal Informant**

Gordon Todd Skinner's lengthy career as a criminal is surpassed only by his career, spanning nearly two decades, as an informant. Like the Ismael case, the lines between Skinner's two "professions" were often blurred.

At least as early as 1984, Skinner was involved in illegal activity. *See United States v. Wilson*, 2009 U.S. Dist. LEXIS 30306, *4 (9th Cir. 1992) (describing Skinner's testimony concerning involvement in a wire fraud conspiracy). And, as early as 1983, Skinner was acting as a federal informant. (Declaration of William Pickard ("Pickard Decl."), Ex. 1, "Excerpt of the Transcript of Trial Proceedings in *United States v. McKinley* (August 10, 1993)"). In the early 1990's, Skinner testified:

> that he had been arrested and charged in Boston in 1987 with possession of marijuana with intent to distribute, which charges were later dropped. He also testified that he had been arrested in New Jersey in 1989 for a drug offense, that he had been charged under New Jersey's drug kingpin statute, that the trial was pending, and that the offense carried a sentence of twenty-five years to life. Further, he testified that he was cooperating with the government in an ongoing criminal investigation in order to gain "some sort of a favorable input to my problems in New Jersey". . . On cross-examination, *Skinner testified extensively about his cooperation with federal authorities on several occasions, and the benefits he had obtained and hoped to obtain in exchange for that cooperation.*

*Wilson*, 2009 U.S. Dist. LEXIS 30306 at *4 (emphasis added). In exchange for immunity for his "problems in New Jersey," Skinner continued his "long and fruitful career as a government informant." Hamilton Morris, *Life is a Cosmic Giggle on the Breath of the Universe: A Tour of Gordon Todd Skinner's Subterranean LSD Palace*, Vice Magazine (May 1, 2011).[6]

---

[5] *Available at* http://www.justice.gov/oig/reports/DEA/index.htm.

[6] *Available at* http://www.vice.com/read/life-is-a-cosmic-giggle-803-v18n5.

While the evidence obtained by Skinner in the New Jersey case was done in violation of the state's wiretapping statute and eventually suppressed, a New Jersey Supreme Court opinion still noted that the "credibility and character of Skinner was so questionable" that the State's case necessarily hinged on the admissibility of the illegally obtained recordings. *State v. Worthy*, 141 N.J. 368, 391 (1995). Skinner is also believed to have served as an informant in *United States v. Sam Merit*, Cr. No. 87- 00080 (D. Ariz. 1987), *United States v. Ryan Overton*, Cr. No. 01-00341 (W.D. Mo. 2001), and *United States v. Tanasis Kanculis*, Cr. No. 01-00096 (N.D. Ok. 2001). (Pickard Decl., Ex. 2, "Excerpt of Gordon Todd Skinner's Supplemental *Kastigar* Motion and Motion to Dismiss," at 2). In 2003, again in exchange for immunity for his own criminal activity, Skinner testified against Mr. Pickard and another defendant in connection with a trial for the manufacture and distribution of LSD. *United States v. Pickard*, 211 F.Supp.2d 1287, 1293 (D. Kan. 2002).

Throughout Skinner's career as an informant, he was simultaneously involved in various types of criminal activity, including: (1) a conviction for possessing a fraudulent Interpol Identification Badge, *id*. at 1291; (2) charges for involuntary manslaughter, *id*.; and (3) arrest and conviction for possession with intent to distribute MDMA. *See United States v. Skinner*, 2010 WL 186156, (D. Nev. Jan. 15, 2010). Finally, in July 2003, only three months after testifying at trial as a DEA informant, Skinner kidnapped and violently tortured a teenager in Oklahoma. *See Skinner v. Oklahoma*, 210 P.3d at 842. Skinner was convicted and sentenced to consecutive life, sixty, and thirty-year terms in prison. *Id*. at 841. And, given the propensity of federal agencies to intervene on behalf of informants in criminal matters, the known criminal activity of Skinner is likely only a subset of the actual criminal activity in which he engaged.[7] (*See, e.g.*, Pickard Decl., Ex. 3,

---

[7] Other alleged criminal activities of Skinner include:

(1) control and sale of high-powered assault rifles while on pretrial release, and after conspiring . . . to mislead the magistrate and [a federal] court by suggesting that weapons were "powder guns" and exempt from the law; (2) use of aliases and fraudulent misrepresentation . . . ; (3) damages awarded against Skinner . . . and the avoidance of the United States Attorney's Office in bringing Skinner's assets to the attention of creditors. . . ; (4) providing counterfeit checks to other individuals for which he is now being sued; and. . . [(5) an] attempt to obtain a driver's license in Wamego by stating that he was an FBI agent[.]

4

"Excerpt from Krystal A. Cole, *Lysergic* (1997)" (noting "the [DEA] needed [Skinner's] current record to be as clean as possible for when he would testify for them. [Auto-theft] was just the first in a long line of incidents that the DEA covered up for us")).[8]

### C.   Evidence of Government Misconduct and the Public's Interest in the DEA's Use of Gordon Todd Skinner as an Informant

Mr. Pickard has provided voluminous evidence describing Skinner's criminal activity and instances of knowledge, or willful disregard, of this activity on the part of the DEA. (*See generally* Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. No. 34)).

The propriety of Skinner's relationship with the DEA (and other federal government agencies) is most unambiguously called into question by two allegations – that the agency presented inconsistent information to a federal court concerning Skinner's status as a criminal informant and that Skinner, with the knowledge of his federal government handlers, engaged in patterns of criminal behavior while simultaneously acting as an informant.

First, evidence presented by the government to a federal court in 2003 stated that Skinner had only served as an informant twice, in *State v. Worthy* and a related case. *See United States v. Pickard*, 278 F. Supp. 2d at 1244 ("The government indicated it was only aware of one other instance where Skinner had been an informant and that was related to the Worthy case."). Yet, according to Skinner's testimony in a 1993 case – nearly 10 years before the 2003 trial – Skinner had already "cooperated" with the federal government "five to six" times, dating back to 1983. (Pickard Decl., Ex. 1). There are clear inconsistencies between what the government asserted at trial in 2003 and what the complete public record shows. The public access to DEA records would assist in reconciling the two varying accounts.

