MELINDA HAAG (CSBN 132612)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
NEILL T. TSENG (CSBN 220348)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7155
    FAX: (415) 436-6927
    neill.tseng@usdoj.gov

KATHERINE DUNCAN
Certified Student Attorney

Attorneys for Defendant
UNITED STATES DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM PICKARD,<br><br>            Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>            Defendant. | C 06-00185 CRB<br><br>**DEFENDANT'S REPLY IN SUPPORT OF THIRD MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 28, 2012<br>Time: 10:00 a.m.<br>Place: Courtroom 6, 17th Floor, 450 Golden Gate Ave, San Francisco, California<br><br>Honorable Charles R. Breyer |

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

3   I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   II.     OBJECTIONS TO PLAINTIFF'S EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   III.    SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6   IV.     ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7           A.     No Vaughn Index is required. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8           B.     Exemptions 7(C), 7(D) 7(E) and 7(F). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9                  1.     Threshold Requirement of Exemption 7. . . . . . . . . . . . . . . . . . . . . . 6

10                 2.     Exemption 7(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11                 3.     Exemption 7(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12                 4.     Exemption 7(E). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

13                 5.     Exemption 7(F). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

14          C.     Segregability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

15          D.     Adequacy of Search. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

16

17   V.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allard K. Lowenstein International Human Rights Project v. Department of Homeland Sec.*, 626 F.3d 678 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Associated Press v. U.S. Department of Defense, 554 F.3d 274 (2d Cir. 2009).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Associated Press*, 554 F.3d at 287. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Benavides v. DEA, 968 F.2d 1243 (D.C. Cir. 1992).* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Benavides v. DEA*, 968 F.2d 1243 modified, 976 F.2d 751 (D.C. Cir. 1992). . . . . . . . . . . . . . . 13

*Benavides*, 968 F.2d at 1248. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

*Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . 2

*Bowen v. U.S. FDA*, 925 F.2d 1225 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Boyd v. Department of Justice*, 475 F.3d 381 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 12

*Boyd*, 475 F.3d at 390. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Brown v. FBI*, 658 F.2d 71 (2d Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015 (9th Cir. 2000). . . . . . . . . . . . . . 6

*Davis v. U.S. Department of Justice*, 968 F.2d 1276 (D.C. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . 9

*Davis*, 968 F.2d at 1279. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Davis*, 968  F.2d at 1279. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Davis*, 968 F.2d at 1280. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Davis*, 968 F.2d at 1281. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Favish*, 541 U.S. at 172. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ferguson v. FBI*, 957 F.2d 1059 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ferguson*, 957 F.2d at 1068. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Forsham v. Harris*, 445 U.S. 169 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hudson v. Palmer*, 468 U.S. 517 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hunt v. Federal Bur. of Investigation*, 972 F.2d 286 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . 12

*Hunt*, 972 F.2d at 290. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Irons v. FBI*, 880 F.2d 1446 (1st Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Irons v. FBI*, 880 F.2d 1446 (1st Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Irons*, 880 F.2d at 1449 (1st Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Irons*, 880 F.2d at 1455 (citations omitted). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Irons*, 880 F.2d at 1457. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Jackson v. Jimino*, 506 F. Supp. 2d 105 (N.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kanman v. IRS*, 56 F.3d 46 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kiraly v. FBI*, 728 F.2d 273 (6th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kiraly*, 728 F.2d at 278. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kiraly*, 728 F.2d at 278-80 (6th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kiraly*, 728 F.2d at 278. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lahr v. National Transport Safety Board*, 569 F.3d 964 (9th Cir. 2009). . . . . . . . . . . . . . . . . 22

*Lahr*, 569 F.3d at 986 (internal quotation marks and citations omitted). . . . . . . . . . . . . . . . . . 24

*Lahr*, 569 F.3d at 988.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Lame v. U.S. Department of Justice*, 654 F.2d 917 (3d Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . 19

*Lane v. Department of Interior*, 523 F.3d 1128 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lane*, 523 F.3d at 1136. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lane*, 523 F.3d at 1131-32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lane*, 523 F.3d at 1138. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lane*,  523 F.3d at 1137. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . 1

*Nehme*, 632 F.3d at 532. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Nehme*, 632 F.3d at 533-34. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Lesar v. U.S. Department of Justice*, 636 F.2d 472 (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . 19

*Lewis v. IRS*, 823 F.2d 375 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lewis v. IRS*, 823 F.2d 375 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lewis*, 823 F.2d at 378. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Long v. Department of Justice*, 450 F. Supp. 2d 42 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . 13

*Military Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Minier v. CIA*, 88 F.3d 796 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*National Archives & Records Admin. v. Favish*, 541 U.S. 157 (2003). . . . . . . . . . . . . . . . . . . . . . 8

*Orr v. Bank of America NT & SA*, 285 F.3d 764 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Orr*, 285 F.3d at 776. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Orr*, 285 F.3d at 777-78. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Orr*, 285 F.3d at 778. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Parker v. Department of Justice*, 934 F.2d 375 (D.C. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . 18

*Parker*, 934 F.2d at 380. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pickard*, 2009 U.S. Dist. LEXIS 30306 (Apr. 6, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pickard v. Department of Justice*, 653 F.3d 782 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pickard*, 653 F.3d at 788. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pickard*, 653 F.3d at 788. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pickard*, 653 F.3d at 788. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Powell v. Department of Justice*, 584 F. Supp. 1508 (N.D. Cal. 1984). . . . . . . . . . . . . . . . . . . . . 15

*Powell v. Department of Justice*, 584 F. Supp. at 1526. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Prows v. U.S. Department of Justice*, No. 87-1657-LFO, 1989 WL 39288
(D.D.C. Apr. 13, 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Raulerson v. Ashcroft*, 271 F. Supp. 2d 17 (D.D.C. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*SafeCard Serv., Inc. v. SEC*, 926 F.2d 1197 (D.C.Cir.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Scherer v. Kelley*, 584 F.2d 170 (7th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Schiffer v. FBI*, 78 F.3d 1405 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stern v. FBI*, 737 F.2d 84 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Stern*, 737 F.2d at 89. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Stern*, 737 F.2d at 90-91. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thomas v. Office of U.S. Attorney for E.D.N.Y.*, 928 F. Supp. 245 (E.D.N.Y.
1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Thomas v. Office of U.S. Attorney for E.D.N.Y.*, 928 F. Supp. at 251. . . . . . . . . . . . . . . . . . . . . 8

*Thomas v. U.S. Department of Justice*, 531 F. Supp. 2d 102 (D.D.C. 2008). . . . . . . . . . . . . . . . 8

*Tungjunyatham v. Johanns*, No. 06-1764, 2009 WL 3823920 (E.D. Cal. Nov. 13, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Reporters Committee*, 489 U.S. at 764. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Reporters Committee*, 489 U.S. at 771. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Reporters Committee*, 489 U.S. at 772 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Pickard*, 278 F. Supp. 2d 1217 (D. Kan. 2003). . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Pickard*, No. 00-40104-01/02-RDR, 2009 U.S. Dist. LEXIS 30306 (Apr. 6, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Pickard*, No. 00-40104-01/02-RDR, 2012 U.S. Dist. LEXIS 64671 (May 9, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*United States v. Pickard*, No. 00-40104-01/02-RDR (D. Kan.). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Valdez v. U.S. Department of Justice*, 474 F. Supp. 2d 128 (D.D.C. 2007). . . . . . . . . . . . . . . . . . 14

*Van Bourg, Allen, Weinberg & Roger v. NLRB*, 751 F.2d 982 (9th Cir. 1985). . . . . . . . . . . . . . . 16

*Van Bourg, Allen, Weinberg & Roger v. NLRB*, 751 F.2d at 986. . . . . . . . . . . . . . . . . . . . . . . 18

*Wiener v. FBI*, 943 F.2d 972 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Wiener*, 943 F.2d at 978. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 7

*Willamette Industrial, Inc. v. United States*, 689 F.2d 865 (9th Cir. 1982). . . . . . . . . . . . . . . . . 23

*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**FEDERAL STATUTES**

5 U.S.C. § 552(a)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

5 U.S.C. § 552(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

5 U.S.C. § 552(b)(7)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5 U.S.C. § 552(b)(7)(F). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

5 U.S.C. § 552(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Civ. P. 56(c)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 602. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 901(a),(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## I.   **INTRODUCTION.**

Plaintiff continues to use FOIA to try to obtain DEA records pertaining to a third party, Gordon Todd Skinner, which are exempt under FOIA.  Plaintiff's tired allegations of government misconduct have been continually rejected by the Kansas district court and the Tenth Circuit and are unsupported by the record.  Additionally, plaintiff tries to stretch the impact of official confirmation beyond what the statute or caselaw permits.  Because the requested records are exempt, the Court should grant defendant's third motion for summary judgment and deny plaintiff's cross-motion for summary judgment.

