MELINDA HAAG (CABN 132612)
United States Attorney
JOANN M. SWANSON (SBN 88143)
Chief, Civil Division
NEILL T. TSENG (CSBN 220348)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055 5
San Francisco, California 94102
Telephone: (415) 436- 7155
FAX: (415)436-6927
neill.tseng@usdoj.gov 450 Golden Gate Avenue, 9th Floor

Attorneys for Federal Defendant

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| WILLIAM LEONARD PICKARD, | ) | C 06-0185 CRB |
| Plaintiff, | ) | |
| v. | ) | **FOURTH SUPPLEMENTAL DECLARATION OF WILLIAM C. LITTLE, JR.** |
| DEPARTMENT OF JUSTICE, | ) | |
| Defendant. | ) | |

    I, William C. Little, Jr., hereby make the following Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. This declaration was prepared to supplement the prior declaration of Leila Wassom, dated August 29, 2006, and my prior declaration dated November 24, 2006, May 30, 2007, and November 26, 2007, and is submitted in support of *Defendant's Third Motion for Summary Judgment*.

2. The purpose of this declaration is to respond to assertions made in plaintiff's *Notice of Cross Motion and Cross Motion for Summary Judgment; Memorandum of Points and Authorities in Support of Cross Motion for Summary Judgment And Opposition to Defendant's Third Motion for Summary Judgment* regarding the sufficiency of prior declarations meeting the requirements of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), the contention that DEA failed to conduct an

adequate search, since the Planning and Inspections Files were not queried, the failure to address the plaintiff's request for the NADDIS record of Gordon Todd Skinner and whether there is any segregable information contained in the records DEA maintains.

3. As stated in prior declarations, plaintiff requested, in a letter dated January 25, 2005, records that related to Gordon Todd Skinner of Skinnner's:

    (a). His criminal history (including records of arrests, convictions, warrants, or other pending cases).

    (b). Records of all case names, numbers, and judicial districts where he testified under oath.

    (c). Records of all monies paid in his capacity as a federal informant.

    (d). All records of instances where DEA intervened on his behalf to assist him in avoiding criminal prosecution.

    (e). All records of administrative sanctions imposed for dishonesty, false claims, or other deceit.

    (f). All records of any benefits of any nature conferred.

    (g). All records of deactivation as a confidential informant, and the reasons for deactivation.

    (h). All records of concerning Skinner's participation in criminal investigations.

4. In a separate letter dated April 25, 2005, plaintiff requested a copy of the "NADDIS file" for Gordon Todd Skinner.

5. Any records deemed responsive to the plaintiff's FOIA request would be criminal investigative records that were described in plaintiff's requests or reports and other documents acquired for a law enforcement purpose that contain information that satisfy plaintiff's description and that pertain to Gordon Todd Skinner. Thus, the information requested is, by its very nature, personal to and pertains to Gordon Todd Skinner.

6. DEA withholds personal information about all third-parties pursuant to FOIA Exemption (b)(7)(C). In conjunction with Exemption (b)(7)(C), DEA withholds information pursuant to

Fourth SUPPLEMENTAL DECLARATION OF WILLIAM C. LITTLE, JR.
C 06-00185 CRB
2

Exemption (b)(7)(F), since release of information related to or that would identify a third-party would risk injury or harm, as explained in my prior declaration dated March 30, 2012 at ¶¶ 54 - 57 and my prior declaration date May 30, 2007, as it relates to confidential sources as described in ¶¶ 33 and 34.

7. When an individual testifies at trial, they do not waive their privacy interests. Their privacy interests are weighed against the public interest that exists. The FOIA cognizable FOIA interest is that which would show how the agency performs its duties under the law.

8. With his request, plaintiff failed to present any information in his request to DEA that there was a public interest sufficient to overcome the privacy interest of Gordon Todd Skinner, or any third-party, including DEA Special Agents, whose names would appear in any record that would be responsive to his request, or any public at all. Plaintiff's unsupported unsubstantiated claim in his request that Gordon Todd Skinner's "testimony in various federal courts concerning his informant activities, and Skinner's well-publicized activities as an informant" was insufficient to overcome a privacy interest. Further, the plaintiff clearly stated that he was "seeking information for personal and not commercial use" clearly negated any inference of a public interest.

