# Exhibit 2

# Exhibit 2

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CF-2003-4213 |
| | ) |
| GORDON TODD SKINNER. | ) |
| | ) |
| Defendant. | ) |

## GORDON TODD SKINNER'S SUPPLEMENTAL KASTIGAR MOTION AND MOTION TO DISMISS THE CHARGES CURRENTLY PENDING AGAINST HIM

COMES NOW the Defendant, Gordon Todd Skinner, by and through his attorney, Kevin D. Adams, and pursuant to Kastigar v. United States, 406 U.S. 441, (1972), Santobello v. New York, 404 U.S. 257 (1971), United States v. McDaniel, 449 F.2d 832 (8th Cir. 1971), United States v. Avery, 621 F.2d 214 (5th Cir. 1980), the Fifth Amendment to the United States Constitution, The Fourteenth Amendment to the United States Constitution, Article 2 § 7, 21 and 27 of the Oklahoma Constitution and 18 U.S.C. § 6002 and moves this Court to dismiss the charges pending against the defendant **unless** the State of Oklahoma can affirmatively prove that the evidence it proposes to use against Mr. Skinner is derived from a legitimate source wholly independent of Mr. Skinner's compelled testimony and compelled disclosures. In support of this Motion, Defendant, Gordon Todd Skinner, alleges and states the following:

### STATEMENT OF FACTS

In October of 2000, after asserting his Fifth Amendment privilege against self incrimination, the defendant, Gordon Todd Skinner, was given a grant of immunity by the Department of Justice. (See attached Exhibit A, Copy of Immunity Letter signed by John Roth, Chief of

Narcotic and Dangerous Drug Section, United States Department of Justice, herein after "Immunity Agreement"). The immunity agreement between Gordon Todd Skinner and the United States Department of Justice required Mr. Skinner to:

> ..meet with federal agents, to provide information, cooperation, testimony, such documents as you may control, and evidence concerning all facts within your knowledge concerning the subject matter involved.

(see attached exhibit A, immunity Agreement, (1) emphasis added)

In exchange for his cooperation the government agreed:

> ...that no statement or **other information** (including documents) given by you during this and subsequent meetings will be used directly or **indirectly** against you **in any criminal case**, as those terms are understood in **18 U.S.C. § 6002**.

(see attached exhibit A, immunity Agreement, (2) emphasis added)

In October of 2000 Mr. Skinner met with Nancy Carter, *Intelligence Officer for the Department of Justice*; Karl Nickels, *Forensic Chemist/Special Agent Drug Enforcement Agency*; Zach Zagjack, *Special Agent—Drug Enforcement Agency, Washington D.C.*; and Bob Dey, *Special Agent in Charge-Western United States Region*. During the course of Mr. Skinner's cooperation with the government Mr. Skinner disclosed information to the government concerning and describing the worldwide LSD system, the worldwide MDNA (extacy), United States of America v. Ryan Overton; filed in Kansas City, United States of America v. Pickard, and United States of America v. Tanasis Kanculis, filed in the Northern District of Oklahoma.

Mr. Skinner continued to meet with DEA agents under his cooperation agreement with the government. Mr. Skinner began meeting with Agents Andy Langen, Eric Watson. Agents Watson and Langen were assigned the Kansas City Drug Enforcement Office. All of Mr.

2

Skinner's cooperation was covered under his immunity agreement attached as exhibit A, a letter from the Kansas City, Missouri United States Attorney's office that memorialized and endorsing the immunity agreement in exhibit A, and judicial immunity issued by United States District Judge Richard D. Rogers attached as Exhibit B.

