IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LEONARD PICKARD,<br><br>  Plaintiff,<br><br>  v.<br><br>DEPARTMENT OF JUSTICE,<br><br>  Defendant.<br>_____ / | No. C 06-00185 CRB<br><br>**ORDER VACATING HEARING, DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT, AND ORDERING SUBMISSION OF MATERIALS FOR <u>IN CAMERA</u> REVIEW** |

Now pending are the parties' fourth motions for summary judgment in this FOIA case involving Plaintiff William Leonard Pickard's search for information about confidential informant Gordon Todd Skinner. <u>See generally</u> D MSJ (dkt. 184); P MSJ (dkt. 188). Although the government has filed a 113-page Vaughn Index (dkt. 166) as the Court ordered it to do, <u>see</u> Minutes (dkt. 165), the Index is supremely unhelpful. The parties' motions are therefore untethered to the Index and make abstract arguments about the relevant FOIA exemptions which the Court is in no position to assess. The Court finds the pending motions suitable for resolution without oral argument, pursuant to Civil Local Rule 7-1(b), VACATES the hearing set for Friday, May 9, 2014, and rules as follows.

**I. BACKGROUND**

Plaintiff is an inmate at the U.S. Penitentiary in Tucson, Arizona, having been convicted in 2003 of offenses relating to LSD and sentenced to life in prison. D MSJ at 1. In

January 2005, Plaintiff submitted a request to the Drug Enforcement Administration ("DEA") seeking information and documents pertaining to DEA informant Skinner. Id. Specifically he sought any information on

> (1) Skinner's criminal history (including records of arrests, convictions, warrants, or other pending cases), (2) records of all case names, numbers, and judicial districts where he testified under oath, (3) records of all monies paid in his capacity as a federal government informant, (4) all records of instances where the DEA intervened on his behalf to assist him in avoiding criminal prosecution, (5) all records of administrative sanctions imposed for dishonesty, false claims, or other deceit, (6) all records of any benefits of any nature conferred, (7) all records of deactivation as a confidential informant and the reasons for deactivation, and (8) all records concerning Skinner's participation in criminal investigations.

Id. at 2. In February 2005, the DEA denied this request, citing FOIA exemptions 6 and 7(c), and without confirming or denying the existence of any records about Skinner. Id. The OIP upheld that response. Id.

Plaintiff then brought suit in this Court. Id. The government moved for summary judgment, and the Court denied the motion without prejudice, holding that the DEA had not adequately demonstrated that a Glomar response (a refusal to confirm or deny the existence of records pertaining to an individual) was appropriate. See Order Denying MSJ (dkt. 62) at 5-6. The government then brought a second motion for summary judgment, fully briefing the Glomar response issue. Pickard v. Dep't of Justice, 653 F.3d 782, 784-85 (9th Cir. 2011). The Court granted that motion, finding that Skinner's identity as a confidential informant had not been "officially confirmed" under the Privacy Act, and that a Glomar response was appropriate under exemptions 7(c) and 7(D). Id. at 785.

In July 2011, the Ninth Circuit reversed and remanded, holding that, because the government had publicly disclosed Skinner's status as a confidential informant, a Glomar response was no longer appropriate. Id. at 787-88. The Court explained, "This is not to say that the DEA is now required to disclose any of the particular information requested by Pickard." Id. at 788. The government was to produce a Vaughn Index, "raise whatever other exemptions may be appropriate, and let the district court determine whether the contents, as distinguished from the existence, of the officially confirmed records may be protected from

2

1 disclosure under the DEA's claimed exemptions." Id. In March 2012, the government filed
2 its third Motion for Summary Judgment but did not file a Vaughn Index. See generally D 3rd
3 MSJ (dkt. 140). Plaintiff filed a cross-motion for summary judgment. See generally P 3rd
4 MSJ (dkt. 152). The Court denied both motions and ordered the government to file a
5 Vaughn Index not under seal within 5 days. See Minutes. The government did so.
6 See Vaughn Index. At issue are 325 responsive reports and documents, which the
7 government has withheld in full. See Fifth Supp. Little Decl. (dkt. 184-1) ¶¶ 7, 10.