Second, evidence suggests that Skinner violated the law with impunity while serving as an informant – by apparently keeping money laundered from illicit activities and failing to pay taxes

---

*United States v. Pickard*, 236 F. Supp. 2d 1204, 1212-13 (D. Kan. 2002). Skinner also "appeared in a Washington state court and told the court that he was a doctor. He further told the court that he had been treating the young woman who was before the court as a defendant. Both of these representations were indeed false." *United States v. Pickard*, 278 F. Supp. 2d 1217, 1242 (D. Kan. 2003).

[8] Krystal Cole, the author of *Lysergic*, was the wife of Gordon Todd Skinner.

5

Case No. 06-cv-00185 CRB          Not. of Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.;
Opp. to Def's Third Mot. Summ. J.

on that money. Records show that Skinner laundered over $1 million from February to July 2000 in Las Vegas casinos. (Pickard Decl., Ex. 4, "Records of Transactions Made by Gordon Todd Skinner Between February and July 2000"). According to Skinner's attorney, despite access to these funds, by November 2000, Skinner was "broke from a cash-flow basis," and requested the Assistant United States Attorney allow Skinner to use illicit funds to maintain his "lifestyle." (Pickard Decl., Ex. 5, "Letter from Thomas D. Haney to John Roth and Barbara Silano"). The AUSA replied that use of illicit funds would be a violation of federal law. (Pickard Decl., Ex. 6, "Letter from Barbara Silano to Thomas D. Haney"). Yet, in federal court in 2003, a DEA official testified that Skinner had "not requested any payment for anything he has done in the case." (Pickard Decl., Ex. 7, "Excerpt of the Transcript of Trial Proceedings in *United States v. Pickard* (2003)). Further, in a letter from Skinner to an attorney, Skinner stated that government officials had never seized any money from Skinner prior to August 2003. (Pickard Decl., Ex. 8, "Letter from Gordon Todd Skinner to William Rork").[9] Thus, whether the government paid for Skinner's informant services or turned a blind eye to his use of illicit funds, the public has a vital interest in better understanding the source and accounting of Skinner's funds.

Given Skinner's considerable criminal history and his history as a drug informant, it is unsurprising that the public has a concomitant interest in Skinner's relationship with the DEA, as demonstrated through the considerable – and ongoing – media attention Skinner's exploits have garnered over the past decade. This interest includes Skinner's participation, testimony, and role as an informant in the 2003 LSD trial. *See, e.g.*, Steve Fry, *Defense Questions LSD Witness*, Topeka Capital-Journal (Feb. 5, 2003);[10] Steve Fry, *LSD Trial: Immunity Granted in Exchange for Help on Case*, Topeka Capital-Journal (Jan. 29, 2003);[11] Noah Shachtman, *A Room with an Apocalyptic View*, Wired (Oct. 16, 2001).[12] And the interest extends to Skinner's lengthy criminal history. *See,*

---

[9] Skinner's letter also states that, from 1993 to 2000, Skinner "went inactive" as a "government agent" because a "DEA agent wanted [him] to go around [a federal judge's] court order." (Pickard Decl., Ex. 8).

[10] *Available at* http://cjonline.com/indepth/missilesilos/stories/020603_kan_lsd.shtml.

[11] *Available at* http://cjonline.com/indepth/missilesilos/stories/020603_kan_lsd.shtml.

[12] *Available at* http://www.wired.com/culture/lifestyle/news/2001/10/47577.

6

*e.g.*, Matt Elliott, *Teen Tells of Six Days of Drugged Torment*, Tulsa World (Sept. 14, 2003);[13] Matt Elliott*, Ex-Informant in Tulsa Jail*, Tulsa World (Sept. 3, 2004);[14] Matt Elliott, *Life Term Given in Torture Case*, Tulsa World (June 21, 2006).[15] Despite the fact that Skinner has been imprisoned for almost ten years, given his often bizarre and violent record, and his years of employment as a federal informant, it is not surprising that public interest in Skinner's involvement with the DEA persists. *See, e.g.*, Morris, *Life is a Cosmic Giggle*, Vice Magazine (May 1, 2011).

### III.     SUPPLEMENTAL PROCEDURAL HISTORY

The Ninth Circuit's decision in this case provided DEA with a clear directive: "[W]e hold only that the government must take the next step. . . It must now produce a *Vaughn* index in response to Pickard's FOIA request[.]" *Pickard v. Dep't of Justice*, 653 F.3d at 788 (noting that a *Vaughn* index is a "comprehensive listing of each withheld document cross-referenced with the FOIA exemption that the government asserts is applicable"); *see also* Wallace, J., *concurring* ("Accordingly, at this point, we are merely requiring the DEA to take the next step—that is, to produce a *Vaughn* index").

On April 2, DEA moved for summary judgment. (Defendant's Third Motion for Summary Judgment ("Def. Mot.") (Dkt. No. 144)). In support of its motion, DEA filed the Third Supplemental Declaration of William C. Little ("Little Decl.") (Dkt. No. 144-1) and a *Vaughn* index, which DEA sought to file under seal. (*See* Administrative Motion to File under Seal (Dkt. No. 142)). Mr. Pickard opposed DEA's motion. (Dkt. No. 146). On April 26, 2012, this Court denied DEA's motion to file its *Vaughn* index under seal. (Dkt. No. 148). Following this Court's decision, counsel for DEA indicated that DEA would proceed without filing a *Vaughn* index, relying only on the Little Declaration in support of its summary judgment motion. (Rumold Decl. ¶ 2). Mr. Pickard now opposes DEA's motion and cross moves for summary judgment.

---

[13] *Available at*
http://www.tulsaworld.com/news/article.aspx?subjectid=11&articleid=030914_Ne_a19_teen.
[14] *Available at*
http://www.tulsaworld.com/news/article.aspx?subjectid=11&articleid=040903_Ne_a13_exinf.
[15] *Available at*
http://www.tulsaworld.com/news/article.aspx?subjectid=11&articleid=060621_Ne_A11_Lifet65603.

7

Case No. 06-cv-00185 CRB          NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S THIRD MOT. SUMM. J.