## II.   **OBJECTIONS TO PLAINTIFF'S EVIDENCE.**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of Am. NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (citations omitted).  Defendant objects to and moves to strike the Decl. of William Pickard (Doc. #154) and Exs. 1 through 9 attached thereto, as well as the documents cited in the Opp. (Doc. #152) at n. 2, 3, 4, 6.  Initially, plaintiff's declaration should be stricken in its entirety.  Plaintiff has not shown that he has personal knowledge of the matters therein, as required by Fed. R. Evid. 602 and Fed. R. Civ. P. 56(c)(4).  Also, at the bottom of the declaration, plaintiff declares "under penalty of perjury . . . that the foregoing is true and correct *to the best of my knowledge and belief*."  Doc. #154 at 3 (emphasis added).  The bolded phrase is "not in compliance with 28 U.S.C. § 1746, which requires that a declaration be subscribed as true under penalty of perjury."  Tungjunyatham v. Johanns, No. 06-1764, 2009 WL 3823920, at *6 n.3 (E.D. Cal. Nov. 13, 2009).

Exs. 1 through 9 have not been properly authenticated and should also be stricken.  Because plaintiff introduced those exhibits by attaching them to his declaration, they must be authenticated through personal knowledge.  See Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 533 (9th Cir. 2011) (citing Orr, 285 F.3d at 778 n.24).  A document authenticated "through personal knowledge must be attached to an affidavit, and the affiant must be a competent witness who wrote the document, signed it, used it, or saw others do so."  Nehme, 632 F.3d at 532 (citations omitted).  Plaintiff has failed to authenticate Exs. 1 through 9 through personal knowledge.  See Fed. R. Evid. 901(a), (b)(1).  His lack of competency to do so is illustrated by his

1    assertion that each exhibit is true and correct only "to the best of [plaintiff's] knowledge."  Doc.

2    #154 ¶¶ 2-10.

3        Moreover, Exs. 1 and 7 purport to be trial transcripts.   Plaintiff "cannot authenticate these

4    exhibits by stating in his affidavit that they are 'true and correct copies.'  His statement lacks

5    foundation even if he were present when the witnesses testified at the [] trial."  Orr, 285 F.3d at

6    776 (citing Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1182 (9th Cir. 1988)).  By the

7    same logic, plaintiff cannot authenticate Ex. 4, which purports to be records of casino transactions

8    made by Skinner, through his claim that they were introduced in evidence at his trial.  See Doc.

9    #154 ¶ 5.  Nor has plaintiff established personal knowledge to authenticate the letters at Exs. 5, 6

10   and 8.  Cf. Orr, 285 F.3d at 777-78.  He also has not shown personal knowledge about Exs. 2, 3

11   and 9.  Thus, Exs. 1 through 9 should be stricken.[1]  See id. at 773 ("We have repeatedly held that

12   unauthenticated documents cannot be considered in a motion for summary judgment.").

13       Authentication problems aside, Exs. 2 and 3 are also inadmissible for other reasons.  Ex. 2,

14   purportedly an excerpt from a motion to dismiss but with no signature or court file-stamp, is an

15   unsworn, out-of-court statement by Skinner's counsel offered for the truth of the matter asserted

16   and thus hearsay under Rule 802.  It also is not relevant under Rule 402, as it merely lists two

17   cases besides United States v. Pickard in ambiguous fashion without stating what role, if any,

18   Skinner had in them, or that Skinner served as a confidential source in those cases.  See Ex. 2 at 2.

19   Ex. 3 is purportedly an excerpt of three pages from a book written by Skinner's wife, Krystal

20   Cole, called Lysergic.  Plaintiff cites Ex. 3 as evidence that Skinner engaged in more criminal

21   activity than is known and that the DEA "covered up" a "long line of incidents" for Skinner and

---

23       [1]     As stated above, plaintiff must authenticate Exs. 1 through 9 through personal

24   knowledge.  But even if some of them could have been authenticated by other means, they are

25   not.  Exs. 1 and 7 do "not identify the names of the witness, the trial, and the judge and are not

     certified copies of the reporter's transcript."  Orr, 285 F.3d at 776.  Ex. 2 is not signed, there is no

26   file-stamp or other indication that it was ever filed with the court, nor is there any certification so

     as to be authenticated under Rule 901 or 902.  Exs. 5, 6 and 8 lack the distinctive characteristics

27   necessary to be self-authenticating under Rule 902(1)(b)(4).  Cf. Nehme, 632 F.3d at 533-34.

     And assuming without conceding that Ex. 9 could qualify as a public document, there is no seal,

28   signature or certification as required for self-authentication under Rule 902(1), (2) or (4).

1   Cole.  See Opp. at 4:20-5:3 (quoting from Ex. 3).  That is hearsay under Rule 802.

2         The articles cited in plaintiff's Opp. at n.2, 3, 4 and 6 should also be stricken.  Footnotes 2,

3   3 and 4 cite to newspaper articles that are inadmissible hearsay under Rule 802 because they are or

4   contain out-of-court statements offered for the truth of the matter asserted. "[H]earsay, and news

5   articles in particular, which are being offered for the truth asserted are inadmissible to defeat a

6   motion for summary judgment." Jackson v. Jimino, 506 F. Supp. 2d 105, 113 (N.D.N.Y. 2007);

7   accord Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997).

8         In addition, the articles are not relevant under Rule 402.  They do not pertain to or mention

9   Skinner at all.  The article cited in footnote 2 concerns an informant named Andrew Chambers.

10  The articles cited in footnotes 3 and 4 are about an informant named Essam Magid.  They describe

11  a case before Your Honor involving Magid and a defendant named Nabil Ismael, and an

12  investigation ordered by Your Honor arising out of that case.  As the Court can take judicial

13  notice of, Your Honor received from Pickard a complaint concerning the Nagid/Ismael matter,

14  and forwarded that complaint to the DOJ investigator.  See also Fourth Supp. Little Decl., filed

15  concurrently herewith, ¶ 11.  As the Court can take judicial notice of, the investigator concluded

16  that Pickard's case had no relation to the case against Ismael and found no evidence that the DEA

17  special agent did anything except testify truthfully and keep an accurate record of Skinner's

18  activities.  See also id. ¶ 12.  Because the articles in Opp. n. 2, 3 and 4 are not relevant to Skinner

19  or to the subject FOIA request and do not suggest any DEA misconduct involving Skinner, they

20  should be excluded as irrelevant under Rule 402.  Even if relevant, they should be excluded under

21  Rule 403 because they unfairly prejudice the DEA.

22        Footnote 6 cites to an article from Vice Magazine which is mostly an interview with Cole.

23  Plaintiff cites the article, for instance, for the proposition that: "In exchange for immunity for his

24  'problems in New Jersey,' Skinner continued his 'long and fruitful career as a government

25  informant.'" Opp. at 3:23-25 (citing the article referenced in footnote 6).  That is inadmissible

26  hearsay under Rule 802.  Defendant objects to the article to the extent plaintiff relies on it for the

27  truth of the matters asserted therein.

28

III.   **SUMMARY OF ARGUMENT.**

Plaintiff's evidence, even if admissible, fails to overcome the presumption of good faith afforded to the Third and Fourth Supp. Little Decl.  The requested records are exempt under Exemption 7(C) because plaintiff's private interest in obtaining the records to challenge his conviction is not a public interest as a matter of law and plaintiff's evidence does not show government misconduct.  Thus, there is no public interest to outweigh the third parties' "substantial" privacy interest.  The records are exempt under Exemption 7(D) because they could reasonably be expected to disclose the identity of, and information disclosed by, confidential sources.  The records are exempt under Exemption 7(E) because Little explained in detail why they would reveal investigative techniques and procedures and could reasonably be expected to result in circumvention of the law.  The records are exempt under Exemption 7(F) because they could reasonably be likely to endanger the life or physical safety of DEA Special Agents and other individuals.