9. A search was conducted of all systems reasonably likely to contain records responsive to plaintiff's request, to include IRFS and the Operations Files. There has been no indication that any records related to any conduct that raised the prospect of records existing in the Planning and Inspection Records existed.

10. The Planning and Inspection Records include the investigative files created by the DEA Office of Professional Responsibility (OPR). Based upon plaintiff's request, it was not reasonably likely that any records described by the plaintiff would be contained in the system.

11. In addition, in about June 2006, I was made aware of a complaint made by plaintiff dated December 25, 2003, addressed to the Department of Justice, Inspector General, wherein plaintiff complained of misconduct similar to that which was alleged to have occurred in a separate prosecution not involving plaintiff. Plaintiff complained that similar misconduct had occurred in his case and his complaint was forwarded to an Assistant United States Attorney ("AUSA") who

Fourth SUPPLEMENTAL DECLARATION OF WILLIAM C. LITTLE, JR.
C 06-00185 CRB 3

1 was investigating other matter.
2 12. It was determined that "[t]he case involving William L. Pickard [had] no relation to the case
3 against [another individual] . . . . no indication of the withholding of background information
4 about a key informant [and] [t]here [was] absolutely no evidence that [a DEA] Special Agent . . .
5 (or DEA San Francisco) did anything except testify truthfully and keep an accurate record of
6 informant . . . activities . . . [and] there [was] no basis for the Office of the Inspector General of
7 the Department of Justice expanding the . . . . matter to encompass the William L. Pickard case."
8 13. At the time that I was made aware of plaintiff's complaint, a determination had been made
9 that DEA would not conduct an independent investigation plaintiff's complaint, there was no
10 record of plaintiff ever submitting a complaint to DEA regarding any misconduct by any DEA
11 special agent or a confidential source connected with the investigation of plaintiff, and any issues
12 of misconduct or false testimony had been resolved by the AUSA's investigation or a hearing held
13 by the Kansas District Court.
14 14. The record described in Paragraph 3(a) is not a record under the control of DEA and DEA
15 does not maintain a system of records for the purpose of criminal history. By Federal law, an
16 individual's criminal history record is maintained in a system under the control of the Federal
17 Bureau of Investigation, Criminal Justice Information Services, National Crime Information
18 Center ("NCIC"). Pursuant to state laws systems are maintained by state law enforcement
19 agencies. Access to the systems is provided to DEA for a law enforcement purpose and a rap
20 sheet may be obtained at the time an individual is arrested or is subject in an investigation,
21 established as a coded confidential source or at time when a source's performance is under
22 review.
23 15. NCIC and criminal histories maintained by state agencies, often referred to as a "rap sheet,"
24 are listings of certain information obtained in connection with arrests and includes the name of the
25 agency or institution that submitted the fingerprints the date of arrest or the date the individual
26 was received by the agency submitting the fingerprints, the arrest charge, and the disposition of
27 the arrest, if known to the FBI. All arrest data included in a rap sheet is obtained from
28

Fourth SUPPLEMENTAL DECLARATION OF WILLIAM C. LITTLE, JR.
C 06-00185 CRB                                  4

submissions, disposition reports, and other reports submitted by agencies having criminal justice responsibilities. Thus, the information contained in a criminal history is, by its very nature, information concerning the person and, based on plaintiff's request, pertains to Gordon Todd Skinner. Criminal history records are a category of records that are exempt pursuant to FOIA Exemption (b)(7)(C) and no credible information was presented that would evince a public interest was articulated in plaintiff's FOIA request.

16. The records described in Paragraph 3(b), above, DEA does not maintain a record that would contain "all case names, numbers, and judicial districts where [a source or any individual] testified under oath" as a complete entity. If such information exists, it must be extrapolated from individual reports or records contained in a confidential source or investigative case file. No single document would contain all the elements described.