In early 2001 as part of his obligations under the immunity agreement Mr. Skinner introduced the agents to Krystal Ann Cole. *(The letter issued by the Kansas City, Missouri United States Attorney's office is significant because it covered the Tanasis Kanculis case which Krystal Cole, Mr. Skinner's co-defendant was provided by Mr. Skinner as a source for the investigation.)* The government was not aware of Ms. Cole's identity as a witness in these matters prior to Mr. Skinner's introduction of her. After introducing Krystal Ann Cole to the government DEA agent Andy Langen approached Ms. Cole telling her that if she ever wanted to cooperate with the government against Mr. Skinner to contact the DEA. *(This of course would be a violation of Mr. Skinner's immunity as it would be derivative use of Mr. Skinner's immunized disclosures, see Arguments and Authorities section)* After Ms. Cole was propositioned by the Special Agent Langen to cooperate against Mr. Skinner, Ms. Cole relayed that conversation to Mr. Skinner and various other witnesses. (Emily Regan, Michael Hobbs, Gunner Gunnian and agent Karl Nichols)

Mr. Skinner continued to cooperate with the government and eventually testified on behalf of the government in case titled *United States of America vs. William Leonard Pickard, In the United States District Court for the District of Kansas, Case No. 00-40104-01/02-RDR.*

Before Mr. Skinner testified he once again asserted his Fifth Amendment privilege and was ordered to testify and once again was granted immunity. This time he was given immunity

3

DuWayne Barnett and Doug Kidwell of the DEA office in Tulsa, Oklahoma. At the meeting Ms. Cole provided information for the DEA agents against Mr. Skinner, including information that was the subject of Mr. Skinner's immunized disclosures and testimony. (See Attached Exhibit C, DEA Form 6, June 12, 2003 debriefing of Krystal Ann Cole) During this initial meeting Brandon Green, the alleged victim in this case, also met with Agents Kidwell and Barnett. (See Attached Exhibit D, DEA Form 6, June 12, 2003 debriefing of Brandon Green) Both Ms. Cole and Mr. Green provided information to the DEA concerning Mr. Skinner. (See Exhibits C and D)

After meeting with Ms. Cole and Mr. Green the DEA opened up a full-blown investigation of Mr. Skinner. (See attached Exhibit E, numerous DEA Form 6 reports detailing the investigation of Mr. Skinner.) *(It should be noted that this entire investigation can be traced back to the immunized disclosure of Mr. Skinner concerning the identity of Ms. Cole and his introduction of her to government agents.)*

The illegal investigation of Mr. Skinner by the DEA began before the allegations in this particular case and continued through at least August of 2003. During this investigation Assistant United States Attorney, Allen Litchfield, assigned to the Northern District of Oklahoma became involved in the investigation of Mr. Skinner. (See attached Exhibit F, DEA Form 6 reports Debrief of Betty Stetler July 8, 2003) *(It should be noted that Exhibits D, E and F provide the source of the "prior bad acts evidence" that the state of Oklahoma has sought to introduce against Mr. Skinner in the matter.)*

During the investigation of Mr. Skinner AUSA Allen Litchfield contacted AUSA Greg Hough. Mr. Hough was the Assistant United States Attorney in Kansas that prosecuted the *USA v. Pickard* case in which Mr. Skinner gave immunized testimony. Mr. Litchfield is asked Mr.

5

Hough about Mr. Skinner. The reason for the inquiry is that on July 8th 2003 Mr. Skinner and Mr. Skinner's attorney H.I. Aston went to the Tulsa Field Office of the DEA to inquire about why the DEA Agents were conducting an illegal investigation against Mr. Skinner. (This meeting was tape recorded by the DEA Agents and Mr. Skinner and his lawyer Mr. H.I. Aston were thoroughly searched before the meeting.)

Mr. Litchfield was informed of this meeting and on July 9, 2003 at 4:40 P.M. Mr. Litchfield sent Mr. Hough the following email;

*Subject: Re: Skinner*

*Can you tell me what this guy was up to? He popped up and walked into the DEA claming all types of immunity etc. Frankly he sounds a little spooky.*

*AJL*

(See attached Exhibit G, email correspondence of AUSA Allen Litchfield)

*(Mr. Litchfield is unsure how to handle Mr. Skinner and is inquiring of an AUSA who knows Mr. Skinner well, due to his immunized disclosures, to assist him in formulating a strategy and focus the investigation on Mr. Skinner. This is derivative use of Mr. Skinner's immunized testimony and disclosures and violates Mr. Skinner's immunity agreement, United States District Judge's Immunity Order, 18 U.S.C. §6002, <u>Kastigar</u> and its progeny.)*

The next morning on July 10, 2003 at 8:24 am AUSA Greg Hough responds to Mr. Litchfield's inquiry. In the email Mr. Hough informs Mr. Litchfield that Mr. Skinner testified under immunity in the federal trial in Kansas.