8 The parties now file a fourth set of cross-motions for summary judgment as to whether
9 the government has properly withheld those documents.

## II. LEGAL STANDARD

"The Freedom of Information Act was enacted to facilitate public access to Government documents." United States Dep't of State v. Ray, 502 U.S. 164, 173 (1991). The purpose of the Act is "'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" Id. "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." Id.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

In a FOIA case, the court may grant summary judgment on the information provided in affidavits or declarations when the affidavits or declarations describe "the documents and

the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Serv., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (omitting citation and internal quotation marks).

**III. DISCUSSION**

The government's motion argues that the documents at issue are exempt under FOIA exemptions 7(C),[1] 7(D),[2] 7(E),[3] and 7(F).[4] D MSJ at 3-4. It argues that because the documents are categorically exempt, there is no segregable information to be released. Id. at 4. And it maintains that its search of the materials was reasonable. Id. Plaintiff's motion pertains only to (1) Skinner's name, (2) information Skinner has voluntarily disclosed to the public, and (3) Skinner's NADDIS number[5]–three categories of withholdings that Plaintiff maintains are demonstrably improper. P MSJ at 1. As to those categories, Plaintiff argues that the government's claim of categorical exemption is "unprecedented and without merit,"

---

[1] This exemption applies when production of records compiled for law enforcement purposes "could reasonably be expected to constitute an unwarranted invasion of personal privacy." See 5 U.S.C. § 552(b)(7)(C); see also Weiner v. FBI, 943 F.2d 972 (9th Cir. 1991) ("The privacy interests of third persons whose names appear in FBI files, the public interest in disclosure, and a proper balancing of the two, will vary depending upon the content of the information and the nature of the attending circumstances.").

[2] This exemption applies when production of records compiled for law enforcement purposes "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source." See 5 U.S.C. § 552(b)(7)(D).

[3] This exemption applies when production of records compiled for law enforcement purposes "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." See 5 U.S.C. § 552(b)(7)(E).

[4] This exemption applies when production of records compiled for law enforcement purposes "could reasonably be expected to endanger the life or physical safety of any individual." See 5 U.S.C. § 552(b)(7)(F).

[5] NADDIS stands for the Narcotics and Dangerous Drugs Information System, and is a data collection system operated by the DEA. See Fifth Supp. Little Decl. ¶ 6.

4

that the claimed exemptions do not apply, and that the government failed to segregate non-exempt information. See generally P MSJ. Plaintiff asserts that there are genuine issues of material fact as to the other categories of withholdings. Id. at 14-15.

This Order first rejects the government's claim of categorical exemption, then explains the problem with the Vaughn Index, and then briefly addresses Plaintiff's motion.

### A. Categorical Exemption

The government argues that all of the responsive documents are "categorically exempt under Exceptions 7(C) and 7(F)." D MSJ at 11. Categorical exemption would make the government's job much easier. "Any reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b); see also Mays v. Drug Enforcement Admin., 234 F.3d 1324, 1327 (D.C. Cir. 2000) (agency may withhold non-exempt material where it is so inextricably intertwined with exempt material that disclosure would provide nothing of informational value). If the records are all exempt, there is nothing to segregate. See Fourth Supp. Little Decl. (dkt. 161-1) ¶ 34 ("There is no segregable information associated with plaintiff's request for information. . . . all information categorically fall into information that could and would be withheld pursuant to FOIA exemption (b)(7)(C) and (b)(7)(F)."). But the Ninth Circuit has explained that "categorical exemptions are rarely proper under the FOIA: they are appropriate only in those circumstances in which disclosing a type of record defined by its content, such as an identifiable individual's rap sheet, will invariably result in an invasion of personal privacy." Yonemoto v. Dep't of Veterans Affairs, 686 F.3d 681, 695 (9th Cir. 2012) (holding that "emails" were not categorically exempt). So what type of document does the government argue is categorically exempt here?