## IV.    ARGUMENT

In order to carry its burden at summary judgment, DEA must satisfy at least three conditions. First, the agency must submit affidavits or declarations – generally in the form of a *Vaughn* index and supporting declaration – that provide detailed justifications for withholdings, "specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). Second, DEA must also demonstrate that any "reasonably segregable," non-exempt portions of requested records have been provided to plaintiff. 5 U.S.C. § 552(b). And, third, the agency must demonstrate that an adequate search for responsive records has been conducted and that all withheld records, and the information contained therein, fall within the claimed exemptions.

DEA has utterly failed to satisfy all three conditions. First, the agency's supporting declaration is wholly conclusory, non-specific, and general. Despite the Ninth Circuit's clear command to produce a *Vaughn* index, DEA has chosen not to, instead opting to provide neither this Court nor Mr. Pickard with sufficient information to assess the propriety of the agency's withholdings. Second, DEA has not even attempted to segregate exempt from non-exempt information contained within responsive records. And, finally, in spite of the obstacles presented by the agency's failure to adequately describe the withheld records and the justification for their withholding, it is still apparent that DEA has asserted its exemption claims more broadly than the law allows.

As described in detail below, DEA has failed to carry its burden and, consequently, is not entitled to summary judgment. As a result, the Court should deny the government's Motion for Summary Judgment and grant Mr. Pickard's Cross Motion. Mr. Pickard respectfully requests this Court order the agency to immediately produce all records responsive to his FOIA requests.[16]

---

[16] Mr. Pickard does not challenge DEA's assertion of Exemption 2 to withhold DEA telephone numbers. (*See* Def. Mot. at 5-6).

8

Case No. 06-cv-00185 CRB          NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S THIRD MOT. SUMM. J.

### A.     The Freedom of Information Act and the Standard of Review

The FOIA is intended to safeguard the American public's right to know "what their Government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (quotations omitted).  The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA requests must be construed liberally, and "disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

The FOIA requires an agency to disclose records at the request of the public unless the records fall within one of nine narrow exemptions. *See* 5 U.S.C. § 552(b). The exemptions "have been consistently given a narrow compass," and agency records, or portions of agency records, that "do not fall within one of the exemptions are improperly withheld[.]" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted); *see also NLRB*, 437 U.S. at 221; *Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114, 1116 (9th Cir. 1988).

FOIA disputes involving the propriety of agency withholdings are commonly resolved on summary judgment. *See, e.g.*, *Nat'l Wildlife Fed'n*, 861 F.2d at 1115. Summary judgment is proper when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Feshbach v. SEC*, 5 F. Supp. 2d 774, 779 (N.D. Cal. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party who bears the burden of proof on an issue at trial "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Feshbach*, 5 F. Supp. 2d at 779. "In contrast, a moving party who will not have the burden of proof on an issue at trial can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id*.

A court reviews the government's withholding of agency records *de novo*, and the government bears the burden of proving that a particular document falls within one of the nine narrow exemptions. 5 U.S.C. § 552(a)(4)(B); *Reporters Committee.*, 489 U.S. at 755. An agency must prove that "each document that falls within the class requested either has been produced, is

9

unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted). When claiming an exemption, the agency must provide a "'relatively detailed justification' for assertion of an exemption and must demonstrate to a reviewing court that records are *clearly* exempt." *Birch v. USPS*, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (citing *Mead Data Central*) (emphasis added). An agency may submit affidavits to satisfy its burden, but "the government may not rely upon conclusory and generalized allegations of exemptions." *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1979) (internal quotation marks omitted). All doubts as to whether a FOIA exemption applies are resolved in favor of disclosure. *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010).

**B.      Mr. Pickard is Entitled to Summary Judgment Because DEA Has Failed to Satisfy the Procedural Requirements Necessary to Carry Its Burden**

In order to prevail on a motion for summary judgment, DEA must submit detailed affidavits, specifically tying the claimed exemptions to particular portions of withheld records. Here – and in spite of the Ninth Circuit's clear directive – DEA has failed to produce a *Vaughn* index and, consequently, has failed to provide both this Court and Mr. Pickard with the specificity necessary to test the agency's claimed exemptions. Consequently, DEA is not entitled to summary judgment, and Mr. Pickard respectfully urges this Court to order the immediate release of the requested records.

1.      *Vaughn* Requires a Detailed Description of Each Withheld Record, Correlating Particular Parts of Each Record to the Claimed Exemption

In *Vaughn v. Rosen*, the D.C. Circuit established the procedural requirements that "an agency seeking to avoid disclosure" must satisfy to carry its burden. 484 F.3d 820, 828 (D.C. Cir. 1973); *see also Ollestad v. Kelley*, 573 F.2d 1109, 110 (9th Cir. 1978) (adopting *Vaughn* requirements in the 9th Circuit). In a FOIA case, "because the issue is whether one party will disclose documents to the other, only the party opposing disclosure will have access to all the facts." *Id*. Thus, "[i]n recognition of this problem, government agencies seeking to withhold documents requested under the FOIA have been required to supply the opposing party and the

10

court with a '*Vaughn* index[.]'" *Id.* (citing *King v. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987) and *Mead Data Central*, 566 F.2d at 251). The purpose of an agency's *Vaughn* index and accompanying affidavits is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991) (citing *King v. Dep't of Justice*, 830 F.2d at 218).

A *Vaughn* index consists of a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and *correlating those claims with the particular part of a withheld document to which they apply*." *Mead Data Central*, 566 F.2d at 251 (citing *Vaughn*) (emphasis added); *see also Lion Raisins v. Dep't. of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004) (A *Vaughn* index identifies "the documents withheld, the FOIA exemptions claimed, and [provides] a particularized explanation of why each document falls within the claimed exemption."). In *King*, 830 F.2d at 219, the D.C. Circuit reviewed the case law applying *Vaughn*, emphasizing that:

> [s]pecificity is the defining requirement of the *Vaughn* index and affidavit; affidavits cannot support summary judgment if they are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping." To accept an inadequately supported exemption claim "would constitute an abandonment of the trial court's obligation under the FOIA to conduct a *de novo* review."