IV.   **ARGUMENT.**

A.   **No Vaughn Index Is Required.**

Plaintiff asserts over and over that the Ninth Circuit gave a "clear command" or a "clear directive" to produce a <u>Vaughn</u> index.[2]  In fact, the issue is not so clear.  Initially, the Ninth Circuit has recognized that affidavits themselves may, as a matter of law, constitute an adequate <u>Vaughn</u> index.  <u>See</u> <u>Wiener v. FBI</u>, 943 F.2d 972, 978 (9th Cir. 1991) ("Whether the government's public affidavits constituted an adequate Vaughn index is a question of law reviewed *de novo*.").

But even if a <u>Vaughn</u> index is distinct from an affidavit, it is well-established that the former is but one way for an agency to support the withholding of records under FOIA, and that the latter may be used instead:

> <u>Vaughn</u> indices, however, are not appropriate in all FOIA cases. [<u>Wiener</u>, 943 F.2d at 978 n.5.] For example, when the affidavit submitted by an agency is sufficient to establish that the requested documents should not be disclosed, a

---

[2]     The DEA moved to file a <u>Vaughn</u> index under seal but when the motion was denied, the DEA exercised its right to "retain the document and not make it part of the record in the case."  Civil L.R. 79-5(e).

1

*Vaughn* index is not required.  *Lewis v. IRS*, 823 F.2d 375, 380 (9th Cir. 1987).

2

Moreover, when a FOIA requester has sufficient information to present a full legal argument, there is no need for a *Vaughn* index.  *Wiener*, 943 F.2d at 978 n.5 (citing *Brown v. FBI*, 658 F.2d 71 (2d Cir. 1981)).

3

*Minier v. CIA*, 88 F.3d 796, 804 (9th Cir. 1996).

4

5       In *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008), the Ninth Circuit

6   reiterated, "A court may rely solely on government affidavits 'so long as the affiants are

7   knowledgeable about the information sought and the affidavits are detailed enough to allow the

8   court to make an independent assessment of the government's claim.'"  (Citation omitted.)

9   Indeed, this Court previously recognized that it may grant summary judgment in this action based

10  on information provided in affidavits or declarations.  Doc. #108 at 3:18-24 (citing *Military Audit*

11  *Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  And plaintiff himself acknowledges, "An

12  agency may submit affidavits to satisfy its burden . . . ."  Opp. at 10:5-6 (citing *Kanman v. IRS*, 56

13  F.3d 46, 48 (9th Cir. 1994)).

14      "When . . . a claimed FOIA exemption is based on a general exclusion . . . which is

15  dependent on the category of the requested records rather than the individual subject matters

16  contained within each document, a *Vaughn* index is futile."  *Lewis v. IRS*, 823 F.2d 375, 380 (9th

17  Cir. 1987) (citations omitted); *see also* *U.S. Dep't of Justice v. Reporters Comm. for Freedom of*

18  *the Press*, 489 U.S. 749, 777 (1989) ("we conclude today, upon closer inspection of Exemption

19  7(C), that for an appropriate class of law enforcement records or information a categorical balance

20  may be undertaken there as well"); *Thomas v. Office of U.S. Attorney for E.D.N.Y.*, 928 F. Supp.

21  245, 251 (E.D.N.Y. 1996).  Here, the DEA has claimed general categorical exclusions based on

22  the records requested and the systems of records likely to contain responsive information.  Fourth

23  Supp. Little Decl. ¶ 34.

24      While it is true that the Ninth Circuit did use the words "*Vaughn* index" in remanding this

25  case, plaintiff's reading of the opinion is too literal and in tension with the circuit precedent set

26  forth above.  There is no apparent reason the Ninth Circuit would have mandated the filing of a

27  *Vaughn* index exclusively as opposed to an affidavit, given the procedural posture of the appeal

28  and the full context of the Ninth Circuit's mention of a *Vaughn* index:

Having previously officially confirmed Skinner's status as an informant, it may no longer refuse to confirm or deny that fact. It must now produce a <u>Vaughn</u> index in response to Pickard's FOIA request, raise whatever other exemptions may be appropriate, and let the district court determine whether the contents, as distinguished from the *existence*, of the officially confirmed records may be protected from disclosure under the DEA's claimed exemptions.

<u>Pickard v. Dep't of Justice</u>, 653 F.3d 782, 784 (9th Cir. 2011) (citing <u>Wolf v. CIA</u>, 473 F.3d 370, 380 (D.C. Cir. 2007); <u>Benavides v. DEA</u>, 968 F.2d 1243, 1248 (D.C. Cir. 1992)) (internal footnote omitted) (italics in original).[3]

The above passage demonstrates that, because a Glomar response does not apply, the next step is to determine whether any exemptions justify the withholding of documents. In moving the parties toward that next step, it is unlikely that the Ninth Circuit intended to contravene its prior precedent holding that parties can justify withholding through either a <u>Vaughn</u> index *or* an affidavit. The question decided on appeal – whether a Glomar response was appropriate – had nothing to do with whether a <u>Vaughn</u> index must subsequently be used in lieu of an affidavit. Furthermore, a Ninth Circuit three-judge panel cannot overrule a prior decision of that court, <u>see</u>, <u>e.g.</u>, <u>In re Complaint of Ross Island Sand & Gravel</u>, 226 F.3d 1015, 1018 (9th Cir. 2000), so to the extent the decision in <u>Pickard</u> would deprive the government *ex ante* of the opportunity to use an affidavit without any showing that an affidavit would be inadequate or that a <u>Vaughn</u> index was singularly required, it cannot be given plaintiff's reading. A more sensical reading is that the court directed the DEA to justify any withholdings in a manner consistent with prevailing law and mentioned a <u>Vaughn</u> index illustratively given that "[t]he role of the Vaughn index in enabling the adversary process to function in FOIA cases is universally recognized," <u>Wiener</u>, 943 F.2d at 978 n.5, but did not restrict the DEA to that tool.

**B.      Exemptions 7(C), 7(D), 7(E) and 7(F).**

**1.      Threshold Requirement of Exemption 7.**

This Court previously adjudicated this issue in the DEA's favor, stating, "In view of the nature of plaintiff's FOIA request and the descriptions of the systems of records where responsive

---

[3]      Notably, neither opinion the Ninth Circuit cited, <u>Wolf</u> or <u>Benavides</u>, required the production of a <u>Vaughn</u> index.

1   records likely would be located, the court is satisfied that any responsive records would be law

2   enforcement records covered by FOIA Exemption 7." Doc. #108 at 6:10-13. Although the Ninth

3   Circuit reversed this Court's grant of summary judgment, that was based on the unavailability of a

4   Glomar response and did not implicate or disturb this Court's ruling that the records at issue are

5   law enforcement records for purposes of Exemption 7. This Court's reasoning remains correct,

6   as "the nature of plaintiff's FOIA request" has not changed, nor have "the descriptions of the

7   systems of records where responsive records likely would be located" (aside from having been

8   supplemented with even more detailed information). Id. at 6:10-11. This Court specifically

9   recognized that those records could include "[i]nvestigative and disciplinary information related

10  to Skinner" and "[i]nformation regarding Skinner's status as a confidential source." See id. at

11  5:25-6:6.

12          Plaintiff's reliance on Stern v. FBI, 737 F.2d 84, 89 (D.C. Cir. 1984), regarding "records

13  created to 'insure compliance with the agency's statutory mandate and regulations,'" Opp. at 14:6-

14  7, is misplaced. First, Stern held in the government's favor that the records at issue had been

15  compiled for law enforcement purposes. 737 F.2d at 90-91. Second, "compliance with the

16  agency's statutory mandate and regulations" is not the rationale here, as William Little explained

17  in detail that any responsive records would be criminal investigative records. Third Supp. Little

18  Decl. (Doc. #140-1) ¶¶ 6-9, 13-32. Finally, Stern involved an agency's investigation of its own

19  employees, which is not the situation here. See Stern, 737 F.2d at 89.

20                          **2.      Exemption 7(C).**

21          Plaintiff can spout as much rhetoric about a public interest as he wishes, but at the end of

22  the day, it is obvious that the only reason he wants records about Skinner is to go on a fishing

23  expedition in the hope of finding something with which to challenge his conviction yet again.[4] As

24  a matter of law, this is not a public interest: "'The courts have consistently refused to recognize

25  any public interest in disclosure of information to assist a convict in challenging his conviction.'"

26  _____

27          [4]     Plaintiff's post-trial motions and collateral attacks are too numerous to recount
    here, but a review of the docket for United States v. Pickard, No. 00-40104-01/02-RDR (D.
28  Kan.), reveals that they are multitudinous and ongoing more than nine years after the trial ended.

1    Thomas v. U.S. Dep't of Justice, 531 F. Supp. 2d 102, 108-09 (D.D.C. 2008) (citing cases);

2    accord Thomas v. Office of U.S. Attorney for E.D.N.Y., 928 F. Supp. at 251.