17. The records described in Paragraph 3(c), above, were detailed in my *Third Supplemental Declaration* dated March 30, 2012, at Paragraphs 25 and 26. The DEA Voucher for Purchase of Evidence or Payment to Confidential Source, DEA Form 103, documents payments made to confidential sources and includes the name of the individual to whom the funds were released, the date that the funds were received, the social security number of the DEA special agent or task force officer making the payment, the office where the transaction occurs, the enforcement group to which they belong, the case number and G-DEP code, information regarding the purchase of evidence and information regarding when the payments were made.

18. The DEA Form 356 reflects monies paid to a DEA confidential source is limited to payment of funds from appropriated funds. The *reason for payment* would include "Payment for Expenses", "Payment for Information", or an "Award." in their capacity as a DEA confidential source. The *entered* would reflect the signature of the DEA special agent that made the payment. By its very nature, payments to any individual, including a confidential source, are considered personal, since it is information about the receipt by the individual of income or something tangible.

19. With respect to Paragraph 3(d), above, regarding all records of instances where DEA

Fourth SUPPLEMENTAL DECLARATION OF WILLIAM C. LITTLE, JR.
C 06-00185 CRB
5

intervened on his behalf to assist him in avoiding criminal prosecution, the description is not a description of a specific record maintained by DEA. Furthermore, it is not the practice of DEA to intervene on behalf of any individual to assist them in avoiding criminal prosecution.

20. Any inquiries or requests made by a law enforcement agency regarding a confidential source and responses thereto would be documented in the CS file of the individual, if the request is made to DEA. The inquiries and responses would be considered personal to the individual about whom the records pertain.

21. With respect to Paragraph 3(e) for all records of administrative sanctions imposed for dishonesty, false claims, or other deceit, does not comport with practices associated with a confidential source. A confidential source is not an employee of the federal government where administrative sanctions can be imposed. Consequently, it is impossible to apply the term "administrative sanction." Instances of dishonesty, false claims, other deceit, or conduct by a confidential source, if known, would be documented in actions taken against someone is impossible to quantify and the term "administrative sanction" is difficult to objectively apply to any written document.

22. With respect to Paragraph 3(f), above, seeking all records of any benefits of any nature conferred is too vague to articulate what records contain responsive information. DEA does not have a record that lists benefits bestowed when an individual is a source of information, except for monetary payments. However, any record that would be considered as bestowing a benefit on a source of information would be considered personal to the source.

23. With respect to Paragraph 3(g), above, seeking all records of deactivation as a confidential informant, and the reasons for deactivation, would be contained in periodic reports that are prepared by DEA special agents. These reports and the process were described in *my Third Supplemental Declaration* dated March 30, 2012, Paragraphs 27 through 28. Deactivation can occur as a result of a source not providing any actionable information over a period of time or where a source has engaged in behavior which would negate the value of or call into question information they may provide. Records of deactivation would be contained in a file identified by

Fourth SUPPLEMENTAL DECLARATION OF WILLIAM C. LITTLE, JR.
C 06-00185 CRB
6

a personal identifier assigned to Skinner and contain information that pertains to him.

24. With respect to Paragraph 3(h), above, seeking all records concerning Skinner's participation in criminal investigations, the description is vague and ambiguous, since it does not define the parameters of what "participation" entails. Further, DEA does not maintain a record that lists participation in an investigation in any report or form. Documents and reports can be identified that mention an individual by name; however, those reports or documents would not be titled in a manner that would allow easy identification and any determination regarding their responsiveness would be subjective. Any record or information contained in a record that could be construed as describing participation would be personal to Skinner.

25. Plaintiff's request, described in Paragraph 4, above, for a copy of the "NADDIS file" for Gordon Todd Skinner does not comport with the realities of the Narcotics and Dangerous Drug Information System ("NADDIS"). NADDIS functions, as its name implies, as an information system. The term "NADDIS file" or "NADDIS record" in connection with an individual or entity is a misnomer.

26. NADDIS consists of data files and software. NADDIS is internal to DEA, and was created and designed for both criminal intelligence and investigative purposes. A NADDIS record is the discrete data in the data files that are connected through the use of special coding. The software allows for the use of queries, through which NADDIS can identify DEA investigative case files contained in the DEA Investigative Reporting and Filing System ("IRFS") in which an individual or entity is mentioned, provide identifying information about an individual or entity, indicate the status of investigations and display other information of interest to DEA special agents and intelligence research specialists engaged in investigations. Information that may pertain to an individual is not contained in a single grouping of information in a single record or data file, but can be spread out across the system in any one of the several files that comprise the NADDIS data files.