6

> *....Skinner was involved in an LSD deal. He & his attorney got DOJ to give him immunity for his testimony against the 2 other leaders (Pickard & Apperson)*

(See attached Exhibit G, email correspondence of AUSA Allen Litchfield)

*(To assert a claim under 18 U.S.C. § 6002 all the defense is required to do is make a prima facie showing that Mr. Skinner gave immunized disclosures. Exhibit A the immunity agreement, exhibit B Judge Roger's Immunity Order and this email Exhibit G makes that prima facie case.. After making this initial showing the burden shifts to the State to affirmatively prove that **all** the evidence the intend to introduce against Mr. Skinner is wholly independent of the immunized disclosures.)*

Mr. Hough goes on to explain how Mr. Skinner made a complaint against him and the DEA agents during the *Pickard* trial. During the course of the trial an issue arose concerning whether AUSA Hough and DEA Agents, including Agent Hanzlick, were improperly receiving inside information concerning documents and exhibits that the defense was requesting from the Court. Once this allegation came to light Mr. Skinner provided a affidavit on the subject. AUSA Hough, DEA Agent Nichols and DEA Agent Hanzlick also provided affidavits regarding the subject. (See Attached Exhibit H, Affidavits from Skinner, Hough, Nichols and Hanzlick) In the July 10, 2003 email AUSA Hough discusses this issue.

> *After his testimony in his LSD trial in D. Kan., Skinner flipped back into the arms of his co-conspirators. This precipitated a bunch of mini-trials during the trial wherein Skinner, sponsored by Pickard & Apperson, testified that the 3 DEA agents, a courtroom deputy and I all conspired to effect his trial testimony. Skinner alleged that despite our best efforts, he testified truthfully. However, it was a tremendous distraction, likely caused OPR*

7

> *The lead DEA Agents were Karl Nichols, Oakland, CA. and Roger Hanzlik, Kansas City. Either, or both, can shed additional light on the matter. If you've got agents talking to Skinner, they should definitely coordinate with Nichols and Hanzlik.*
>
> *Gregory G. Hough*
> *O.C.D.E.T.F. Lead AUSA*
> *District of Kansas*
>
> (See attached Exhibit G, email correspondence of AUSA Allen Litchfield, July 10, 2003 email of AUSA Greg Hough)

*(To coordinate with Agents Nichols and Hanzlik would be derivative use of Mr. Skinner's immunized testimony and disclosures and violates Mr. Skinner's immunity agreement, Judge Rogers Immunity Order—Exhibit B, 18 U.S.C. §6002, Kastigar and its progeny.)*

AUSA Hough sends a carbon copy of this email to Agent Karl Nichols. Also in the email to AUSA Litchfield there is discussion of a memo written by Agent Nichols about Mr. Skinner. Then AUSA Litchfield emails AUSA Hough and requests a copy of the memo written by Agent Nichols on Mr. Skinner.

> *Skinner is up to his old tricks again in his home town. We are looking at him as a target. He is trying to head us off. I'm certain that nobody will try and use him as a CI. Is it possible to get a copy of the memo? Thanks.*
>
> *AJL*

(See attached Exhibit G, email correspondence of AUSA Allen Litchfield, July 10, 2003 email of AUSA Litchfield)

9

AUSA Hough responds to AUSA Litchfield's request by providing Karl Nichols phone number. Agent Nichols begins emailing AUSA Litchfield and in his emails he discloses that he has already been coordinating with DEA Agent Kidwell who is in the Tulsa DEA office and who interviewed both Brandon Green and Ms. Cole. (See attached Exhibit G, email correspondence of AUSA Allen Litchfield, July 16, 2003 email of Agent Nichols) *(Not only is Agent Nichols now coordinating his investigation with AUSA Litchfield he also admits that he has already strategized/coordinated his efforts with DEA Agent Doug Kidwell. The problem is that because DEA Agent Nichols possesses knowledge of Mr. Skinner comes directly from Mr. Skinner's immunized disclosures Agent Nichols participation in strategy and focusing of the investigation on Mr. Skinner is derivative use of Mr. Skinner's immunized disclosures.)*