Plaintiff initially accuses the government of arguing that "DEA informant files are categorically exempt" under exemptions 7(C) and 7(F). P MSJ at 5. Such an argument would be problematic given the government's failure to point to any cases recognizing such a broad exemption. Cf. Dep't of Justice v. Landano, 508 U.S. 165, 177-78 (1993) ("Neither the language of Exemption 7(D) nor Reporters Committee . . . supports the proposition that

5

the category of all FBI criminal investigative sources is exempt"); see also Plaintiff's Statement of Recent Decision (dkt. 194) at 32-34 (memorandum opinion in Marino v. DEA, No. 06-1255 (Dist. D.C. Feb. 19, 2014), rejecting categorical exemption of DEA records where government failed to demonstrate "why redactions or selective withholding will not suffice to protect any existing privacy interests"). The government replies that it asserts only that "the records requested in this case are categorically exempt" under 7(C) and 7(F). D Reply (dkt. 189) at 10. "That means there are no issues about segregability, and no page-by-page, line-by-line analysis of the Vaughn Index is required." Id. Plaintiff responds that an argument that all "records related to . . . Skinner" are categorically exempt "betrays the agency's claim of categorical exemption in the first instance." P Reply (dkt. 191) at 2.

Plaintiff is right. The government's argument–that it is not arguing for a categorical exemption for all DEA informants' records, but only for one particular DEA informant's records–does not really relate to a type of record, like an email or a rap sheet. The purpose of categorical exemption is to provide "workable rules" for agencies in future cases. See Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 779 (1989). A holding that "all records related to Skinner" are categorically exempt fails to provide a workable rule for future cases because it only pertains to this case. The government's argument is also weak because the government fails to explain what makes Skinner's records different from any other informant's (or all other informants') records.

"All records relating to Skinner" is not an appropriate categorical exemption. Accordingly, the government was obligated to "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." See Mead Data Central, Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977); see also Pac. Fisheries Inc. v. United States, 539 F.3d 1143, 1148 (9th Cir. 2008) ("The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed."). The government has not done this. See D MSJ at 11 (concluding that "there is no segregable information to be released" because of categorical

6

exemption). Accordingly, it has not met its burden under 5 U.S.C. § 552(b) to provide "any reasonably segregable portion of a record."

Between the government's failure to segregate any information and its inadequate Vaughn Index, discussed below, the Court cannot approve the government's having entirely withheld the 325 documents it found responsive to Plaintiff's request. See Weiner, 943 F.2d at 988 ("It is reversible error for the district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof, with respect to that document. . . . The court on remand must make a specific finding that no information contained in each document or substantial portion of a document withheld is segregable."); Hronek v. Drug Enforcement Agency, 16 F. Supp. 2d 1260, 1269 (D. Or. 1998), aff'd 7 F. App'x 591 (9th Cir. 2001) ("this court, like the plaintiff, must look exclusively to the agency's submissions for the factual basis necessary to make the required segregability findings.").

On this basis, the government's motion is denied without prejudice.

**B.    The Vaughn Index**

"FOIA's 'strong presumption in favor of disclosure' means that an agency that invokes one of the statutory exemptions . . . bears the burden of demonstrating that the exemption properly applies to the documents." Yonemoto, 686 F.3d at 692. A Vaughn Index "must identify each withheld document, describe its contents to the extent possible, and give 'a particularized explanation of why each document falls within the claimed exemption.'" Id. at 695. The Vaughn Index "should reveal as much as possible as to the nature of the document, without actually disclosing information that deserves protection." Id.