*Id.* (citations omitted); *see also Morely v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (noting that "[t]he court has provided repeated instruction on the specificity required of a *Vaughn* index").

As the court concluded in *King*, "[c]ategorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *King*, 830 F.2d at 224 (footnote omitted); *see also Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1296 (N.D. Cal. 1992) (citing *Wiener*) ("The 9th Circuit has followed other circuits in rejecting the 'categorical' approach of listing the 'types of harms' that generally result when a 'type' of information is disclosed."). "Instead, the agency must describe '*each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information.'" *Alliance for Nuclear Arms Control*, 818 F. Supp. at 1296 (citing *King*) (emphasis in original).

2.      DEA's Failure to Submit a *Vaughn* Contravenes the Ninth Circuit's

11

1    Directive and Necessarily Fails to Satisfy Defendant's Procedural
     Obligations

2          Here, in contravention of the Court of Appeal's clear directive, DEA has simply chosen not

3    to submit a *Vaughn* index at all.[17] Failure to submit a *Vaughn* index necessarily precludes both this

4    Court and Mr. Pickard from assessing the propriety of the agency's withholdings generally, let

5    alone reviewing the "applicability of the claimed FOIA exemptions on a document by document

6    basis." *Ctr. for Medicare Advocacy v. Dep't of Health and Human Servs.*, 577 F. Supp. 2d 221, 238

7    (D.D.C. 2008). Indeed, from the agency's filings, it is not even clear how many records are at issue

8    in the case, making it impossible to correlate claimed exemptions to particular parts of withheld

9    documents.[18] *See Mead Data Central*, 566 F.2d at 251.

10         Further, without a *Vaughn* index, it is impossible to fully assess (1) the adequacy of DEA's

11   search, *see Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) ("The agency must: demonstrate

12   that it has conducted a search reasonably calculated to uncover all relevant documents."); *but see*

13   Section IV(B)(2), *supra* at 13 n. 18 (discussing difficulty in determining whether Defendant has

14

15

16   _____

17   [17] DEA sought to file its *Vaughn* under seal because it "quantifie[d] and qualifie[d] the types, number and content of the records [concerning Skinner], and when they were created." (Decl. of

18   William C. Little, Jr. in Support of Administrative Motion to File Under Seal (Dkt. No. 142-1)). Far from a justification, a comprehensive cataloguing of documents is the very purpose of a

19   *Vaughn*. *See Vaughn*, 484 F.2d at 827. Nor can the content of the withheld records justify the non-production of a publicly available *Vaughn*: *Vaughn* indices are routinely used to describe and

20   catalogue records withheld under Exemption 1 of FOIA, where, by definition, the release of the records' content would cause, at least, "serious damage to the national security." Exec. Ord. 13,526

21   § 1.2(a)(2); *see also Wiener*, 943 F.2d at 980 (holding FBI's *Vaughn* index to withhold records under Exemption 1 insufficiently detailed). Especially in light of the Court of Appeal's clear

22   command, there simply is no adequate justification for DEA's failure to produce a *Vaughn* index

23   here.

     [18] In fact, from the agency's filings, it is not at all clear that DEA has even *searched* for responsive

24   records. (*See, e.g.*, Little Decl. ¶¶ 6 ("Any records deemed responsive to plaintiff's FOIA request would be criminal investigative records. *If any such records exist*, the investigative information

25   related to Gordon Todd Skinner *is reasonably likely* to be contained or maintained in the [DEA records system.]") (emphasis added);16 ("Of the records contained in a criminal investigative file,

26   the information described by plaintiff, *if it existed*, would be contained on a DEA ROI, DEA Form 6 and/or 6a, or DEA, Personal History Report, DEA 2020.") (emphasis added); *but see* Little Decl.

27   ¶ 37 ("The records deemed responsive to plaintiff's FOIA request are criminal investigative

28   records.")).

conducted a search for responsive records at all);[19] (2) Defendant's compliance with FOIA's requirement to segregate and release all non-exempt information, *see* 5 U.S.C. § 552(b) (defendant must release "any reasonably segregable portion of a record"), *but see* Section IV(C), *infra* at 15-17 (noting DEA's failure to even mention segregability); and (3) the legitimacy of the agency's withholdings. *See King*, 830 F.2d at 224 (categorical description of records coupled with categorical indication of consequences "clearly inadequate"); *but see* Little Decl. ¶¶ 36-57 (asserting Exemptions 7(C), (D), (E) and (F) to categorically justify all withholdings).

Without a description of "*each* document or portion thereof withheld," and, for "*each* withholding," a description of "the consequences of disclosing the sought-after information," DEA necessarily cannot satisfy its burden at summary judgment. *Alliance for Nuclear Arms Control*, 818 F. Supp. at 1296 (emphasis in original) (internal citations omitted). Because DEA has failed to provide a specifically detailed *Vaughn* index, summary judgment for the agency is not warranted.

3.   DEA's Reliance on the Generic and Conclusory Assertions Contained Within the Little Declaration Does Not Cure the Agency's Procedural Shortcomings

Instead of complying with the Court of Appeal's directive and producing a properly detailed *Vaughn* index that would allow this Court and Mr. Pickard to test DEA's claimed exemptions, the agency instead chose to rely entirely on the Little Declaration to support its motion. (*See* Rumold Decl. ¶ 2). However the generic, sweeping, and conclusory assertions of exemption contained within the Little Declaration do not even approximate the level of specificity necessary to carry the agency's burden.

For example, the Little Declaration fails to provide enough information to demonstrate that Exemption 7 applies to the withheld record. In order to withhold records under Exemption 7, DEA

---

[19] Beyond failing to conduct an adequate search, it appears DEA has also improperly narrowed the files systems to be searched. The Little Declaration states that records on Skinner, "if any records exist" were likely to be found in two records systems" the "Investigative Filing and Reporting System (IFRS)" and the "Operations Files." (Little Decl. ¶ 6). However, previously Little has declared that "information related to Gordon Todd Skinner" is likely to be found or maintained not only in IFRS and Operations Files, but also in the "DEA Planning and Inspection Division records." (First Supplemental Declaration of WIlliam C. Little ¶ 18 (Doc. No. 67)). Without explanation, DEA now unilaterally excludes the Planning and Inspection Division records from the scope of the search.