3         Yet assuming *arguendo* there were such a public interest, plaintiff fails to make the

4    "meaningful evidentiary showing" of government misconduct required.  National Archives &

5    Records Admin. v. Favish, 541 U.S. 157, 175 (2003).  In Favish, the Supreme Court analyzed the

6    evidentiary showing required to obtain disclosure under Exemption 7(C).  It rebuked the court of

7    appeals for "requir[ing] no particular showing  that any evidence points with credibility to some

8    actual misfeasance or other impropriety."  Id. at 173.  It rejected the notion that "the most

9    incredible allegations" could warrant disclosure under Exemption 7(C) and refused to

10   "transform[] Exemption 7(C) into nothing more than a rule of pleading," warning that "[t]he

11   invasion of privacy under its rationale would be extensive."  Id. at 174.  It insisted on "more than

12   a bare suspicion" of government wrongdoing in order to obtain disclosure.  Id.  "Rather, the

13   requester must produce evidence that would warrant a belief by a reasonable person that the

14   alleged Government impropriety might have occurred."  Id.  The Court cautioned, "Allegations of

15   government misconduct are easy to allege and hard to disprove, so courts must insist on a

16   meaningful evidentiary showing."  Id. at 175 (internal quotation marks and citation omitted).

17        Plaintiff's evidence, even if it were admissible, fails to meet this standard.  By plaintiff's

18   own description, the evidence falls into two categories: (1) "evidence that both the DEA and

19   Skinner were not forthcoming with a federal court concerning the number of times Skinner had

20   acted as an informant"; and (2) "evidence showing that the DEA permitted Skinner to 'use funds

21   that came from illicit activity' to maintain his opulent 'lifestyle.'"  See Opp. at 18:19-24.  Starting

22   with category (1), plaintiff refers back to Opp. at 5, where plaintiff seeks to highlight an alleged

23   inconsistency between government statements at his trial in 2003 with purported testimony by

24   Skinner at a different trial in 1993.  The latter testimony, which is purportedly contained in

25   plaintiff's Ex. 1, shows no inconsistency or wrongdoing.

26        The pertinent part of Ex. 1 reads:

27        Q.    Have you cooperated with the federal government on other occasions?

28        A.    Yes.

1    Q.    Approximately how many?

2    A.    Five to six times.

3  Doc. #154-1 at 3:17-21.

4      Compare that to the second piece of evidence plaintiff relies on, from Kansas district court

5  senior judge Richard D. Rogers's opinion denying Pickard's motions for a new trial and for

6  judgment of acquittal:

7        The defendants sought to inquire about other times Skinner had served as an
         informant. The government indicated it was only aware of one other instance
8        where Skinner had been an informant and that was related to the Worthy case. ***The
         government provided the court with Skinner's DEA informant file and suggested
9        that the court conduct an in camera review to determine if there were any other
         occasions where Skinner had served as an informant. The court discovered no
10       other instances in the file.***

11  United States v. Pickard, 278 F. Supp. 2d 1217, 1244 (D. Kan. 2003) (emphasis added).

12      As an initial matter, there is no inconsistency between the two pieces of evidence.

13  Skinner's testimony does not indicate that he served as an informant five to six times, but only

14  that he had cooperated with the government in an unspecified manner.  Additionally, there is no

15  evidence in the record that such cooperation was not part of the Worthy case or the case related to

16  Worthy.  Moreover, any concern about government misconduct is allayed by Judge Rogers's

17  finding in the emphasized portion above (which plaintiff omitted from his Opp.) that the DEA file

18  contained no other instances of Skinner's being an informant.  And on Pickard's 28 U.S.C. § 2255

19  motion, Judge Rogers found that "the government provided the defendants with all relevant

20  Brady/Gigio material in the possession of the DEA prior to trial."  United States v. Pickard, No.

21  00-40104-01/02-RDR, 2009 U.S. Dist. LEXIS 30306, at *28 (Apr. 6, 2009).

22      Because plaintiff's evidence offers no basis for questioning Judge Rogers's conclusion and

23  demonstrates no government misconduct, plaintiff has failed to make the required showing.

24  See Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (holding that the

25  requester failed to show government misconduct when "[t]he same allegations were extensively

26  discussed and rejected by the district judge presiding over Marcello's trial, [citation omitted], and

27  no basis is offered for questioning that result.").

28      The evidence in category (2) – "evidence showing that the DEA permitted Skinner to 'use

DEF.'S REPLY ISO THIRD MOT. SUMM. J. & OPP. TO PL.'S CROSS MOT. SUMM. J.
C 06-00185 CRB                    9

1   funds that came from illicit activity' to maintain his opulent 'lifestyle,'" Opp. at 18:123-24 – also

2   fails to show government misconduct.  Initially, plaintiff asserts that "Skinner laundered over $1

3   million from February to July 2000 in Las Vegas casinos," citing Ex. 4.  Opp. at 6:1-2.  Ex. 4 does

4   not show that Skinner laundered anything.  The documents in Ex. 4 are nothing more than lines of

5   letters and numbers, indecipherable as to their meaning.

6          Similarly, Exs. 5 and 6 fail to show DEA misconduct by permitting Skinner to use funds

7   from illicit activity.  Ex. 5, a letter purportedly from Skinner's attorney, reads in pertinent part:

8          We discussed the use of illicit funds by my client.  It is my understanding that my
           client, with approval of DEA, can request and obtain funds on a voluntary basis
9          from the cartel.  Nothing apparently has been done in this regard and literally, my
           client is broke from a cash-flow basis and needs access to these funds.  As
10         complicated as this may be, certainly there is someone in the Department of Justice
           who can process this immediately and obtain the necessary approval.  If my client
11         is going to meeting with other individuals who are the subject of the investigation,
           he has to maintain the same lifestyle he has always maintained and has to have
12         cash funds to do so.

13  Doc. #154-5 at 3.

14         There is no indication the DEA permitted Skinner to use any illicit funds.  In fact, the

15  passage indicates the opposite.  It indicates that Skinner could only request and obtain illicit funds

16  with DEA approval, but such approval had not been granted and thus Skinner was broke.

17         Ex. 6, a letter purportedly written by an AUSA to Skinner's counsel in reply to Ex. 5, also

18  shows no government misconduct.  That letter states in pertinent part:

19             With regard to access to your client's funds, nothing in the agreement
           prevents your client from having access to lawfully acquired funds or vehicles.
20         However if the funds or assets he seeks access to are proceeds or evidence of a
           crime, the agreement provides him no protection for retention or use of such assets
21         which would be a violation of federal law.

22  Doc. #154-6 at 3.  Far from showing that the DEA let Skinner use illicit funds, the letter says he

23  would not be protected for retaining or using assets that are proceeds or evidence of a crime.

24  Indeed, on Pickard's § 2255 motion, Judge Rogers dismissed as "simply frivolous" the suggestion

25  "that the government suppressed evidence that Skinner was permitted to retain over $1,000,000 in

26  laundered funds and assets in violation of federal law."  Pickard, 2009 U.S. Dist. LEXIS 30306, at

27  *31 (Apr. 6, 2009).  Plaintiff's evidence offers no basis to question that conclusion and

28  demonstrates no government misconduct, and thus plaintiff has not made the required showing.

1 | See Davis, 968 F.2d at 1279.

2 |      Plaintiff's reliance on Lane is peculiar,[5] as the Ninth Circuit in that case affirmed summary

3 | judgment in favor of the government based on Exemption 7(C).  Lane, a former park ranger, made

4 | a FOIA request for documents relating to an investigation of the chief park ranger, Antonich.  523

5 | F.3d at 1131-32.  The court concluded that "the private interests of Antonich and others

6 | mentioned in the report outweigh the relatively low public interest in disclosure."  Id. at 1138.

7 | The court's reasoning is instructive.  First, the court noted that, because Exemption 7(C) "requires

8 | the court 'to protect, in the proper degree, the personal privacy of citizens against the uncontrolled

9 | release of information,' the 'usual rule that the citizen need not offer a reason for requesting the

10 | information must be inapplicable.'"  Id. at 1137 (citing Favish, 541 U.S. at 172).  Here, plaintiff

11 | has offered no evidence, such as a sworn statement, why he requested the subject records, or that

12 | he did so for a public interest.  The proclamations of public interest are merely legal arguments

13 | raised by counsel.