27. By the use of queries, the software extracts information from the data files contained in the data base that comprise the system, and other sources, formats and displays the results of the

Fourth SUPPLEMENTAL DECLARATION OF WILLIAM C. LITTLE, JR.
C 06-00185 CRB
7

1. particular query on a computer screen which can be printed. The other sources include the DEA Case Status System ("CAST"), the DEA Defendant Statistical System ("DSS"), and the State and Country Abbreviation List. CAST, DSS and the State and Country Abbreviation List are systems that are separate from NADDIS.

28. The results of a query are not saved within the system. The results are only memorialized by printing the system return at the time a query is conducted. Other than the use of specified queries, there is no other means by which information can be extracted from the NADDIS data files, and there is no practical means by which to print the discrete data stored in the system that is in a comprehensible form and format. Each query will, however, results in the system compiling a report or listing, and displaying information on a computer screen.

29. When information related to an individual is sought, information in the system is not extracted or accessed directly by entering their name, or other identifying information. A particular query is used that produces a listing from which the operator will choose the name that most likely identifies the person of interest. Using information provided by the system return, a different query must be used that will produce a report.

30. The data in the NADDIS data files are extracted from investigative reports maintained in IRFS. These investigative reports may include information obtained from a confidential source, reports that are classified or related to information that is exempt from access by Statute. The data is entered into the system soon after an investigative report is generated and entered into the investigative reporting system. Also, unless the investigative report is for the purpose of correction of data, the information being entered relates to an ongoing investigation. Consequently, the information in the system is constantly being updated and the results of a query can change daily.

31. The information entered into the system is that which is identified by special agents and/or intelligence research specialists based upon guidelines and standards set for inclusion in the system or based on standards established for general data entry into the system. These guidelines and standards are designed for use in assisting special agents and intelligence research specialists

Fourth SUPPLEMENTAL DECLARATION OF WILLIAM C. LITTLE, JR.
C 06-00185 CRB       8

1 in the identification of violators, their methods and scope of operation, and de-confliction.

32. Thus, DEA does not conduct NADDIS queries and release the results in response to a FOIA request, since it would be the creation of a record that is not in existence at the time the request is received and is tantamount to research. Further, NADDIS queries and information associated with the system is withheld pursuant to FOIA Exemption (b)(7)(E) since release of the results of a query would disclose investigative and intelligence methods, techniques, guidelines and procedures not generally known to the public.

33. The release of NADDIS queries would enable a requester to determine the information DEA focuses upon during the course of an investigation and thereby avoid detection and apprehension by modifying or masking their mode of operation. In addition, because the information in the system is being updated on a daily basis and contains exempt and non-exempt information, successive requests would divulged exempt information, such as the fact there is an ongoing investigation(s), and, with changes to data fields, alert an individual to any new information that has been gathered, also allowing an individual to modify his activities to avoid detection and apprehension. Redacting information would not suffice to protect the FOIA interest of, for example, protecting information that would disclose an ongoing investigation of which a requester is not aware, thus, interfering with the ongoing investigation, since the act of withholding information in a record must be identified along with the basis.

34. There is no segregable information associated with plaintiff's request for information described in his request. By virtue of the fact that the information requested pertains to Gordon Todd Skinner, the information would be personal. In conjunction with the fact that the information requested would be contained in a Privacy Act system of records maintained by DEA in furtherance of DEA's responsibilities under the Controlled Substances Act, all information categorically fall into information that could and would be withheld pursuant to FOIA exemption (b)(7)(C) and (b)(7)(F).

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Fourth SUPPLEMENTAL DECLARATION OF WILLIAM C. LITTLE, JR.
C 06-00185 CRB                                9

July 23, 2012
DATE

William C. Little, Jr., Senior Attorney
Office of Chief Counsel
Administrative Law Section
Drug Enforcement Administration
Washington, D.C. 20537

Fourth SUPPLEMENTAL DECLARATION OF WILLIAM C. LITTLE, JR.
C 06-00185 CRB
10