During the days surrounding the 4th of July of 2003 both Brandon Green the alleged victim in this case and Ms. Cole the co-defendant in this case are still actively working to provide the DEA with information concerning Mr. Skinner. In fact Mr. Green's presence in the proximate of Mr. Skinner is nothing more than an effort by Mr. Green to gain information about Mr. Skinner in order to assist the DEA in their investigation. The alleged victim in this matter was arrested in Lebanon, MO for drugs and made disclosures to the authorities concerning Mr. Skinner in an effort to stay out of jail. (See attached Exhibit E, numerous DEA Form 6 reports detailing the investigation of Mr. Skinner. Report dated 7/11/03 Bates page 338)

After the events surrounding the 4th of July weekend the DEA and the FBI began to investigate the *Assault and Kidnapping of Brandon GREEN on or about July 4, 2003*. (See attached Exhibit I DEA Form 6 titled *Assault and Kidnapping of Brandon GREEN on or about July 4, 2003* prepared July 15, 2003, bates page 360)

The July 15, 2003 DEA report details how the agents spoke with Mark Green the father of Brandon Green. Mark Green provided the DEA agents with information that is virtually identical to the information turned over to defense in discover. Mr. Green also provided copies of his son's medical records. The defense has also received copies of Brandon Green's medical records in discovery of the present case.

The DEA begin to investigate the allegations that provide the basis for the present state charges. On July 16, 2003 the DEA agents interview William Hauck, Mr. Skinner's co-defendant and present witness for the state. (See attached Exhibit J, DEA Form 6 report detailing interview with William Hauck, Beginning at Bates page 362)

On July 18, 2003 the DEA and the FBI interview Brandon Green regarding his allegations. (See attached Exhibit K, DEA Form 6 report detailing interview with Brandon Green, Beginning at Bates page 372)

On July 11, 2003 DEA agents interview Kristi Roberts concerning Mr. Skinner and on July 14, 2003 the DEA re-interviewed Kristi Roberts concerning the allegations that Mr. Skinner is presently accused of. Kristi Roberts is an endorsed witness for the state in this matter. (See attached Exhibit L, DEA Form 6 report detailing interview with Kristi Roberts, Beginning at Bates page 353)

However, despite all of the investigation by the federal authorities Mr. Skinner was never charged by the federal government. At some point at the beginning of August of 2003 the Federal investigation of this matter ceased and the Tulsa Police Department picks up the investigation. The Tulsa Police re-interview all of the witnesses that the DEA have already interviewed. The investigation follows the exact same track that the federal investigation took.

During the Tulsa Police investigation there is collaboration between the Tulsa Police Department and the DEA. In video taped interview of the state's endorsed witness, Kristi Roberts, Detective Gene Watkins ask Kristi Roberts a question that he says that the DEA wanted him to ask her about. Furthermore, it is the belief of the defense that copies of the interviews, DEA 6 forms, photographs, medical records, police reports from other jurisdictions and other leads were all turned over to the Tulsa Police directly from the DEA and the FBI.

In short the state's entire case was first developed by the DEA while conducting an illegal investigation against Mr. Skinner. The investigation is illegal because it can be traced back to derivative use of Mr. Skinner's immunized statements; specifically, his disclosures about Ms. Cole and his introduction of Ms. Cole to the DEA agents. Furthermore, DEA Agents and an Assistant United States Attorney that were privy to the immunized statements of Mr. Skinner improperly used those statements against him to gain leads, strategize and focus their investigation that targeted Mr. Skinner.

## ARGUMENTS AND AUTHORITIES

I. THE STATE OF OKLAHOMA **MUST** SHOW A WHOLLY INDEPENDENT SOURCE FOR THE EVIDENCE IT INTENDS TO INTRODUCE AGAINST MR. SKINNER AT TRIAL

When prosecuting a witness that has previously given immunized disclosures the government bears the burden of proving a "wholly" independent source for the evidence it intends to introduce at trial. In <u>Kastigar</u>, the Supreme Court held that the Government's burden of proof *"is not limited to the negation of taint, rather it imposes*

12