The Vaughn Index in this case is conclusory and circular. Although it pertains to all 325 responsive documents, and lists the documents' types[6] and dates, see, e.g., Vaughn Index

---

[6] Based only on the "document types," there are at least a couple of documents that give the Court pause: a "criminal felony docket for Tulsa County, Oklahoma District Court" and a "Pottawattamie County Kansas Court Order," both of which were withheld in their entirety. See Vaughn Index at 110, 112. The "contents" are listed only as "name and information related to third-

7

1  at 19 ("Page number 48-50 - Document type: Report of Investigation - Date October 24,
2  2000"), it provides neither the Court nor the Plaintiff with any useful information about the
3  content of the documents or how the claimed exemptions apply, see, e.g. id. ("Material
4  deleted: Identity of and information provided by a confidential source - Exemption:
5  (b)(7)(D), (b)(7)(F) - Contents: Identity of and information provided by a confidential
6  source."). The declaration in support of the Vaughn Index is no better. See Fifth Supp. Little
7  Decl. ¶ 13 ("The pages and information withheld cannot be described in further detail in the
8  Vaughn and/or declaration without the disclosure of the actual information. The descriptions
9  are the factual assessments of the contents of a particular box or document intended to
10 provide plaintiff with the opportunity to contest the application of the exemption(s) to the
11 materials withheld and the court with sufficient information to assess the application of the
12 exemption(s) claimed based upon personal observation and objective assessment."). If
13 Plaintiff or the Court wishes to do anything with such representations other than
14 unquestioningly accept them, there is no way to do so. See Weiner, 943 F.2d at 987 ("The
15 purpose of the index is to afford the FOIA requester a meaningful opportunity to contest, and
16 the district court an adequate foundation to review, the soundness of the withholding."). In
17 Weiner, id. at 984, the Ninth Circuit found insufficient the Vaughn Index the FBI prepared in
18 response to a FOIA request about John Lennon, and explained what should have been done
19 as to a particular document:

> Without violating the privacy interests of the informant or the third party, the FBI could have stated that HQ-8 recites information provided by a third party to an FBI informant detailing the third party's knowledge of several activists and protest activities planned at the 1972 Republican National Convention, discussing the possibility that John Lennon would organize a series of concerts to raise money to finance the activity, and describing rivalries and jealousies within activist organizations.

25 Id. at 984. Boilerplate explanations for withholding are improper, and efforts must be "made
26 to tailor the explanation to the specific document withheld." Id. at 978-79.

---

28 party." Id. That description is inadequate to justify withholding what one would otherwise assume is a public record.

8

The government must go back and produce an adequate Vaughn Index. It may also provide the requisite detail in a declaration explaining what information is in the documents, whether that information has already been released publicly, and what exemptions apply that would overcome the presumption in favor of disclosure. See Ray, 502 U.S. at 173. Without that context, the Court cannot assess the government's withholdings. See Vaughn v. Rosen, 484 F.2d 820, 828 (D.C. Cir. 1973) ("Given more adequate, or rather less conclusory, justification in the Government's legal claims, and more specificity by separating and indexing the assertedly exempt documents themselves, a more adequate adversary testing will be produced.").

### C. Plaintiff's Motion

Plaintiff acknowledges that the Vaughn Index here is insufficient, but argues that, despite "the meager factual basis the agency now provides," the Court can nonetheless order the release of three categories of materials: Skinner's name, information Skinner has voluntarily disclosed to the public, and Skinner's NADDIS number. D MSJ at 1, 9-13. Defendant argues, largely in the abstract, that exemptions 7(C), 7(D), 7(E) and 7(F) prevent disclosure of those materials. See D Reply at 2-15. The Court cannot resolve this dispute at this time, and therefore denies Plaintiff's motion without prejudice.

Without context, the Court cannot know if releasing something as basic as Skinner's name would compromise an important privacy interest, endanger any individual's (including Skinner's) physical safety, or run afoul of one of the other claimed exemptions. For example, Plaintiff's argument that "disclosure of information Skinner has already volunteered to the public cannot threaten his physical safety," P Reply at 9, is too cavalier; Skinner was apparently attacked by fellow prisoners after they learned about his status as a former informant, D Reply at 14-15. It is possible that releasing a wave of new materials about Skinner's work as an informant could again endanger him. The Court will not order the release of materials when it does not know what they are, or what the consequences would be of their release.