13

Case No. 06-cv-00185 CRB      NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S THIRD MOT. SUMM. J.

must satisfy a threshold showing that the information has been "compiled for law enforcement purposes." Although agencies with a "clear law enforcement mandate," like DEA, must only show a "'rational nexus' between enforcement of a federal law and the document for which an exemption is claimed," *Church of Scientology*, 611 F.2d at 748, it is not the case that *every* document created by the DEA is for "law enforcement purposes." *See Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984) (records created to "insure compliance with the agency's statutory mandate and regulations is not protected from public scrutiny under Exemption 7"). Here, it is possible that responsive records – such as records reflecting Skinner's deactivation as an informant – that do not satisfy this threshold showing have been withheld under Exemption 7. Again, because the agency's declaration fails to describe *any* record with particularity, it is impossible for both this Court and Mr. Pickard to make an informed judgment about the propriety of DEA's Exemption 7 claims.

As another example, to withhold records under Exemption 7(C), a court must engage in a balancing of interests between the public interest in disclosure and the privacy interests of parties' whose information is reflected in the records. *See Reporters Committee*, 489 U.S. at 767. Here, after noting that responsive records "contain names and other identifying information" of third parties, (Little Decl. ¶ 38), the agency only offers a conclusion as evidence of having performed the requisite balancing:

> The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission . . . . In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (b)(7)(C)[.]

(Little Decl. ¶ 40). Thus, to support its Exemption 7(C) withholdings, the Little Declaration provides nothing more than a statement that the records contain information about third parties, a restatement of the agency's obligation to balance interests, and a conclusory assertion of the results of the agency's alleged  balancing. (*See id*. ¶ 38-40). Defendant does nothing to assess the relative and various privacy interests of officially confirmed informants, such as Skinner, convicted felons, such as Skinner, or the various "other third parties" whose information might be reflected in responsive records. (*See* Little Decl. ¶ 38).

---

14

In *Wiener*, the FBI relied on tactics similar to those which DEA attempts to employ here: the FBI argued that "the privacy interests of third persons whose names appear in withheld documents" outweighed the public interest in disclosure. *Id*. at 985. To sustain its burden, the FBI argued its declaration "need only recite the fact that the document was withheld to protect the privacy interests of third persons." *Id*. Rejecting the FBI's argument, the Court held:

> The privacy interest of third persons whose names appear in [agency records], the public interest in disclosure, and a proper balancing of the two, will vary depending upon the content of the information and the nature of the attending circumstances. Because it cannot be concluded that the privacy interests characteristically outweigh the public interest with respect to all of the documents withheld under Exemption 7C, the [agency's] categorical [declaration] is inadequate.

*Id*. Just as in *Wiener*, the Little Declaration's sweeping and categorical claims of exemption under 7(C) are insufficient to carry the agency's burden. *See id*. at 984 (declarations must "provide the FOIA requester with the information necessary to contest the agency's conclusion that [the Exemption 7(C)] balance tips in favor of withholding").

However, the inadequate categorical assertion of exemptions is not limited to DEA's threshold showing under Exemption 7 or its claims under Exemption 7(C). (*See, e.g.*, Little Decl. ¶¶ 44-47 (Exemption 7(D)); ¶¶ 48-53 (Exemption 7(E)); ¶¶ 54-57 (Exemption 7(F))). Because DEA has chosen not to submit a *Vaughn* index, and because the Little Declaration's generalized and categorical claims are woefully inadequate, DEA is not entitled to summary judgment.

### C.     Mr. Pickard Is Entitled to Summary Judgment Because DEA Has Failed to Segregate and Release All Non-Exempt Information

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided. . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b); *Pacific Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). The "'segregability' requirement applies to all documents and all exemptions in the FOIA." *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984); *see also Church of Scientology*, 611 F.2d at 744. To demonstrate its compliance with FOIA's segregability requirement, an agency must "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data Central*, 566 F.2d at 261; *see also NRDC v. Dep't of Defense,* 388 F. Supp. 2d 1086, 1105

15

(C.D. Cal. 2005) (finding an agency declaration inadequate on segregability grounds when it stated merely that "none of the withheld documents contain reasonably segregable information that is not exempt").

"In the Ninth Circuit, the district court must review the agency's 'segregability' decisions on a document-by-document basis." *NRDC*, 388 F. Supp. 2d at 1096 (citing *Wiener*). "The district court must make specific factual findings on the issue of segregability to establish that the required *de novo* review of the agency's withholding decision has in fact taken place." *Alliance for Nuclear Arms Control*, 818 F. Supp. at 1296 (citing *Wiener*). So important is the segregability requirement to FOIA's broad disclosure mandate that trial courts have an affirmative duty to consider the issue of segregability *sua sponte*. *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). Indeed, "[i]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Church of Scientology*, 611 F.2d at 744 (citations and internal quotation marks omitted); *see also Billington v. Dep't of Justice*, 233 F.3d 581, 586 (D.C. Cir. 2000).

Here, DEA has not even attempted to segregate allegedly exempt from non-exempt information. The words "segregate," "segregable," or "segregability" do not appear in any form in the agency's moving papers or supporting affidavits. DEA has even failed to make a conclusory assertion that § 552(b)'s requirements have been satisfied, let alone perform the document-by-document and line-by-line analysis necessary to carry its burden at summary judgment. (*See* Def. Mot. at 4-14; Little Decl. ¶¶ 33-63). Again, DEA falls woefully short of satisfying its burden.

Because "[t]he focus of the FOIA is information, not documents," DEA "cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Central*, 566 F.2d at 260. Even accepting as true the assertions made in the Little Declaration – which Mr. Pickard strenuously contests – it is apparent that material falling outside the claimed exemptions has been improperly withheld. A straightforward example of this is the DEA's withholding of dates. (*See, e.g.*, Little Decl. ¶ 23 ("Blocks 34 and 38 through 46 contained . . . dates"); ¶ 25 (Blocks 1 through 7 contain information related to the claimant, including . . . the date that the funds were received"); ¶ 26 (records concern "date of payment")).

16

However, the agency fails to explain how the release of some dates would "constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), "disclose the identity of a confidential source," 5 U.S.C. § 552(b)(7)(D), "disclose techniques and procedures," 5 U.S.C. § 552(b)(7)(E), or "endanger the life or physical safety" of an individual, 5 U.S.C. § 552(b)(7)(F). The withholding of dates – as is likely the case for much of the information withheld by DEA – is unwarranted under any of the claimed exemptions.[20]

Thus, because DEA has not even attempted to segregate and release non-exempt information, because it is apparent that non-exempt information has been withheld from the requested records, and because this Court must "make specific factual findings on the issue of segregability," *Alliance for Nuclear Arms Control*, 818 F. Supp. at 1296, summary judgment for the agency is not warranted.

**D.    Mr. Pickard Is Entitled to Summary Judgment Because DEA Has Improperly Applied Exemption 7 to Withhold Responsive Records**

In the absence of a *Vaughn* index and specific, supporting affidavits, it is nearly impossible to systematically assess the legitimacy of DEA's withholdings. Nevertheless, even with the paltry evidentiary showings provided by the agency, it is apparent that DEA has asserted Exemption 7 more broadly than the law allows.

1.    Defendant Improperly Withheld Records Under Exemption 7(C)

Exemption 7(C) provides an exemption from disclosure for records when release "could be reasonably expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

As described previously, a "document is properly withheld under Exemption 7(C) if the public interest in disclosure is outweighed by the individual privacy interests that would suffer from disclosure." *Wiener*, 943 F.2d at 984 (citing *Reporters Committee*). Thus, a court must engage in a balancing between the public interest in the information and the individual privacy interests at stake. *Reporters Committee*, 489 U.S. at 767. This Circuit has repeatedly recognized that there is a

---

[20] Or, alternatively, even if a date could be withheld under Exemption 7, DEA has made no attempt to justify its withholding. (*See generally* Def. Mot. at 4-14).

17

Case No. 06-cv-00185 CRB        NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S THIRD MOT. SUMM. J.

substantial "public interest in ensuring the integrity and the reliability of government investigation procedures." *Hunt v. FBI*, 972 F.2d 286, 289-90 (9th Cir. 1992). This interest is heightened "where there is some evidence of wrongdoing on the part of the government official." *Id.* (citing *Castaneda v. United States*, 757 F.2d 1010, 1012 (9th Cir. 1985) (holding disclosure of undercover agent's identity appropriate where investigative reports contained internal inconsistencies and truthfulness of investigator was in doubt). Where allegations of government misconduct exist, withholding under Exemption 7(C) is improper when the requester can "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety *might* have occurred." *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1138 (9th Cir. 2008) (citing *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)) (emphasis added). Due to DEA's inadequate *Vaughn* submissions, it is impossible to thoroughly balance the public and privacy interests at stake for all individuals whose information is reflected in the withheld records. However, at least with regards to records implicating Skinner's privacy interests, the public interest in disclosure vastly outweighs Skinner's negligible privacy interests in the records.

There is a significant public interest in disclosure of Skinner's records in order to "ensur[e] both the integrity and reliability" of government officials and criminal informants, and to ensure "the fair and impartial operation" of the criminal justice system. *Castaneda*, 757 F.2d at 1012. Mr. Pickard has repeatedly provided evidence that the DEA improperly, and perhaps illegally, handled its relationship with Skinner. First, as described above, there is evidence that both the DEA and Skinner were not forthcoming with a federal court concerning the number of times Skinner had acted as an informant. *See* Section II(C), *supra* at 5 (discussing inconsistencies between evidence presented by government at trial and information in public domain). Second, Mr. Pickard has presented evidence showing that the DEA permitted Skinner to "use funds that came from illicit activity" to maintain his opulent "lifestyle." *See* Section II(C), *supra* at 5-6 (discussing money laundering, knowledge of government officials, and absence of payment for DEA informant activities); *see also United States v. Shaffer*, 789 F.2d 682, 691 (9th Cir. 1986) (government's failure to pursue income tax liability indicates "secret deal of leniency"). This evidence, taken

18

Case No. 06-cv-00185 CRB        NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
                                        OPP. TO DEF'S THIRD MOT. SUMM. J.

together, is more than enough to "warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Lane*, 523 F.3d at 1138.

Moreover, courts have held that the public interest in disclosing records concerning an agency's use of questionable "career informants" necessarily outweighs the privacy interests of those informants. *See, e.g.*, *Bennett v. DEA*, 55 F. Supp. 2d 36, 42-43 (D.D.C. 1999); *see also Hidalgo v. FBI*, Civ. No. 04-0562, 2005 WL 6133690 (D.D.C. Sept. 29, 2005). In *Bennett*, the Court held that, where plaintiff had shown "instances in which [the informant] has perjured himself about his criminal record, and the government's apparent complacency about this conduct," the "privacy interest is outweighed by the great public interest in shedding light on the activities of DEA, which employed [the informant] and paid him substantially despite his criminal history." *Bennett*, 55 F. Supp. 2d at 41, 42. Moreover, in *Bennett*, where the informant had "made a career out of serving as a government informant," *id*. at 42, there was a "substantial public interest in exposing any wrongdoing in which" the DEA and the informant "may have engaged." *Id*. Identically, here, Mr. Pickard has shown that neither the DEA nor Skinner provided a federal court with accurate information concerning the scope of Skinner's informant activities and that, because of his relationship with the DEA, Skinner was allowed to retain substantial sums of money in exchange for his cooperation. *See also Hidalgo*, 2005 WL 6133690 at *2 ("substantial inconsistencies in trial testimony" and violation of the "law with impunity while serving as an informant" demonstrate public interest in withheld records).

In contrast, Skinner's privacy interest in the requested records must be at its nadir. First, Skinner is a convicted felon, serving consecutive life, sixty, and thirty-year sentences in Oklahoma for kidnapping, assault, and conspiracy. *Skinner v. Oklahoma*, 210 P.3d at 841. As a prisoner, Skinner's privacy interests are necessarily diminished. *See Hudson v. Palmer*, 468 U.S. 517, 525 (1984). Second, DEA asserts that the "stigmatizing effect" of having one's name associated with law enforcement records constitutes a cognizable privacy interest in this case, (Def. Mot. at 8 (citing Little Decl. ¶ 38)); however, this interest cannot apply to *all* responsive records – especially those concerning Skinner – as his role as an informant has already been officially confirmed by DEA. *See Pickard v. Dep't of Justice*, 653 F.3d at 784. Thus, any stigma has already attached, and

19

any privacy interest Skinner may have in avoiding the "stigmatizing effect" should not tilt the Exemption 7(C) balance of interests. *Hidalgo*, 2005 WL 6133690 (noting that the agency's possession of records on informant "does no incremental harm to [the informant's] reputation.").

Finally, defendant relies significantly on the Supreme Court's decision in *Reporters Committee*, 489 U.S. 749 (1989) to justify its withholdings under Exemption 7(C). (Def. Mot. at 7-9). In *Reporters Committee*, the Supreme Court held criminal "rap sheets" could be withheld under Exemption 7(C). *Id*. at 749. The Court reasoned that the privacy interest in the "practical obscurity" of past, public convictions outweighed the public interest in disclosure of the agency's summary of those convictions. *Id*. at 762. Fundamental to the Court's decision, however, was the fact that the rap sheet was simply "a computerized summary" of publicly available information. *See id*. at 764; *but see Long v. Dep't of Justice*, 450 F.Supp.2d 42, 89 (D.D.C. 2006) (noting, with PACER, the privacy interests in the "practical obscurity" of information is "significantly less substantial than those in *Reporters Committee*"). Also important in the Court's calculus was that disclosure of the rap sheet would reveal "little or nothing about an agency's own conduct." *Reporters Committee*, 489 U.S. at 773. Here, in contrast, the information contained within responsive records will actually shed light on the *practices* of DEA in maintaining its relationship with Skinner. The records at issue were not computer-generated summaries of already-available public information, (*see* Little Decl. ¶¶ 16-32), but – instead – were created and curated by DEA agents. Moreover, Mr. Pickard does not seek DEA records in this case in lieu of a "diligent search of courthouse files, county archives, and local police stations," *Reporters Committee*, 489 U.S. at 763. Rather, after already completing a "diligent search" and uncovering evidence of misconduct, disclosure of the DEA's files will provide valuable public information about the agency's conduct. While *Reporters Committee* establishes important precedent for the protection of individuals' privacy interests in criminal rap sheets, those interests are not implicated here.

Consequently, because Mr. Pickard has provided evidence that would "warrant a belief by a reasonable person that the alleged Government impropriety might have occurred," *Favish*, 541 U.S. at 174; because the public's interest in career informants is high, *see, e.g.*, *Bennett*, 55 F.

20

Case No. 06-cv-00185 CRB        Not. of Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.;
Opp. to Def's Third Mot. Summ. J.

Supp. 2d at 42; and because the privacy interests of Skinner are significantly diminished, *Hudson*, 468 U.S. at 525; DEA has improperly withheld records under Exemption 7(C).

### 2.   DEA Improperly Withheld Records Under Exemption 7(D)

Exemption 7(D) allows the government to withhold information compiled for law enforcement purposes if (1) it "could reasonably be expected to disclose the identity of a confidential source," or (2) it is information provided by a confidential source and was "compiled by criminal law enforcement authority in the course of a criminal investigation[.]" 5 U.S.C. § 552(b)(7)(D).

As a threshold matter, because Skinner has been "officially confirmed" as a DEA informant, *Pickard v. Dep't of Justice*, 653 F.3d at 788, any occurrence of Skinner's name within responsive DEA records is improperly withheld under the first prong of Exemption 7(D). *Kiraly v. FBI*, 728 F.2d 273, 279 n. 8 (6th Cir. 1984) ("[I]t would undermine the whole importance of exemption (b)(7)(D)" to disclose the name of a confidential informant.); *see* 5 U.S.C. § 552(b)(7)(D) (information may be withheld only if it "could reasonably be expected to disclose the *identity* of a confidential source") (emphasis added); *see also Powell v. Dep't of Justice*, 584 F. Supp. 1508, 1529 (N.D. Cal. 1984).[21]

Further, much of the *information* provided by Skinner and contained within DEA records is not available for withholding under the second prong of Exemption 7(D). 5 U.S.C. § 552(b)(7)(D) (information "furnished by a confidential source"). Some courts have held that an informant's public testimony does not waive Exemption 7(D)'s protection for *all* information provided by the informant, *see, e.g. Irons v. FBI*, 880 F.2d 1446 (1st Cir. 1989), *but see Van Bourg, Allen, Weinberg & Roger v. NLRB*, 751 F.2d 982, 986 (9th Cir. 1985) (rejecting agency's claim of confidentiality under Exemption 7(D) because persons testifying for an agency "have no reasonable expectation of confidentiality and should expect their names and testimony to be revealed if the investigation results in a formal hearing"). Indeed, the scope of the "waiver" affected by a source's testimony was left explicitly undecided by the Supreme Court in *Dep't of*

---

[21] Indeed, where an agency has officially confirmed the existence of an informant – as is the case here – the rationales for Exemption 7(C), 7(D), and 7(F) are largely undermined.

21

Case No. 06-cv-00185 CRB        NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S THIRD MOT. SUMM. J.

*Justice v. Landano*, 508 U.S. 165, 173-74 (1993), a case relied upon by Defendant. (*See* Def. Mot. at 11-12); *Landano*, 508 U.S. at 173-74 ("We need not reach the question whether a confidential source's public testimony 'waives' the FBI's right to withhold information provided by that source."). However, at the very least, information provided by Skinner that has been disclosed at trial may not be withheld under Exemption 7(D). *Irons*, 880 F.2d at 1448 (noting that "the government does not contest the plaintiff's right to obtain documents that reveal no more than what . . . sources have already revealed at trial").

In the absence of more specific *Vaughn* submissions, it is impossible to entirely assess the breadth of DEA's Exemption 7(D) claims; however, even without a full and specific justification for the agency's withholdings, it is apparent that Exemption 7(D) has been asserted more broadly than the law allows.

3.     DEA Improperly Withheld Records Under Exemption 7(E)

Exemption 7(E) allows an agency to withhold documents "compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions" only if the agency demonstrates a reasonable risk that criminals will use the information to circumvent detection, apprehension, or prosecution. 5 U.S.C. § 552(b)(7)(E); *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1035-36 (N.D. Cal. 2005).[22]

Ninth Circuit case law holds that Exemption 7(E) "only exempts investigative techniques not generally known to the public." *Rosenfeld v. United States Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995). Here, the agency claims that release of "NADDIS numbers" and "confidential

---

[22] Contrary to Defendant's claims, (Def. Mot. at 12-13), courts in this District have held the government must show a reasonable risk of circumvention for both law enforcement "guidelines" *and* "techniques or procedures." *See, e.g. Feshbach*, 5 F. Supp. 2d at 786 n. 11 (relying on *Davin v. DOJ*, 60 F.3d 1043, 1064 (3rd Cir. 1995) and specifically discrediting the government's argument that it need not show risk of circumvention for techniques and procedures); s*ee also Gordon*, 388 F.Supp.2d at 1035; *Asian Law Caucus v. DHS*, 2008 U.S. Dist. LEXIS 98344, *8 (N.D. Cal. Nov. 24, 2008) (noting "[t]he Ninth Circuit has not squarely addressed this issue"). Even if this were not the law in the Ninth Circuit, this "does not excuse the agency from providing the Court with information sufficient for it to decide whether the material is properly withheld under Exemption 7(E)." *Smith v. BATF*, 977 F. Supp. 496, 501 (D.D.C. 1997).

22

Case No. 06-cv-00185 CRB        NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S THIRD MOT. SUMM. J.

informant numbers" would risk circumvention of the law.[23] (Def. Mot. at 13; Little Decl. ¶ 52). Yet, as with all DEA's justifications for withholding, the withholding of NADDIS numbers and informant identifier codes is justified by nothing more than a conclusory assertion that their release "would allow an individual to avoid detection and apprehension which could interfere with [the] ability of DEA to affectively carry out its mission." (Little Decl. ¶ 52). DEA fails to explain, however, precisely *how* the release of these numbers could risk circumvention of the law. This is especially true, given that NADDIS numbers are regularly released without discernable effect. *See, e.g.*, *Zavala v. DEA*, 667 F.Supp.2d 85 (D.D.C 2009) ("individual was indexed in NADDIS under number 6082390"); (*see also* Pickard Decl., Ex. 9, "Excerpt of DEA Form – 6a" (listing NADDIS number for Skinner as 2002804)). And, of course, the withholding of Skinner's NADDIS number from the requested records simply cannot be expected to result in circumvention of the law for one fundamental reason: Skinner is currently serving a life sentence in an Oklahoma prison.

DEA has failed to show that disclosing records withheld under Exemption 7(E) would lead to circumvention of the law. As such, these records must be released.

### 4.   DEA Improperly Withheld Records Under Exemption 7(F)

Exemption 7(F) exempts records or information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). In general, this exemption is claimed to withhold the names of law enforcement officials, although courts have extended its scope to cooperating witnesses. *See Lawyers' Committee for Civ. Rights of the S.F. Bay Area v. Dep't of Treasury*, 2009 U.S. Dist. LEXIS 42327 (N.D. Cal. May 11, 2009).

Without an appropriately tailored *Vaughn* index, it is impossible to assess the propriety of DEA's withholdings under Exemption 7(F). While Mr. Pickard does not contest that – in some instances, the names of DEA or other law enforcement officials may be withheld from records if their disclosure would "endanger the life or physical safety" of the officials; however, the exemption cannot be exerted to withhold the names of *all* officials, such as DEA Special Agent Karl Nichols – the agent responsible for the DEA's relationship with Skinner and whose identity is

---

[23] Mr. Pickard does not contest the withholding of "G-DEP codes" under Exemption 7(E). (*See* Def. Mot. at 12-13).

23

Case No. 06-cv-00185 CRB          NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S THIRD MOT. SUMM. J.

already publicly known. *See, e.g.*, *United States. v. Pickard*, 2009 WL 939050, *20 (D. Kan. April 6, 2009) ("Karl Nichols, a special agent with the DEA"); *United States v. Pickard*, 278 F. Supp. 2d at 1216 ("Agent Karl Nichols, a DEA special agent"). Moreover, as described above, *see* Section IV(D)(2), *supra* at 21, Skinner's name similarly may not be withheld under Exemption 7(E): because his identity has already been disclosed and confirmed, the disclosure of his name within responsive records necessarily cannot "reasonably be expected to endanger [his] life or physical safety." *See* 5 U.S.C. 552(b)(7)(F).

While Mr. Pickard does not contest the withholding of law enforcement officials names absolutely, due to the lack of specificity in DEA's *Vaughn* submissions, he is unable to adequately assess, and knowingly withdraw, his challenge to DEA's withholdings under Exemption 7(F).

## VI.   CONCLUSION

The Ninth Circuit presented DEA with a clear directive: it "must now produce a *Vaughn* index in response" to Mr. Pickard's FOIA request. *See Pickard v. Dep't of Justice*, 653 F.3d 782 (9th Cir. 2011). Simply put, the DEA has chosen to ignore the Court's command, leaving DEA's evidentiary basis woefully short of the specificity required to warrant summary judgment. For the foregoing reasons, DEA's Motion for Summary Judgment should be denied, and Mr. Pickard's Cross Motion should be granted. Mr. Pickard respectfully urges this Court to enter an order compelling DEA to produce all improperly withheld records.

DATED:  May 25, 2012                              Respectfully submitted,


   */s/ Mark Rumold*
Mark Rumold

901 Cortland Ave., Apt. B
San Francisco, CA  94110
Telephone:  (415) 694-1639

Attorney for Plaintiff

Case No. 06-cv-00185 CRB        NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S THIRD MOT. SUMM. J.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2012, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

Executed on May 25, 2012, in San Francisco, California.


*/s/ Mark Rumold*
Mark Rumold

Case No. 06-cv-00185 CRB          NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
                                              OPP. TO DEF'S THIRD MOT. SUMM. J.