14 |      Second, even if this Court were to accept those legal arguments in lieu of evidence, it

15 |      must look further than the specific reasons for [plaintiff's] request in evaluating the
16 |      public interest in disclosure.  Whether disclosure is warranted "must turn on the
     nature of the requested document and its relationship to the basic purpose of the
17 |      [FOIA] to open agency action to the light of public scrutiny, rather than on the
     particular purpose for which the document is being requested."

18 | Lane, 523 F.3d at 1138 (citing Reporters Comm., 489 U.S. at 772) (second set of brackets in

19 | original).  In Lane, the Ninth Circuit opined that, because "Lane only seeks the report of one

20 | isolated incident," it was "highly unlikely that disclosure would increase public understanding of

21 | government activities" and "will reveal nothing about the activities of the agency as whole."  523

22 | F.3d at 1138.  That logic has been applied in other cases as well.

23 |

24 |     [5]    Plaintiff's quotation of Lane is misleading to the extent plaintiff suggests that the
standard for government misconduct is relatively low and need only "'*might* have occurred.'"
25 | See Opp. at 18:6-9 (emphasis added by plaintiff).  In its full context, it is evident that the excerpt
26 | quoted by plaintiff was meant to raise, not lower, the standard for government misconduct:
"However, because the interest in disclosure derives from a government employee's negligence
27 | or misconduct, Lane must provide more than a 'bare suspicion' of agency misconduct; rather, she
must 'produce evidence that would warrant a belief by a reasonable person that the alleged
28 | Government impropriety might have occurred.'"  Lane, 523 F.3d at 1138 (citation omitted).

In <u>Hunt v. Federal Bur. of Investigation</u>, 972 F.2d 286 (9th Cir. 1992), the court relied on Exemption 7(C) to reverse the district court's order that redacted documents concerning an investigation of an FBI agent be disclosed.  The court explained, "The requested disclosure remains focused, however, on one isolated investigation, no longer of any interest to anyone other than the party who instigated it . . . . The single file sought by Hunt will not shed any light on whether all such FBI investigations are comprehensive or whether sexual misconduct by agents is common." <u>Id.</u> at 288-89.  In <u>Boyd v. Dep't of Justice</u>, 475 F.3d 381 (D.C. Cir. 2007), the court affirmed summary judgment for the government regarding a prisoner's FOIA request for information concerning a government informant who had been officially confirmed.  Regarding Exemption 7(C), the court held that "a single instance of a <u>Brady</u> violation in Boyd's case would not suffice to show a pattern of government wrongdoing as could overcome the significant privacy interest at stake." <u>Id.</u> at 388.

Analogous to the above cases, plaintiff has requested records about a single informant, Skinner, which are of no interest to anyone else, would not suffice to show a pattern of government wrongdoing, and would reveal nothing about the agency's activities as a whole.  As such, there would be "little or no public interest served by disclosure of this isolated file." <u>Hunt</u>, 972 F.2d at 290.  In fact, the public interest would be harmed by disclosure. Mot. (Doc. #140) at 11:8-15.       Turning to the privacy interest, this Court previously ruled that it is "substantial." Doc. #108 at 7:7-8 (citing <u>SafeCard Serv., Inc. v. SEC</u>, 926 F.2d 1197, 1205 (D.C.Cir.1991)). That ruling remains correct.[6]  Plaintiff argues that because Skinner is a prisoner, his "privacy interests are necessarily diminished." Opp. at 19:23.  This argument is foreclosed by the Supreme Court's holding that even convicted criminals have a "substantial" privacy interest in their rap

---

[6]       Although the Ninth Circuit reversed summary judgment on the ground that a Glomar response was unavailable because Skinner had been officially confirmed, it did not reach or disturb this Court's reasoning with respect to the underlying applicability of Exemptions 7(C) and 7(D).  The reasoning is equally valid now, with the only difference being that it is invoked to justify withholding rather than to justify a Glomar response.

1   sheets for purposes of Exemption 7(C).  Reporters Comm., 489 U.S. at 771.[7]  Likewise,

2   Guantanamo Bay detainees "have a measurable privacy interest in the nondisclosure of their

3   names and other identifying information" under Exemption 7(C).  Associated Press v. U.S. Dep't

4   of Defense, 554 F.3d 274, 286 (2d Cir. 2009).  The case plaintiff cites, Hudson v. Palmer, 468

5   U.S. 517, 525 (1984), concerns the Fourth Amendment and has nothing to do with FOIA.  The

6   Fourth Amendment standard is not the standard by which FOIA privacy interests are measured.

7   See Associated Press, 554 F.3d at 287 ("Although the detainees here are indeed like prisoners,

8   their Fourth Amendment reasonable expectation of privacy is not the measure by which we assess

9   their personal privacy interest protected by FOIA.").

10       Plaintiff also argues that, because Skinner was officially confirmed, "any stigma has

11   already attached."  Opp. at 19:28.  That is an overreaching attempt to expand the scope of

12   5 U.S.C. § 552(c)(2) regarding the impact of official confirmation.  Essentially, plaintiff's

13   argument is that, just because Skinner has been officially confirmed, not only is the DEA

14   foreclosed from using a Glomar response, but also from invoking Exemption 7(C) (as well as

15   7(D) and 7(F)).  Opp. at 21 n.21.  That is incorrect.  "There is no evidence that Congress intended

16   subsection (c)(2) to repeal or supercede the other enumerated FOIA exemptions, or to *require*

17   disclosure whenever the informant's status has been officially confirmed."  Benavides v. DEA,

18   968 F.2d 1243, 1248, modified, 976 F.2d 751 (D.C. Cir. 1992) (emphasis in original).  The Ninth

19   Circuit rejected plaintiff's interpretation in remanding this case:

20   _____

21       [7]   Plaintiff tries to evade the impact of Reporters Comm. by mentioning PACER.
    Opp. at 20:11-13 (citing Long v. Dep't of Justice, 450 F. Supp. 2d 42, 89 (D.D.C. 2006)).  This
22   argument is unpersuasive.  First, Long recognized that "the records available at NARA and on
    PACER are no substitute for the central case management databases at issue in this litigation."
23   Id. at 68.  Similarly here, it is self-evident that PACER is no substitute for the eight categories of
    information sought about Skinner.  Plaintiff says he has "already complet[ed] a 'diligent search'
24   and uncover[ed] evidence of misconduct," Opp. at 20:21, but that is odd because none of the
    evidence he submitted with his Opp. purports or appears to be from PACER.  Indeed, the fact
25   that plaintiff has made the subject FOIA request indicates that the information is not "freely
    available" on PACER or otherwise.  See Reporters Comm., 489 U.S. at 764 ("Indeed, if the
26   summaries were 'freely available,' there would be no reason to invoke the FOIA to obtain access
27   to the information they contain.").  Even if some information is available on PACER, there is
    still a privacy interest because some of it "may have been wholly forgotten."  Id. at 769.
28

1
2
3

    This is not to say that the DEA is now required to disclose any of the particular information requested by Pickard.  We must maintain equipose between the public's interest in knowing 'what [its] government is up to' and the 'legitimate governmental and private interests' in withholding documents subject to otherwise valid FOIA exemptions.

4    <u>Pickard</u>, 653 F.3d at 788 (citations omitted).

5    Moreover, Ninth Circuit precedent makes clear that Skinner's privacy interest is not

6    lessened by official confirmation.  In <u>Schiffer v. FBI</u>, 78 F.3d 1405, 1411 (9th Cir. 1996), the

7    court held that privacy interests were not diminished by the fact that much of the information

8    contained in the requested documents was made public during a related civil suit.  And in <u>Lane</u>,

9    the Ninth Circuit held, "That the public may be aware of the allegations against Antonich does not

10    lessen his privacy interest, because notions of privacy in the FOIA exemption context encompass

11    information already revealed to the public." 523 F.3d at 1137 (citations omitted).  Thus, this

12    Court previously held, "The fact that Skinner has filed suit and testified publicly does not waive

13    his privacy interest."  Doc. #108 at 8:5-6 (citing <u>Valdez v. U.S. Dep't of Justice</u>, 474 F. Supp. 2d

14    128, 133 (D.D.C. 2007)).

15    Not only is that the law, but it is good policy.  Disclosure of information under FOIA

16    based on official confirmation could have a chilling effect on the subject informant's or other

17    informants' willingness to provide information to the government in the future.  <u>See</u> <u>Kiraly v.</u>

18    <u>FBI</u>, 728 F.2d 273, 278-79 (6th Cir. 1984).  As the Sixth Circuit explained:

19
20
21

    Because a person may have given testimony at a trial on a specific topic does not mean that all information offered by that source upon a guarantee of confidentiality automatically becomes available to the person to whom it relates.... A source would be unlikely to testify on any subject if he or she knew that by so doing every transcription made by an investigative agent regarding their conversations could be released to the party about whom the source was informing.

22    <u>Id.</u> at 279-80 (citation omitted).

23
24
25

    Thus, Skinner's privacy interest is still "substantial" and outweighs the nonexistent or

negligible public interest.[8]  As this Court previously held, "When government misconduct is

26
27
28

    [8]    In a different but related context, Judge Rogers recently denied Pickard's motion to unseal the following DEA records: (1) Skinner's risk assessment file, and (2) Skinner's confidential informant file.  <u>United States v. Pickard</u>, No. 00-40104-01/02-RDR, 2012 U.S. Dist. LEXIS 64671 (May 9, 2012).  Judge Rogers stated that "we are confident that the interests of

1   alleged as the justification for disclosure, the public interest is 'insubstantial' unless the requester

2   puts forth 'compelling evidence that the agency denying the FOIA request is engaged in illegal

3   activity' and shows that the information sought 'is necessary in order to confirm or refute that

4   evidence.'" Doc. #108 at 8:16-21 (citation omitted).  Plaintiff has failed to do so.

5        Finally, although plaintiff has focused his arguments on Skinner, the requested records

6   protect the privacy interests of other third parties, too.  See Mot. at 7:28-8:11.  At a minimum,

7   withholding for them is proper.  See Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990).

8               **3.     Exemption 7(D).**

9        Exemption 7(D) has two prongs: the first pertains to the identity of a confidential source

10  and the second pertains to information furnished by a confidential source.  5 U.S.C.

11  § 552(b)(7)(D).  As to the first prong, plaintiff once again tries to expand impermissibly the

12  impact of official confirmation, averring that "because Skinner has been 'officially confirmed' as

13  a DEA informant, any occurrence of Skinner's name within responsive DEA records is

14  improperly withheld under the first prong of Exemption 7(D)."  Opp. at 21:9-11 (internal citation

15  omitted).  As discussed above, that interpretation is erroneous and was rejected by the Ninth

16  Circuit when remanding this case.  See Pickard, 653 F.3d at 788; Benavides, 968 F.2d at 1248.

17       The text of § 552(b)(7)(D) contains no exception for the identity of a confidential source

18  who has been officially confirmed.  And the legislative history confirms that Exemption 7(D)

19  "'protects ***without exception and without limitation*** the identity of informers.'"[9]  Kiraly, 728 F.2d

20  _____

21  maintaining the confidentiality of information concerning confidential informants outweigh any
    right of access by the defendants or the public."  Id. at *5.

22

23       [9]     Powell v. Dep't of Justice, 584 F. Supp. 1508, 1529 (N.D. Cal. 1984), cited by
    plaintiff in Opp. at 21:15-16, is not persuasive legally or factually to the extent it suggests a

24  contrary result.  Legally, the Powell court misconstrued "confidential" to mean "secret," which is
    not a proper interpretation under Exemption 7(D).  Irons v. FBI, 880 F.2d 1446, 1455 (1st Cir.

25  1989) (en banc) (Breyer, J.).  Factually, Powell is materially distinguishable.  The Powell court
    noted that the case was "distinct from nearly all cases where legitimate privacy interests were

26  found," which cases "involved investigations proximate in time and raised concerns about the
    reputations of living persons." 584 F. Supp. at 1526 (citing cases). The instant case is more like

27  those cases than like Powell.  Pickard's trial was in 2003, Skinner is alive, and Pickard has not
    shown that other persons or agents are dead or retired.

28

1    at 278 (quoting 120 Cong. Rec. 17034).  In Kiraly, the plaintiff made a similar argument "that

2    because Mr. Greene's identity as an FBI informant is already known, (b)(7)(D) does not apply."

3    728 F.2d at 278.  The court rejected the argument as "ignor[ing] the policy behind the FOIA

4    exemptions."  Id.  The same chilling effect discussed above with respect to Exemption 7(C) also

5    supports withholding information under Exemption 7(D) when an informant's identity is already

6    known.  See id. at 278-79.  Potential informants could be deterred from cooperating if they knew

7    that public testimony would open the floodgates for anyone to obtain through FOIA "any

8    occurrence of [their] name within responsive DEA records." Opp. at 21:10-11.

9            Finally, plaintiff fails to consider that his request is broad-based, not limited to records

10   where Skinner served as an informant in plaintiff's criminal case.  Just because Skinner was

11   officially confirmed in that case does not mean his identity should be revealed in responsive

12   records regarding other cases where he might have been a confidential source.  Cf. Boyd, 475 F.3d

13   at 390 ("Although Amicus makes much of the fact that Troupe's status as an informant was

14   confirmed in Miller, that confirmation does not amount to an admission that he was an informant

15   in Boyd's case as well.").

16           Turning to the second prong of Exemption 7(D), the information provided by Skinner may

17   be divided into two categories: that which was not disclosed at trial and that which was.  Plaintiff

18   makes only a half-hearted argument regarding the former, citing only one case, Van Bourg, Allen,

19   Weinberg & Roger v. NLRB, 751 F.2d 982, 986 (9th Cir. 1985), which, as discussed below, is

20   inapplicable.  In Irons v. FBI, 880 F.2d 1446, 1456-57 (1st Cir. 1989) (en banc), Justice (then

21   Judge) Breyer, writing for an en banc court, comprehensively foreclosed any argument as to the

22   former category of information, holding that "public testimony by 'confidential' sources' cannot

23   'waive' the FBI's right under the second clause of exemption 7(D) to withhold 'information

24   furnished by a confidential source' and not actually revealed in public."

25           Justice Breyer explained that his conclusion was supported by: (1) the statutory language,

26   (2) the legislative history, (3) the case law, (4) the inapplicability of any waiver doctrine, and (5)

27   the need for workable rules.  As to (1), Justice Breyer observed that neither the plain language of

28   Exemption 7(D)'s second clause, "nor any other relevant language, says anything at all about

1   'waiver.'  Other courts (indeed virtually all other courts) have interpreted the statute's language

2   literally in this respect."  Id. (going on to cite cases from the Third, Sixth, D.C., Seventh, Eleventh

3   and Second Circuits).[10]   Justice Breyer reiterated that "'the judiciary . . . is required to uphold a

4   claimed 7(D) exemption so long as the statutory criteria are met.'"  Id. (citation omitted).  "The

5   words 'furnished by a confidential source' do not mean that the information or the identity of the

6   source is secret; they simply mean that the information was 'provided in confidence' at the time it

7   was communicated to the FBI."  Id. at 1448.

8       As to (2), Justice Breyer noted that "the fairly elaborate legislative history of exemption

9   7(D) suggests that Congress intended a literal interpretation, even where a literal application

10  sweeps broadly."  Id. at 1449.  Justice Breyer also noted that Congress was concerned about the

11  chilling effect: "That history makes clear that Congress enacted the exemption in major part to

12  help law enforcement agencies to recruit, and to maintain, confidential sources; its object was not

13  simply to protect the source, but also to protect the flow of information to the agency."  Id.  Justice

14  Breyer provided the hypothetical example of an informant who testifies at trial (I) that Joe

15  participated in an organized crime racket, but does not testify that he has also confidentially told

16  the FBI (ii) that Wes, Lola, George and Yvette were also involved.  See id. at 1451.  Justice

17  Breyer observed that "confidential sources might hesitate to talk if disclosure at trial of something

18  like item (I) means that organized criminals have the legal right to obtain the information in item

19  (ii) from the FBI through the FOIA."  Id.

20      As to (3), Justice Breyer noted "that the circuits have not only used broad language to

21  describe the application of exemption 7(D), but that they have also specifically interpreted the

22  'information furnished' exemption to apply irrespective of subsequent public identification of the

23  source, and *irrespective of subsequent public release of portions of the information provided by*

24  *the source*."  Id. at 1452 (internal citations omitted; italics in original).  As to (4), Justice Breyer

25  analyzed the various waiver doctrines and concluded that none of them applied.  See id. at 1452-

26

27  ───────────────────

28      [10]      Defendant is not aware of a Ninth Circuit case directly on point, nor has plaintiff
        cited any (notwithstanding Van Bourg, which, as explained below, is inapplicable).

DEF.'S REPLY ISO THIRD MOT. SUMM. J. & OPP. TO PL.'S CROSS MOT. SUMM. J.
C 06-00185 CRB                              17

1   55.  Justice Breyer rejected the Van Bourg case plaintiff cites, and other labor law cases, as

2   "beside the point" because they concerned a different issue, involved only the first clause of

3   exemption 7(D), and involved different enforcement agencies operating in different contexts

4   where sources may have different expectations.  See id. at 1455.  Van Bourg is also

5   distinguishable because in that case, exemption 7(D) was inapplicable because "[t]he district court

6   did not find that there was any express or implied assurance of confidentiality."  751 F.2d at 986.

7   Here, there is no dispute over Skinner's status as a confidential source.

8       Finally, as to (5), Justice Breyer opined that "the judicial effort to create a 'waiver'

9   exception to exemption 7(D)'s language runs afoul of the statute's 'intent to provide 'workable'

10  rules.'"  Irons, 880 F.2d at 1455 (citations omitted).  Justice Breyer explained, referring back to the

11  "Joe" hypothetical discussed above, that "[t]he prosecutor at the original trial will also face

12  substantial problems in trying to decide whether to have a source testify," and that potential

13  sources would be troubled by the thought that, "If I testify about *anything*, the public - including

14  those I implicate - will see *everything*."[11]  Id. at 1456 (italics in original).

15      Justice Breyer's reasoning in Irons is authoritative and has been adopted by other circuit

16  courts.  See Ferguson v. FBI, 957 F.2d 1059 (2d Cir. 1992); Parker v. Dep't of Justice, 934 F.2d

17  375 (D.C. Cir. 1991).  It should also be adopted by this Court, which previously held that "a

18  somewhat diminished privacy interest does not negate the application of Exemption 7(D)."  Doc.

19  #108 at 8:10-11.  At a minimum, plaintiff is not entitled to information provided by Skinner that

20  was not disclosed at trial.

21      Nor is plaintiff entitled to information that was disclosed at trial.  It is true that Justice

22  Breyer's holding in Irons reached only to information that was "not actually revealed in public."

23  880 F.2d at 1457.  However, that was because the court did not consider the issue of whether

24  information that was revealed in public could be withheld (because the FBI did not contest it), not

---

25

26      [11]      Even the dissent in Irons did not call for *all* information furnished by a

27  confidential source to be released, but argued "that the scope of the waiver engendered by prior
    public testimony should be coextensive with that of hypothetical cross-examination."  Id. at 1457
    (Selya, Circuit J., dissenting).  Justice Breyer warned that such a rule would "pose grave

28  difficulties for the FOIA suit judge."  Id. at 1456.

1    because the court decided it could not be withheld.  See id. at 1448.  The logic and reasoning of

2    Irons also dictates withholding information that was testified to in public.  Justice Breyer phrased

3    the legal question as "whether the law requires us to interpret the language of exemption 7(D)

4    rather literally or whether we may interpret it as embodying some kind of 'waiver' doctrine."  Id.

5    In holding that the literal meaning prevailed, Justice Breyer did not reason that waiver applied in

6    one circumstance (when information was testified to at trial) but not the other (when information

7    was not testified to at trial); he rejected the notion of waiver, period.  See, e.g., id. ("exemption

8    7(D) contains language that, **without qualification**, exempts from disclosure 'information

9    furnished by a confidential source'" ) (emphasis added).

10         The overwhelming weight of authority, both before and after Irons, supports this position.

11   See Ferguson, 957 F.2d at 1068 (holding that "**all** information with respect to [a confidential

12   source who testified at the plaintiff's criminal trial] was exempt from disclosure under exemption

13   7(D)") (emphasis added); Parker, 934 F.2d at 380 ("Thus, this Court and our sister circuits

14   considering the question have interpreted Exemption 7(D) literally and have held that once the

15   agency receives information from a ''confidential source'' during the course of a legitimate

16   criminal investigation . . . **all** such information obtained from the confidential source receives

17   protection.'") (ellipsis and italics in original; bold emphasis added) (quoting Lesar v. U.S. Dep't

18   of Justice, 636 F.2d 472, 492 & n.114 (D.C. Cir. 1980); also citing Irons, 880 F.2d at 1449 (1st

19   Cir. 1989); Kiraly, 728 F.2d at 278-80 (6th Cir. 1984); Lame v. U.S. Dep't of Justice, 654 F.2d

20   917, 923 (3d Cir. 1981); Scherer v. Kelley, 584 F.2d 170, 176 n.7 (7th Cir. 1978)).

21         Even if this Court were inclined to reach a different conclusion than that of Justice Breyer

22   and the other circuit courts cited above, plaintiff still would not prevail.  As this Court previously

23   held, "it is plaintiff who bears the initial burden of pointing to specific information in the public

24   domain that appears to duplicate that being withheld."  Doc. #108 at 9:13-15 (citing Davis, 968

25   F.2d at 1279).[12]  Thus, plaintiff "has the burden of showing that there is a permanent public

26

27       [12]    Davis held that the government was entitled to withhold tapes obtained through an
informant's assistance unless it was "specifically shown that those tapes, or portions of them,
28   were played during the informant's testimony."  968 F.2d at 1281.  This holding appears to

1   record of the exact portions he wishes." <u>Davis</u>, 968 F.2d at 1280.  He has not done so.  With the

2   exception of Ex. 1, which is inadmissible, he has proffered no evidence of any content of

3   Skinner's testimony, nor shown there is a permanent public record thereof (even Ex. 1 contains no

4   evidence of having been filed with the court or being permanently publicly available).

5       And even if plaintiff had made that showing, it is a double-edged sword.  Assuming there

6   were a permanent public record and the exact information contained in that record was not exempt

7   under 7(D), that would strengthen the case for withholding such information under Exemption

8   7(C).  If the scope of release of information under Exemption 7(D) is coextensive with

9   information disclosed at trial in a permanent public record, then the public interest would not be

10  served by release under Exemption 7(C), because the information is already known permanently

11  to the public.  Thus, the privacy interest, no matter how small, would outweigh.

12      Finally, plaintiff focused his argument on Skinner.  At a minimum, there is no basis for

13  disclosure under Exemption 7(D) regarding any other confidential source.  <u>See</u> Mot. at 12:5-12.

14              **4.      Exemption 7(E).**

15      As set forth in the Mot. at 12:28-13:7, the Second Circuit analyzed the text, structure,

16  grammar, punctuation, and legislative history of Exemption 7(E) to conclude that techniques and

17  procedures are exempt without any requirement that disclosure could reasonably be expected to

18  risk circumvention of the law.  <u>See</u> <u>Allard K. Lowenstein Int'l Human Rights Project v. Dep't of</u>

19  <u>Homeland Sec.</u>, 626 F.3d 678, 681 (2d Cir. 2010).  As plaintiff has not addressed or rebutted that

20  reasoning, this Court should adopt it.  If it does, then the analysis ends here because the

21  information would reveal "enforcement techniques, practice, procedures and methods that are not

22  commonly known to the public."  Third Supp. Little Decl. ¶ 48.

23      But even if the Court requires a showing of a reasonable risk of circumvention of the law,

24  the DEA has made this showing.  The information, which includes G-DEP codes, NADDIS

25  numbers and confidential informant numbers, is "part of DEA's internal system of identifying

26

27  ────────────

28  conflict with the earlier D.C. Cir. cases of <u>Parker</u> and <u>Lesar</u> and thus is of questionable validity.
    In any event, it is unpersuasive in light of <u>Irons</u> and the other circuit court decisions cited above.

1   information and individuals," and Little explained in detail how each number is assigned and

2   used.  Id. ¶ 50.  Plaintiff complains that DEA "fails to explain . . . precisely *how* the release of

3   these numbers could risk circumvention of the law."  Opp. at 23:5-6.  But the record betrays this.

4   See id. ¶ 51 (explaining how the release of G-DEP codes would help identify priority given to

5   narcotic investigations, types of criminal activities involved, and violator ratings, and could be

6   decoded by suspects to change their trafficking patterns, avoid detection and apprehension, and

7   create excuses for suspected activities), ¶ 52 (explaining that NADDIS numbers and informant

8   identifier codes are unique and personal and would allow an individual to avoid detection and

9   apprehension).  Given plaintiff's focus on NADDIS numbers, Little has now provided even more

10  information, explaining that "[t]he release of NADDIS queries would enable a requester to

11  determine the information DEA focuses upon during the course of an investigation and thereby

12  avoid detection and apprehension by modifying or masking their mode of operation."  Fourth

13  Supp. Little Decl. ¶ 33.  Little also explains why "successive requests would divulge[] exempt

14  information, such as the fact there is an ongoing investigation(s), and, with changes to data fields,

15  alert an individual to any new information that has been gathered, also allowing an individual to

16  modify his activities to avoid detection and apprehension."  Id.

17         Plaintiff says "NADDIS numbers are regularly released without discernable effect."  Opp.

18  at 23:7.  This is unsupported by the record.  Plaintiff's evidence that they are "regularly released"

19  consists of a mere two pieces of evidence – a court opinion containing one NADDIS number and

20  plaintiff's exhibit 9 containing two NADDIS numbers.  That hardly establishes regularity.  On the

21  contrary, " . . . NADDIS queries and information associated with the system is withheld pursuant

22  to FOIA Exemption (b)(7)(E) since the release of the results of a query would disclose

23  investigative and intelligence methods, techniques, guidelines and procedures not generally

24  known to the public."  Fourth Supp. Little Decl. ¶ 32.  Moreover, plaintiff's exhibit 9 is

25  inadmissible, but even if admissible, plaintiff has not submitted any evidence as to how he

26  obtained it or the circumstances of its alleged release.  Finally, plaintiff's argument that there is no

27  "discernable effect" is unsupported by any evidence.  The consequence is circumvention of the

28  law, which would hardly be discernable because, by definition, those trying to discern it would be

1   circumvented.  Because Little's declarations "provide[] detailed assertions why disclosure of the

2   requested information would present a serious threat to future law enforcement . . .

3   investigations," the DEA "has satisfied its burden of showing that exemption 7(E) was properly

4   applied."  Bowen v. U.S. FDA, 925 F.2d 1225, 1229 (9th Cir. 1991).

5              **5.       Exemption 7(F).**

6              "Unlike Exemption 7(C), which involves a balancing of societal and individual privacy

7   interests, 7(F) is an absolute ban against certain information and, arguably, an even broader

8   protection than 7(C)."  Raulerson v. Ashcroft, 271 F. Supp. 2d 17, 29 (D.D.C. 2002).  Plaintiff

9   argues that Exemption 7(F) cannot apply to Skinner or Karl Nichols.  The argument regarding

10  Skinner is addressed above and the same logic applies.  Official confirmation does not render

11  Exemption 7(F) or any other exemption inapplicable.  See Pickard, 653 F.3d at 788; Benavides,

12  968 F.2d at 1248.  Moreover, just as official confirmation does not lessen or waive Skinner's

13  privacy interest under Exemption 7(C) and does not waive the protection of his identity or

14  information furnished by him under Exemption 7(D), nor does it waive the applicability of

15  Exemption 7(F) to protect him from "harassment and danger."  Third Supp. Little Decl. ¶ 57.

16  Plaintiff has offered no evidence to support his bald legal conclusion that disclosure of Skinner's

17  name "necessarily cannot 'reasonably be expected to endanger [his] life or physical safety,'" Opp.

18  at 24:6-7, and it is not supported by logic.  Plaintiff seeks, among other things, "records of all case

19  names, numbers and judicial districts where [Skinner] testified under oath" and "all records

20  concerning Skinner's participation in criminal investigations."  Doc. #108 at 1:27-28, 2:6-7.  Such

21  information, if released to plaintiff, must be considered as released to the world.  See Lahr v. Nat'l

22  Transp. Safety Bd., 569 F.3d 964, 977 n.12 (9th Cir. 2009).  Certainly, release of such information

23  to the world "could reasonably be expected to endanger the life or physical safety of" Skinner.  5

24  U.S.C. § 552(b)(7)(F).

25              As to Nichols, the arguments are the same if not more compelling given his job position,

26  which historically has been subject to "physical attacks, threats, harassment and attempted

27  murder."  Third Supp. Little Decl. ¶ 55.  Plaintiff notes that Nichols's name was mentioned in two

28  orders in his criminal case, one published and one unpublished.  See Opp. at 24:1-3.  But for the

same reasons public disclosure does not waive Exemption 7(F) as to Skinner, nor does it as to Nichols.  See Prows v. U.S. Dep't of Justice, No. 87-1657-LFO, 1989 WL 39288, at *3 (D.D.C. Apr. 13, 1989) (upholding the withholding under Exemption 7(F) of information concerning DEA agents who testified against the plaintiff at trial).  Indeed, there could be dangerous ramifications if any DEA special agent who was ever publicly identified must subsequently have his identity disclosed in any responsive FOIA releases.

Finally, plaintiff makes no argument as to the other persons protected under Exemption 7(F) beyond complaining that there is no Vaughn index.  That is a red herring.  Substantive reasons for categorical nondisclosure were delineated in detail in the Third Supp. Little Decl.  ¶ 54-57, and plaintiff failed to address them.

### C.   Segregability.

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . . ."  5 U.S.C. § 552(b).  "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed."  Pac. Fisheries Inc. v. United States, 539 F.3d 1143, 1148 (9th Cir. 2008) (citing 5 U.S.C. § 552(a)(4)(B), (b)).  The agency need not disclose non-exempt portions of a document if "they are inextricably intertwined with exempt portions such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value."  Willamette Indus., Inc. v. United States, 689 F.2d 865, 867-68 (9th Cir. 1982) (internal quotation marks and citations omitted).   As stated above, the DEA claims general categorical exclusions based on the records requested and the systems of records likely to contain responsive information.  Fourth Supp. Little Dec. ¶ 34. Additionally, by the very nature of the request, the requested information necessarily pertains to and is personal to Skinner and is contained in a Privacy Act system of records.  Id.  For those reasons, there is no segregable responsive information.  Id.

### D.   Adequacy of Search.

"FOIA requires an agency responding to a request to demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents. "  Lahr, 569 F.3d at 986 (internal

1    quotation marks and citations omitted).

2        [T]he issue to be resolved is not whether there might exist any other documents
         possibly responsive to the request, but whether the *search* for those documents was
3        *adequate*.  The adequacy of the search, in turn, is judged by a standard of
         reasonableness and depends, not surprisingly, upon the facts of each case.  In
4        demonstrating the adequacy of the search, the agency may rely upon reasonably
         detailed, nonconclusory affidavits submitted in good faith.
5

6    Zemansky v. EPA, 767 F.2d 569, 571 (9th Cir. 1985) (italics in original) (quotation marks and

7    citation omitted).

8        The DEA did conduct a search for responsive records.  Fourth Supp. Little Decl. ¶ 9.

9    Plaintiff suggests it might have been inadequate because Planning and Inspection Division records

10   were excluded.  Opp. at 13 n.19.  However, Little has explained why no responsive records are

11   reasonably likely to be contained therein.  Fourth Supp. Little Decl. ¶¶ 9-13.  As to plaintiff's

12   request for Skinner's NADDIS file, Opp. at 1 n.1, DEA previously explained that NADDIS "is

13   not a file."  Doc. #25 at 5 n.3.  Little has now provided additional information explaining why the

14   terms "NADDIS file" and "NADDIS record" do not make sense and why there are no records

15   responsive to that request.[13]  Fourth Supp. Little Decl. ¶¶ 17-24.  Given the detail in the DEA's

16   declarations, CBP's searches were reasonable and adequate.  Cf. Lahr, 569 F.3d at 988 & n.21.

17   **V.    CONCLUSION.**

18       For the foregoing reasons and for the reasons stated in the Motion, the Court should grant

19   defendant's third motion for summary judgment and deny plaintiff's cross-motion for summary

20   judgment.  If the Court is inclined to grant plaintiff's cross-motion and order records released, the

21   DEA respectfully requests the opportunity to submit the subject records *in camera* for the Court's

22   review before ordering any release.[14]  See Lane, 523 F.3d at 1136 (in-camera review "may be

23   appropriate if the 'preferred alternative to in camera review - government testimony and detailed

24

25       [13]    "[T]he FOIA imposes no duty on the agency to create records."  Forsham v.

26   Harris, 445 U.S. 169, 186 (1980).  Additionally, NADDIS queries and information associated
     with the system is exempt under Exemption 7(E).  See Fourth Supp. Little Decl. ¶¶ 32-33.
27

28       [14]    If the DEA's declarations are sufficient, then *in camera* review is not appropriate.
     Lewis, 823 F.2d at 378.

1    affidavits - has first failed to provide a sufficient basis for a decision'") (citation omitted).

2                                                Respectfully submitted,

3                                                MELINDA HAAG

4                                                United States Attorney

5

6    DATED: July 23, 2012              By:    _____/s/_____

7                                                NEILL T. TSENG
                                                 Assistant United States Attorney
8                                                Attorneys for Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28