9

The Court does note that the government's objection to revealing Skinner's NADDIS number seems to rely only on exemption 7(E)–that it "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," see 5 U.S.C. § 552(b)(7)(E)–and that such reliance is thus far not compelling. Exemption 7(E) "only exempts investigative techniques not generally known to the public," see Rosenfeld v. Dep't of Justice, 57 F.3d 803, 815 (9th Cir. 1995), and the government has not demonstrated that the use of NADDIS numbers is unknown.[7] The government asserts that "NADDIS numbers and informant identifier codes are unique and personal and would allow an individual to avoid detection and apprehension." See D Reply to Third MSJ (dkt. 161); Fourth Supp. Little Decl. ¶ 33. It is not clear how release of Skinner's NADDIS number would help Skinner avoid detection or apprehension, as he is already incarcerated, or how it would help anyone else avoid detection or apprehension, as the number is presumably unique to Skinner. In addition, Plaintiff contends that Skinner's purported NADDIS number is already a matter of public record. See P Reply at 9.[8] If so, then it is hard to see how exemption 7(E) applies.

This raises another issue that the government must address: other court proceedings have resulted in the release of some materials presumably among the 325 documents at issue here. See, e.g., Rumold Decl. (dkt. 188-2) (declaration purporting to attach Skinner's confidential source agreement);[9] see also United States v. Pickard, 733 F.3d 1297, 1304-05 (10th Cir. 2013) (criticizing Kansas district court for not considering "whether selectively

---

[7] The government argues that "Plaintiff has not shown that the use of NADDIS numbers, or the numbers themselves, are commonly known to the public," D Reply at 14, but it is the government's burden to establish that an exemption applies. See Yonemoto, 686 F.3d at 692 (agency's burden to demonstrate that one of the statutory exemptions applies).

[8] The government objects, saying that Plaintiff himself put the unauthenticated NADDIS number into the public record. See D Reply at 13. Plaintiff argues that he obtained the document he filed containing Skinner's NADDIS number from a public filing, by Skinner, in federal court, and that the Court is free to take judicial notice of it. See P Reply at 3 n.2. The Court need not resolve this dispute at this time.

[9] The government objects that this document has not been properly authenticated. See D Reply at 15 n.6. Again, the Court need not resolve this dispute at this time.

10

redacting just the still sensitive, and previously undisclosed, information from the sealed DEA documents and then unsealing the rest of the DEA file would adequately serve the government's interest," noting that "[t]he circumstances presented here would appear conducive to redaction because the district court acknowledged that some of the information in the DEA documents had already been made public," and adding that "much of the information in the DEA records could be unsealed"); Defendant's Statement of Recent Decision (dkt. 197) at 9 (memorandum and order in United States v. Pickard, No. 00-40104-01, 02-JTM (D. Kan. April 7, 2014), holding that "government interest is sufficient to overcome the presumption in favor of public access to judicial records" as to some materials but unsealing "those portions of the DEA file which have been made public," including (a) Skinner's criminal felony docket in Tulsa County, Oklahoma of July 31, 2006, (b) the Pottawattamie County Kansas order dated August 21, 2000, (c) Skinner's criminal felony docket for Tulsa County, Oklahoma of March 24, 2004, (d) Skinner's eleven-point risk assessment, and (e) Skinner's confidential source agreement form dated October 18, 2000). Such disclosures would seem to undermine the government's position here that none of the documents responsive to Plaintiff's FOIA request can be released.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES both motions without prejudice and ORDERS the government to reassess Plaintiff's FOIA request in light of the documents already made public. In addition, within thirty (30) days of this Order, the government is ORDERED to submit (1) an adequate Vaughn Index and (2) all of the responsive documents that the government continues to withhold in full or in part to Magistrate Judge Nathanael Cousins for in camera review of "whether the contents, as distinguished from the existence, of the officially confirmed records may be protected from disclosure under the DEA's claimed exemptions." See Pickard, 653 F.3d at 788; but see Weiner, 943 F.2d at 979 ("In camera review of the withheld documents by the court is not an acceptable substitute for an

//

//

11

1  adequate Vaughn Index.").

2  **IT IS SO ORDERED.**

4  Dated: May 7, 2014

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE