United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIAM LEONARD PICKARD,

    Plaintiff,

v.

DEPARTMENT OF JUSTICE,

    Defendant.
_____/

No. C 06-00185 CRB

**ORDER GRANTING MOTION FOR DE NOVO REVIEW AND HOLDING THAT GOVERNMENT MAY WITHHOLD MATERIALS**

This is a long-standing FOIA case involving a convicted LSD manufacturer's search for information about a confidential informant who testified against him. The particular motion that is pending, however—Defendant United States Department of Justice's Second Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge, 2d Mot. for De Novo Review (dkt. 260)—involves information that the parties agree is already known, because a confidential informant has already disclosed it. The motion challenges an order by Magistrate Judge Nathanael M. Cousins holding that none of the government's claimed FOIA exemptions apply, and ordering released the three categories of materials that Plaintiff William L. Pickard currently seeks: (1) confidential informant Gordon Skinner's name, (2) information Skinner has voluntarily disclosed to the public, and (3) Skinner's NADDIS number.[1] See generally Order to Release (dkt. 243).

---

[1] NADDIS stands for the Narcotics and Dangerous Drugs Information System, and is a data collection system operated by the DEA. See Fifth Supp. Little Decl. (dkt. 184-1) ¶ 6.

1    That Pickard only currently seeks the three categories that he does makes the Court's

2    task unusual.  Ordinarily, it is clear to the Court that its rulings will have some impact on the

3    parties before it.  That Pickard only currently seeks the three categories that he does also

4    makes the Court's task more difficult.  While the Court has the benefit of the government's

5    Vaughn index, and a set of documents compiled by the government in response to Pickard's

6    broader initial FOIA request, the Court does not know which portions of which documents

7    represent material that "Skinner has voluntarily disclosed to the public."  Accordingly, the

8    Court cannot do a meaningful in camera review of the relevant materials.

9    Nevertheless, and in the absence of controlling authority in the Ninth Circuit, the

10   Court concludes that the government may withhold Skinner's name and the information that

11   he voluntarily disclosed to the public under FOIA Exemption 7(D), which pertains to

12   confidential informants.  The Court does not reach the question of whether the same

13   materials could also be withheld under Exemption 7(F), which pertains to safety, or

14   Exemption 7(C), which pertains to privacy interests.  The Court further holds that the

15   government may withhold Skinner's NADDIS number under Exemption 7(E), which

16   pertains to law enforcement techniques.

17   **I.    BACKGROUND**

18   Plaintiff is an inmate at the U.S. Penitentiary in Tucson, Arizona, having been

19   convicted in 2003 of offenses relating to LSD, and sentenced to life in prison.  D MSJ (dkt.

20   184) at 1.  In January 2005, Plaintiff submitted a request to the Drug Enforcement

21   Administration ("DEA") seeking information and documents pertaining to DEA informant

22   Skinner.  Id. at 2.  Specifically, he sought any information on

> (1) Skinner's criminal history (including records of arrests, convictions, warrants, or
> other pending cases), (2) records of all case names, numbers, and judicial districts
> where he testified under oath, (3) records of all monies paid in his capacity as a
> federal government informant, (4) all records of instances where the DEA intervened
> on his behalf to assist him in avoiding criminal prosecution, (5) all records of
> administrative sanctions imposed for dishonesty, false claims, or other deceit, (6) all
> records of any benefits of any nature conferred, (7) all records of deactivation as a
> confidential informant and the reasons for deactivation, and (8) all records concerning
> Skinner's participation in criminal investigations.

2

Id. In February 2005, the DEA denied this request, citing FOIA Exemptions 6 and 7(C), without confirming or denying the existence of any records about Skinner. Id. The Office of Information and Privacy upheld that response. Id.

Plaintiff then brought suit in this court. Id. The government moved for summary judgment, and the Court denied the motion without prejudice, holding that the DEA had not adequately demonstrated that a Glomar response (a refusal to confirm or deny the existence of records pertaining to an individual) was appropriate. Order Denying MSJ (dkt. 62) at 5–6. The government then brought a second motion for summary judgment, fully briefing the Glomar response issue. See Pickard v. Dep't of Justice, 653 F.3d 782, 784–85 (9th Cir. 2011). The Court granted that motion, finding that Skinner's identity as a confidential informant had not been "officially confirmed" under the Privacy Act, and that a Glomar response was appropriate under Exemptions 7(C) and 7(D). Id. at 785.

In July 2011, the Ninth Circuit reversed and remanded, holding that, because the government had publicly disclosed Skinner's status as a confidential informant in open court in the course of official proceedings, a Glomar response was no longer appropriate. Id. at 787–88. The court explained, "[t]his is not to say that the DEA is now required to disclose any of the particular information requested by Pickard." Id. at 788. The government was to produce a Vaughn index, "raise whatever other exemptions may be appropriate, and let the district court determine whether the contents, as distinguished from the existence, of the officially confirmed records may be protected from disclosure under the DEA's claimed exemptions." Id.

In March 2012, the government filed its third Motion for Summary Judgment but did not file a Vaughn index. See generally D 3rd MSJ (dkt. 140). Plaintiff filed a cross-motion for summary judgment. See generally P 3rd MSJ (dkt. 152). The Court denied both motions and ordered the government to file a Vaughn index within 5 days. See Minutes (dkt. 165). The government did so. See Vaughn Index (dkt. 166).

In May 2014, the Court denied the government's fourth motion for summary judgment after finding its Vaughn index "supremely unhelpful." MSJ Order (dkt. 198) at 1,

United States District Court
For the Northern District of California

7, 11.   The Court also denied Pickard's cross-motion for summary judgment, which requested release of the same three categories of information at issue in the present motion. Id. at 11; P MSJ Reply (dkt. 191) at 3.  The Court found that without an adequate Vaughn index, "the Court [could not] know if releasing something as basic as Skinner's name would compromise an important privacy interest, endanger any individual's (including Skinner's) physical safety, or run afoul of one of the other claimed exemptions."  MSJ Order at 9.  The Court then ordered the government "to submit (1) an adequate Vaughn index and (2) all of the responsive documents that the government continues to withhold in full or in part to Magistrate Judge Nathanael Cousins for review of 'whether the contents, as distinguished from the <u>existence</u>, of the officially confirmed records may be protected from disclosure under the DEA's claimed exemptions.'"  <u>Id.</u> at 11 (citations omitted).

On December 24, 2015, Judge Cousins issued a tentative ruling, concluding that "the government has provided no evidence to carry its burden of proving that documents in the three categories qualify for exemptions," and ordered the release of documents in the three categories.  <u>See</u> Tentative Ruling (dkt. 227) at 1.  The parties submitted additional briefing and an additional declaration, and on May 2, 2016, Judge Cousins issued an order releasing the three categories of documents.  <u>See generally</u> Order to Release.  The order explained that "the government may not offer only general government interests that are present in virtually all cases."  <u>Id.</u> at 2.  It relied on <u>United States v. Apperson</u>, Nos. 14-3069, 14-3070, 2016 WL 898885 (10th Cir. March 9, 2016), which involved Pickard's challenge to a Kansas district court's denial of his motion to unseal Skinner's confidential informant file. <u>Id.</u> at 2–3.  Although Judge Cousins recognized that a motion to unseal a file "applies a different standard than a FOIA request," he nonetheless found <u>Apperson</u> relevant because it, too, found the government's articulated interests to be too generalized.  <u>Id.</u> at 3.[2]  Judge

---

[2] That case ultimately vacated the district court's order and remanded for further proceedings. <u>See</u> <u>Apperson</u>, 642 F. App'x at 893.  This Court asked the parties about the District of Kansas/Tenth Circuit litigation at the motion hearing, observing that Pickard might still win access to Skinner's file in that litigation.  <u>But see</u> <u>id.</u> ("Although Defendants' counsel <u>already had access to an unredacted copy</u>, Defendants sought to unseal the file in order to use it in connection with ongoing litigation under [FOIA], and other proceedings.") (emphasis added).  Counsel stated that they believed that nothing had

United States District Court
For the Northern District of California

Cousins also cited to a case that this Court decided about Vaughn indexes, see Order at 2 (citing Muchnick v. Dep't of Homeland Sec., No. CV 15–3060 CRB, 2016 WL 730291, at *3 (N.D. Cal. Feb. 24, 2016) (holding that boilerplate explanations for withholdings are improper)), although Judge Cousins had already found the Vaughn index in this case sufficient, see generally Order Finding Vaughn Index Sufficient (dkt. 219).  The order did not discuss any documents or any claimed exemptions.  See generally Order to Release. Judge Cousins ordered the parties to meet by May 16, 2016, to determine what information had been publicly disclosed, but the parties did not meet.  Order to Release at 3; Response to Order Requesting Additional Information (dkt. 253) at 1 (explaining that because the government moved for De Novo determination, the parties have not conferred).[3]

The government filed a Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge as to whether the government must release the withheld documents.  See generally D Mot. De Novo (dkt. 244).  Pickard opposed.  P Opp'n to D Mot. De Novo (dkt. 246) at 1-2.  However, the Court required the parties to re-file, as their briefs inappropriately incorporated previous briefs.  See Order Terminating Motion, Vacating Hearing, Directing Filing of New Briefs, and Setting New Hearing Date (dkt. 255) at 2 ("Endless references to past briefs require the Court to scour the docket to determine what the parties are actually arguing.").  The government re-filed a Motion for De Novo Review of Judge Cousins's order, 2d Mot. for De Novo Review, Pickard has opposed that motion, Opp'n to 2d Mot. for De Novo Review (dkt. 264), and the government has replied, Reply re 2d Mot. for De Novo Review (dkt. 265).

//

_____

happened in the Apperson case—despite the Tenth Circuit's remand taking place approximately six months ago—and agreed to file a status report updating this Court on that litigation.  The Court continues to await that filing.

[3]  This Court also ordered the government to tell the Court what information within the file Skinner had publicly disclosed.  See Order Requesting Additional Information (dkt. 252).  The government requested that the Court make the Exemption 7(D) determination before it participated in the laborious task of combing through testimony.  See D Response to Order Requesting Additional Information (dkt. 253) at 1–2.  The Court granted the request.  See Order Regarding Request for More Information (dkt. 254).  Therefore, as previously noted, the Court does not know what material within the documents is presently in dispute.

**United States District Court**
For the Northern District of California

## II. LEGAL STANDARD

"The Freedom of Information Act was enacted to facilitate public access to Government documents." United States Dep't of State v. Ray, 502 U.S. 164, 173 (1991). The purpose of the Act is "'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" Id. (citing Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)). "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." Id.

"Pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b), and Civil Local Rule 72–3, a party may object to a magistrate judge's proposed findings and recommendations by filing a motion for a de novo determination of a dispositive matter[] referred to a magistrate judge." REO Capital Fund 4, LLC v. Fuller, No. 15–cv–03252-JST, 2015 WL 4941742, at *1 (N.D. Cal. Aug. 19, 2015).  The motion "must be filed within fourteen days of the magistrate's recommendation and must specifically identify the portions of the findings and recommendations to which the party objects, and the reasons for the objection(s)." Id.  Upon the filing of such a motion, the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." See 28 U.S.C.A. § 636(b)(1).  While Judge Cousins issued an order rather than a recommendation, the order references Fed. R. Civ. P. 72(b) regarding dispositive matters. See Order to Release at 4.

## III. DISCUSSION

The government argues that Judge Cousins erred in ordering the release of the three categories of material sought, because (A) official confirmation does not require any records to be released; (B) the threshold requirement of Exemption 7 has been met; (C) Exemption 7(D) applies to Skinner's name and the materials he disclosed; (D) Exemptions 7(F) and 7(C) apply to Skinner's name and the materials he disclosed; and (E) Exemption 7(E) applies to

1    Skinner's NADDIS number.  See generally 2d Mot. for De Novo Review.  This order

2    concludes that withholding is proper under Exemptions 7(D) and 7(E).

3         **A.    Official Acknowledgment[4]**

4         The government argues that official acknowledgment does not require the release of

5    any of the materials in this case for two reasons: first, because "the Ninth Circuit already

6    rejected [that argument] in this very case," and second, because Pickard has not made the

7    showing required.  2d Mot. for De Novo Review at 6–7.  Pickard responds that the Ninth

8    Circuit did not mean what it said about official confirmation, and that it is the government's

9    fault that he is unable to make the required showing.  Opp'n to 2d Mot. for De Novo Review

10   at 13–15.

11        **1.    Holding in Pickard re Official Acknowledgment**

12        As to the Ninth Circuit's holding in this case, the court explained: "[W]hen

13   information has been either 'officially acknowledged' or 'officially confirmed,' an agency is

14   not precluded from withholding information pursuant to an otherwise valid exemption claim;

15   however, a Glomar response is no longer appropriate. . . ."  Pickard, 653 F.3d at 786

16   (emphasis added).  The Ninth Circuit went on to cite to Wolf v. CIA, 473 F.3d 370, 379

17   (D.C. Cir. 2007), for the proposition that official acknowledgment related only to the

18   existence or nonexistence of records, and that the government was to either disclose any

19   officially acknowledged records or establish that the contents are exempt and that exemption

20   had not been waived.  Id.  It also cited Benavides v. DEA, 968 F.2d 1243, 1248 (D.C. Cir.

21   1992), for the proposition that "Congress intended to permit the DEA to withhold documents

22   under 7(C) and 7(D), even if the agency must, under subsection (c)(2) acknowledge their

23   existence."  Id.  Both Wolf and Benavides therefore recognize that official confirmation does

24   not necessarily negate the application of other exemptions.

25        Pickard argues that the sentence the government relies on from Pickard "is dicta" and

26   "likely the product of a drafting error."  Opp'n to 2d at 14.  The sentence is not dicta—it was

27

28        [4] Like the parties, this order uses the terms official acknowledgment, official confirmation, and the "public domain doctrine" interchangeably.

7

United States District Court
For the Northern District of California

central to the court's ruling both that a <u>Glomar</u> response was inappropriate once the government officially confirmed Skinner's status as a confidential informant, and that the parties were required to return to this Court and litigate the validity of any claimed exemptions.  Nor is there any plausible drafting error.  The cited portion of <u>Wolf</u> does not "state[] precisely the opposite" of what the court ordered here.  <u>See id.</u>  Rather, <u>Wolf</u> envisions that officially acknowledged records might still be subject to valid exemptions. <u>See Wolf</u>, 473 F.3d at 379.  That is what the <u>Pickard</u> court held as well.  <u>See Pickard</u>, 653 F.3d at 786.  Further undercutting the idea of a "drafting error," the court in <u>Pickard</u> repeated the same point a couple of pages later, explaining that while a <u>Glomar</u> response was "no longer available," "[t]his is not to say that the DEA is now required to disclose any of the particular information requested by Pickard."  <u>Pickard</u>, 653 F.3d at 788.  It explained that, having officially confirmed Skinner as an informant, the government was to produce a Vaughn index, "raise whatever other exemptions may be appropriate, and let the district court determine whether the contents, as distinguished from the <u>existence</u>, of the officially confirmed records may be protected from disclosure under the DEA's claimed exemptions." <u>Id.</u> (citing <u>Wolf</u> and <u>Benavides</u>).  The government is therefore correct that the ruling in this case defeats the argument that official confirmation of Skinner as a confidential informant merits the disclosure of all of the information Pickard seeks.  If the Ninth Circuit had believed that official confirmation worked as Pickard suggests, it could easily have said so.

### 2.    Requirements for Official Acknowledgment

As to the required showing for official acknowledgment, the court in <u>Pickard</u> explained:

> A fact is deemed "officially acknowledged" only if it meets three criteria: First, the information requested must be as specific as the information previously released.  Second, the information requested must match the information previously disclosed; we noted, for example, that official disclosure did not waive the protection to be accorded information that pertained to a later time period.  Third, we held that the information requested must already have been made public through an official and documented disclosure.

**United States District Court**
For the Northern District of California

Pickard, 653 F.3d at 786 (citing Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990)).  It is the plaintiff's burden to point to specific information in the public domain that appears to duplicate that being withheld.  See Davis v. Dep't of Justice, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (explaining that the ultimate burden of persuasion rests with the government but that a party who asserts a claim of prior disclosure must bear the initial burden or pointing to specific information).  "This is so because the task of proving the negative—that information has not been revealed—might require the government to undertake an exhaustive, potentially limitless search."  Id. at 1279.

There is no question that Pickard has successfully pointed to Skinner's name, which the government officially acknowledged.  See Pickard, 653 F.3d at 784 ("the government officially confirmed Skinner's status as an informant in open court in the course of official proceedings").  But the Court does not imagine that what Pickard seeks are entire documents with everything redacted but Skinner's name.  Moreover, as discussed below, Exemption 7(D) presents a formidable hurdle to disclosing even Skinner's name.

In his effort to obtain information Skinner has already disclosed and Skinner's NADDIS number, Pickard has failed entirely to point to specific information that the government is withholding and that matches information previously disclosed.  See Pickard, 653 F.3d at 786.  The government asserts: "he simply points to literally thousands of pages of Skinner's transcripts and court filings and asks this Court to order information released if it matches based on the government's review."  2d Mot. for De Novo Review at 7 (noting that there are ten volumes of testimony from Pickard's criminal trial, another transcript from the District of Kansas case, and 41 exhibits from a Northern District of Oklahoma case).  Pickard disputes this, saying that he "has repeatedly directed the government's attention to (1) the five days of public testimony Skinner provided . . . and (2) the numerous documents from Skinner's informant file (provided to him by the government) that Skinner has published in public court filings," see Opp'n to 2d Mot. for De Novo Review, but he has neither directed

United States District Court
For the Northern District of California

the Court to such materials, nor specified which materials overlap.[5]  Pickard actually agrees

that he "is unable to tie specific portions of Skinner's public testimony to specific withheld

documents," but he argues that this "is not a fault owing to Mr. Pickard.  Rather, the

government's refusal to provide specific descriptions of the withheld records renders such a

task impossible."  Id. at 14–15.  This argument, which Pickard repeated at the motion

hearing, fails because the Court has found the Vaughn index in this case acceptable.  See

generally Order Finding Vaughn Index Sufficient; Order Denying Mot. (dkt. 222).  It is also

curious that Pickard cannot make such a showing if in fact he already has access to an

unredacted copy of Skinner's file from the District of Kansas/Tenth Circuit litigation.

See Apperson, 642 F. App'x at 893.

Because Pickard has failed to make an adequate showing of official acknowledgment,

the Court will proceed to analyzing the claimed exemptions.[6]

**B.**     **Threshold Requirement**

All of the government's claimed exemptions in this case arise under Exemption 7,

which pertains to documents "compiled for law enforcement purposes."  See generally 2d

Mot. for De Novo Review (claiming application of Exemptions 7(D), 7(F), 7(C), and 7(E));

FBI v. Abramson, 456 U.S. 615, 622 (1982).  This Court has already held that the documents

---

[5] Pickard points to several documents that Skinner released through court filings.  See Habeas Exhibits at 33, 37, 42, 45, 50, 57, 74, 85, 90, 94, 99, 102 (dkt. 20-2).  However, even if some of those documents are being withheld under 7(D), Skinner's having released government documents does not trigger the public domain doctrine.  Pickard asserts that the government gave Skinner these documents, but Pickard has not shown an official disclosure by the government.  See Afshar v. Dep't of State, 702 F.2d 1125, 1133 (D.C. Cir. 1983).

[6] Pickard makes an additional argument that he should be permitted to take discovery in this case before a subsequent round of summary judgment.  See Opp'n to 2d Mot. for De Novo Review at 9–12.  He argues that "[g]iven the incomplete factual record present here, the Court need not . . . consider the government's exemption claims."  Id. at 11.  The Court denies this request, as Pickard has already unsuccessfully sought discovery in this case, see Order Denying Without Prejudice Plaintiff's Motion to Lift Stay of Discovery (dkt. 179) at 2 (quoting Lawyers' Committee for Civil Rights of S.F. Bay Area v. Dep't of the Treasury, 534 F. Supp. 2d 1126, 1132 (N.D. Cal. 2008) ("Discovery is usually not permitted in a FOIA case if the government's affidavits were made in good faith and provide specific detail about the methods used to produce the information.")).  No doubt Pickard would like to use discovery as another means of obtaining the same documents.  But "this circuit has affirmed denials of discovery where . . . the plaintiff's requests consisted of 'precisely what defendants maintain is exempt from disclosure to plaintiff pursuant to the FOIA.'"  Lane v. Dep't of Interior, 523 F.3d 1128, 1135 (9th Cir. 2008) (quoting Pollard v. FBI, 705 F.2d 1151, 1154 (9th Cir. 1983)).

**United States District Court**
For the Northern District of California

were all compiled for law enforcement purposes.  <u>See</u> Order Granting Defendant's Motion for Summary Judgment at 6 ("In view of the nature of plaintiff's FOIA request and the descriptions of the systems of records where responsive records likely would be located, the court is satisfied that any responsive records would be law enforcement records covered by FOIA Exemption 7.").  The evidence continues to support that conclusion.  <u>See</u> Tenth Supp. Little Decl. (dkt. 233-1) ¶ 7 ("The records requested by plaintiff were law enforcement records gathered in accordance with DEA's responsibilities under the Comprehensive Drug Abuse Prevention and Control Act of 1970.").

Pickard acknowledges that the government has satisfied the Exemption 7 threshold requirement for all the documents but one: "a letter written by the DEA to the CHP that describes one instance of the DEA intervening on Skinner's behalf to avoid criminal charges."  Opp'n to 2d Mot. for De Novo Review at 15.  Pickard argues that because the government represents that "it is not the practice of DEA to intervene on behalf of any individual to assist them in avoiding criminal prosecution," then "the letter falls outside DEA's practices and law enforcement mandate."  <u>Id.</u> (citing <u>Pratt v. Webster</u>, 673 F.2d 408, 420–21 (D.C. Cir. 1982); <u>Taylor v. DOJ</u>, 257 F. Supp. 2d 101, 108 (D.D.C. 2003)).

This argument is unpersuasive for two reasons.  First, having reviewed the document, the Court observes that it was plausibly compiled for law enforcement purposes.  Second, as Pickard is only currently seeking materials that Skinner disclosed, and the only disclosure of this information appears to have come from Skinner's wife, <u>see</u> Rumold Decl. Ex. E at 63, the document is not subject to disclosure in this motion.  Accordingly, the government has met the threshold requirement of Exemption 7—that the relevant documents be compiled for law enforcement purposes—and so the Court will turn to the individual claimed exemptions.

### C.    **Exemption 7(D)**

The first individual exemption the government asserts is Exemption 7(D).  Exemption 7(D) allows the government to withhold law enforcement records or information if it "could reasonably be expected to disclose the identity of a confidential source. . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a

**United States District Court**
For the Northern District of California

criminal investigation, . . . information furnished by a confidential source." 5 U.S.C. § 552 (b)(7)(D). The government argues here that "[u]nder the plain language of the statute, Skinner's name is properly withheld because it would literally disclose the identity of a confidential source, and information Skinner provided is properly withheld, even if he later testified about it, because it would literally disclose information furnished by a confidential source." 2d Mot. for De Novo Review at 8. The government asserts: "Exemption 7(D) cannot be waived." Id. Pickard disagrees, arguing that because the government officially confirmed Skinner as a DEA informant, because Skinner testified, and because the government provided documents to Skinner, "continued withholding . . . under Exemption 7(D) is improper." Opp'n to 2d Mot. for De Novo Review at 16. The Court agrees with the government.

### 1. Ninth Circuit Authority on Exemption 7(D)

Unfortunately, there is no particularly relevant precedent from the Ninth Circuit on Exemption 7(D).

Pickard asserts that "In this circuit, an informant's public testimony waives Exemption 7(D)'s protection for all information provided by the informant—even if that information was not disclosed at trial." See Opp'n to 2d Mot. for De Novo Review at 16 (citing Van Bourg, Allen, Weinberg & Roger v. NLRB, 751 F.2d 982, 986 (9th Cir. 1985)). That assertion misrepresents Van Bourg, however, which involved a labor investigation, not a criminal investigation, and which turned on whether the informant was truly a confidential source. See 751 F.2d at 986 ("for exemption 7(D) to be applicable, there must be a finding that the source of the affidavit was explicitly or implicitly guaranteed confidentiality."). Van Bourg provides no support for Pickard's argument at the motion hearing that once an informant testifies, he loses his expectation of confidentiality; instead Van Bourg focuses on the informant's understanding at the time that he provided information to the government. The Ninth Circuit noted that individuals who submit affidavits to the NLRB "have no reasonable expectation of confidentiality and should expect their names and testimony to be revealed if the investigation results in a formal hearing." Id. In other words, there was no

United States District Court
For the Northern District of California

confidential source in <u>Van Bourg</u> to begin with.[7]  That is an altogether different scenario than this case, in which there is no question that Skinner was a confidential informant in a criminal investigation.  <u>See</u> <u>Pickard</u>, 653 F.3d at 788 (referencing "Skinner's status as a confidential informant in Pickard's case").[8]

The government claims that <u>Prudential Locations LLC v. Dept. of Housing & Urban Development</u>, 739 F.3d 424 (9th Cir. 2013), serves as precedent, but that case was primarily about Exemption 6.  The Ninth Circuit in <u>Prudential Locations</u> explained that, under Exemption 7(D), "[i]f the individual is a 'confidential source,' that is the end of the matter; there is no need to balance the individual's privacy interest against the public interest in disclosure, as is required under Exemption 6."  739 F.3d at 434.  The government clings to the "end of the matter" language, and also relies on the language from <u>Church of Scientology of Cal. v. Dep't of Justice</u>, 612 F.2d 417, 426–27 (9th Cir. 1979), stating that Exemption 7(D) must be interpreted according to its "plain meaning."  <u>See</u> 2d Mot. for De Novo Review at 8.  While both cases mildly support the government's position, neither involves a confidential informant who has testified in criminal proceedings and disclosed some information.

### 2.   Out-of-Circuit Authority on Exemption 7(D)

More helpful is authority from other circuits.

The landmark case about Exemption 7(D) is the en banc decision in <u>Irons v. FBI</u>, 880 F.2d 1446 (1st Cir. 1989), which both the government and Pickard rely on in support of their positions.  <u>See</u> 2d Mot. for De Novo Review at 8, 10–11; Opp'n to 2d Mot. for De Novo

---

[7] This is also how the First Circuit interpreted <u>Van Bourg</u>.  <u>See</u> <u>Irons v. F.B.I.</u>, 880 F.2d 1446, 1455 (1st Cir. 1989) (characterizing <u>Van Bourg</u> as a case about "whether a source, <u>knowing he is likely to testify at the time he furnishes information</u> to the agency, is, or remains after testimony, a 'confidential source' within the meaning of the statute") (emphasis added).  <u>See also</u> <u>Parker v. Dep't of Justice</u>, 934 F.2d 375, 381 (D.C. Cir. 1991) (finding <u>Van Bourg</u> "inapposite" and noting that it involved civil law enforcement, whereas the second clause of Exemption 7(D) involves criminal law enforcement).

[8] Pickard suggests that "the government has failed to demonstrate that an adequate 'express' or 'implied' assurance of confidentiality was provided to Skinner," Opp'n to 2d Mot. for De Novo Review at 17, but this argument fails: it is the law of the case that Skinner was a confidential informant.  Furthermore, the DEA explicitly assured Skinner confidentiality.  <u>See</u> Tenth Supp. Little Decl. ¶ 13; <u>in camera</u> materials.

Review at 16–17, 19.  Importantly, the court in <u>Irons</u> explicitly did not rule on whether public testimony could waive Exemption 7(D) protection for information publicly disclosed at trial. <u>See</u> <u>Irons</u>, 880 F.2d at 1448.[9]  The court's holding, which Pickard's counsel read aloud at the motion hearing, was "that public testimony by 'confidential sources' cannot 'waive' the FBI's right under the second clause of exemption 7(D) to withhold 'information furnished by a confidential source' and <u>not actually revealed in public</u>." <u>Id.</u> at 1456–57 (emphasis added). The court noted, however, that some courts have held that even information disclosed at trial is protected under Exemption 7(D).  <u>See id.</u> at 1448 (citing <u>L & C Marine Transport, Ltd. v. United States</u>, 740 F.2d 919, 925 (11th Cir. 1984); <u>Lame v. Dep't of Justice</u>, 654 F.2d 917, 925 n.8 (3d Cir. 1981); <u>Lesar v. Dep't of Justice</u>, 636 F.2d 472, 491 (D.C. Cir. 1980)).

Even though <u>Irons</u> did not reach the issue of materials publicly disclosed by an informant, it unambiguously held that Exemption 7(D) cannot be waived, and it provided extensive support for that conclusion.  <u>See</u> <u>Irons</u>, 880 F.2d at 1448–49.  First, the court noted that neither the plain language of Exemption 7(D) "nor any other relevant language, says anything at all about 'waiver.'  Other courts (indeed virtually all other courts) have interpreted the statute's language literally in this respect."  <u>Id.</u> at 1449.  The court cited approvingly to <u>Lame</u>, 654 F.2d at 925, which held that "<u>all</u> the information given by a confidential source is exempt," and that "the subsequent disclosure of information originally given in confidence does not render nonconfidential <u>any</u> of the information originally provided."  <u>Id.</u>  Second, the court examined the legislative history, concluding that Congress intended "a literal interpretation," as it intended the exemption "to help law enforcement agencies to recruit, and to maintain, confidential sources; its object was not simply to protect the source, but also to protect the flow of information to the law enforcement agency."  <u>Id.</u>[10] Third, the court observed that circuits have "specifically interpreted the 'information furnished' exemption to apply irrespective of subsequent public identification of the source"

---

[9]  This is because the FBI in that case did not contest the plaintiff's request for information revealed by confidential sources at trial.  <u>See id.</u>  The government has taken a different position here.

[10]  <u>See also</u> <u>Church of Scientology</u>, 612 F.2d at 426 ("paramount concern was the loss of sources of confidential information").

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

and "irrespective of the nature of the information (so long as the information meets the criteria in the exemption)." Id. at 1452. Fourth, the court explained that, "while courts in some exemption 7(D) cases have used the word 'waiver,' . . . they have not used that word in any context or in any way that argues for application of a 'waiver doctrine' in the type of case before us." Id.[11] Fifth, the court held that creating a waiver exception would "run[] afoul of the statute's intent to provide 'workable' rules." Id. at 1455–56 (internal quotation marks omitted).

Irons did not, as Pickard claims, "[find] that Exemption 7(D) did not apply to (1) the identity of an informant . . . ; and (2) information that was actually disclosed by the informant in public testimony." See Opp'n to Mot. for De Novo Review at 17; Moffat v. Dep't of Justice, 716 F.3d 244, 253 (1st Cir. 2013) (observing that Irons "reserved the question of whether 7(D) continues to apply to the specific information that has already been publically disclosed"). Moreover, given its logic and reasoning, the most plausible reading of Irons is that Exemption 7(D) applies to such information. See Irons, 880 F.2d at 1456 ("exemption 7(D) contains language that, without qualification, exempts from disclosure 'information furnished by a confidential source.'").

Other courts to actually address the issue of information derived from a confidential source and subsequently publicly disclosed have held that Exemption 7(D) applied.[12] In

---

[11] In this section, the court criticized the "single district court case" to "hold that actual testimony waives the right to nondisclosure," an opinion from this district. Irons, 880 F.2d at 1455 (discussing Powell v. Dep't of Justice, 584 F. Supp. 1508, 1530 (N.D. Cal. 1984)). The court explained that "[t]hat case . . . speaks only about the waiver of the right to withhold a source's 'identity' once the source has testified; it says nothing about disclosure of the information furnished by the source." Id. It also observed that the Powell court confused the notion of "confidential" with "secret," "which, as we have noted above . . . is not the proper interpretation." Id. Powell is also distinguishable because it turns on whether "persons who supplied information . . . did so under an implied inference of confidentiality." Powell, 584 F. Supp. at 1529. The court in Powell stated that it would "carefully review the documents to determine the specific circumstances under which the source agreed to testify and [would] then decide whether an implied assurance can reasonably be inferred." Id. at 1530. Again, in our case, there is no reasonable dispute that Skinner was a confidential informant.

[12] Pickard cites to Hidalgo v. F.B.I, No. 04–0562 (JR), 2005 WL 6133690, at *2 (D.D.C. Sept. 29, 2005), and Powell, 584 F. Supp. at 1529, to support his argument that official confirmation waives Exemption 7(D). See Opp'n to 2d Mot. for De Novo Review at 16. But Hidalgo involves the use of a Glomar response, not Exemption 7(D). See Hidalgo, No. 04–0562 (JR), 2005 WL 6133690, at *2 (D.D.C. Sept. 29, 2005) (also holding that Exemption 7(D) might be appropriate if the government were

United States District Court
For the Northern District of California

1    Ferguson v. FBI, 957 F.2d 1059, 1068 (2d Cir. 1992), the Second Circuit endorsed the

2    reasoning in Irons and "reject[ed] the idea that subsequent disclosures of the identity of the

3    confidential source or of some of the information provided by a confidential source requires

4    full disclosure of information provided by such a source."  The court explained that

5    "Exemption 7(D) is concerned not with the content of the information, but only with the

6    circumstances in which the information was obtained."  Id. at 1069.  In Parker v. Dep't of

7    Justice, 934 F.2d 375, 380 (D.C. Cir. 1991), the D.C. Circuit held that "once an agency

8    establishes that it received the requested information in confidence, 'the source will be

9    deemed a confidential one, and both the identity of the source and the information he or she

10   provided will be immune from FOIA disclosure.'"  In Lame, 654 F.2d at 925, one of the

11   cases discussed in Irons, the Third Circuit explained that "once there has been an expressed

12   or implied assurance of confidentiality, a subsequent release or publication by the

13   government of a portion of the information does not negate the exemption for any of the

14   information originally given."[13]  In Neely v. FBI, 208 F.3d 461, 466 (4th Cir. 2000), the

15   Fourth Circuit relied on the Supreme Court's explanation of "confidential source" in

16   Department of Justice v. Landano, 508 U.S. 165 (1993), concluding that "in Landano, the

17   Supreme Court defined 'confidential source' in terms of the 'understanding' reached between

18

19   to acknowledge the existence of responsive records and sought an appropriate 7(D) exemption using
     a Vaughn index).  As discussed above, Powell, in which a court in this district found that testimony in
20   court waives an informant's right to withhold his identity, is distinguishable.  See Powell, 584 F. Supp.
     at 1529.  Pickard also cites to Marino v. DEA, 685 F.3d 1076, 1082 (D.C. Cir. 2012), for the proposition
21   that "a federal prosecutor's decision to release information [concerning an informant] at trial is enough
     to trigger the public domain exception," Opp'n to 2d Mot. for De Novo Review at 18, but that case also
22   involved the propriety of a Glomar response, and not Exemption 7(D).  See Marino, 685 F.3d at
     1078–79 (DEA issued Glomar response, invoking Exemption 7(C)).  That section of Pickard's brief
23   also cites, without an explanatory parenthetical, Irons, for the proposition that when the government
     discloses the source's identity, it cannot subsequently withhold the information in response to a FOIA
24   request.  See Opp'n to Mot. for De Novo Review at 18.  However the cited pages in Irons include the
     explanation that "exemption 7(D) contains language that, without qualification, exempts from disclosure
25   'information furnished by a confidential source.'"  Irons, 880 F.2d at 1456.

26       [13]  The court explained that a source's testimony might be evidence that there had not been an
     assurance of confidentiality.  Id.  Again, that is not an issue here.  Lame further explained: "Exemption
27   7(D) differs from other FOIA exemptions in that its applicability depends not on the specific factual
     contents of a particular document; instead, the pertinent question is whether the information at issue was
28   furnished by a 'confidential source' during the course of a legitimate criminal law investigation.  Once
     that question is answered in the affirmative, all such information obtained from the confidential source
     receives protection."  Id., 654 F.2d at 925.

the informant and the FBI at the time the information was communicated to the FBI, not in terms of whether the information subsequently remained non-public." The Fourth Circuit held that "a source could remain a 'confidential source' for purposes of Exemption 7(D), even if the source's communication with the FBI is subsequently disclosed at trial or pursuant to the government's Brady obligations." Id. (citing Landano, 508 U.S. at 173–74). See also Kimberlin v. Dep't of Treasury, 774 F.2d 204, 209 (7th Cir. 1985) ("The disclosure of information given in confidence does not render non-confidential any of the information originally provided."); Kiraly v. FBI, 728 F.2d 273, 278 (6th Cir. 1984) (discussing legislative intent behind Exemption 7(D) and concluding that it "protects without exception and without limitation the identity of informers," even where individual's identity as FBI informant was already known).

Pickard tries to steer the Court away from the weight of the authority on this issue with two arguments: one involves trying to distinguish that authority, and the other involves the D.C. Circuit, which has held that official acknowledgment can waive Exemption 7(D).

Pickard first tries to distinguish Ferguson, 957 F.2d 1059, Kiraly, 728 F.2d 273, and Parker, 934 F.2d 375, just three of the cases upon which the government relies. See Opp'n to 2d Mot. for De Novo Review at 18–19. Pickard asserts that in these cases, state governments were eliciting testimony about a federal confidential informant, and that "no informant was ever confirmed by the federal government." Id. However, courts do not seem to focus on the state/federal dynamic, or on whether it was the informants or the government that revealed the informants' status. In fact, the Ferguson court explained that "[t]he statutory language does not leave room for a judicial balancing of the equities, or for a determination of whether any harm would result from disallowing an exemption." Ferguson, 957 F.2d at 1069. By that reasoning, Exemption 7(D) would still cover information disclosed publicly even if doing so seemed meaningless. Further, the Irons court noted that "[t]he words 'furnished by a confidential source' do not mean that the information or identity of the source is secret; they simply mean that the information was 'provided in confidence' at the time it was

17

1  communicated to the [DEA]." See Irons, 880 F.2d at 1448.  Accordingly, Pickard's attempt

2  to distinguish some of the relevant authority is unpersuasive.

3      More significant is Davis, 968 F.2d 1276, which Pickard just briefly mentions.  Davis

4  chiefly concerned the burden of proof when the government asserted a number of

5  exemptions, including Exemption 7(D), and the plaintiff claimed that the tapes at issue had

6  already been publicly disclosed at trial.  968 F.2d at 1279.  The court noted that the

7  government was willing to give the plaintiff "only exactly what he can find in hard copy,"

8  requiring "the requester to point to 'specific' information identical to that being withheld."

9  Id. at 1280.  "It does not suffice to show . . . that some of the tapes were played to shift the

10 burden to the government"—the plaintiff had to "point to specific information in the public

11 domain."  Id.  The court in Davis agreed that because the informant was a confidential

12 source, "the application of Exemption 7(D) is automatic."  Id. at 1281.  It observed that

13 "[e]ven when the source testifies in open court . . . he does not thereby 'waive the

14 [government's] right to invoke Exemption 7(D) to withhold . . . information furnished by a

15 confidential source not actually revealed in public."  Id. (citing Parker, 934 F.2d at 379–80).

16 It went on to hold, however, that "[t]he government is obliged to disclose only the 'exact

17 information' to which the source actually testified."  Id. (citing Dow Jones & Co. v. Dep't of

18 Justice, 917 F.2d 571, 577 (D.C. Cir. 1990)).

19     The court in Dow Jones & Co., had held that in extraordinary circumstances, "if the

20 exact information given to the FBI has already become public, and the fact that the informant

21 gave the same information to the FBI is also public, there would be no grounds to withhold."

22 917 F.2d at 577.  However, "[t]he requester will rarely, if ever, have absolutely solid

23 evidence showing that the source of an FBI interview in a law enforcement investigation has

24 manifested complete disregard for confidentiality."  See id. at 577, n.5 ("One can imagine,

25 for instance, a source falsely describing publicly what he or she told the FBI privately.").[14]

26 And indeed, in Davis, the court explained that "[w]hat that means for this case, essentially, is

27

28      [14]  Documents from the in camera review suggest that Skinner has publicly lied about what he
       told the DEA.

United States District Court
For the Northern District of California

that the government is entitled to withhold the tapes obtained through the informant's assistance unless it is specifically shown that those tapes, or portions of them, were played during the informant's testimony."  968 F.2d at 1281.

Davis therefore shows the D.C. Circuit recognizing the application of the official acknowledgment doctrine to Exemption 7(D).  See also Cobar v. Dep't of Justice, 81 F. Supp. 3d 64, 72 (D.D.C. 2015) (relying on Parker and Irons, holding in Exemption 7(D) context that "for information or a record to lose its protected status based on public disclosure, the information must truly be in the public domain and there must be an exact identity between the publicly disclosed information or document and the information or documents sought under the FOIA.").[15]  Other circuits have not so held.  See, e.g., Lame, 654 F.2d at 925 (citation omitted) ("once there has been an expressed or implied assurance of confidentiality, a subsequent release or publication by the government of a portion of information does not negate the exemption for any of the information originally given.").  And the Ninth Circuit has not reached the issue.

Because this Court finds persuasive the numerous courts to focus on whether information was originally given in confidence, regardless of whether or not that information later becomes public, this Court holds that Exemption 7(D) justifies the withholding of Skinner's name and the information he has publicly disclosed.[16]  The Court notes that because it does not know which portions of which of the documents in the in camera materials are "information Skinner has publicly disclosed," the Court cannot independently

---

[15] That court also stated that a more difficult question was whether official confirmation of a confidential source's identity required disclosure of information that would identify or tend to identify the source.  Id. (emphasis in original).  The court relied on Parker in holding that "public disclosure of the identity of a confidential source does not waive Exemption D's applicability."  Id.

[16] Even if this circuit were to adopt the D.C. Circuit's reasoning and hold that information officially confirmed (as opposed to merely publicly disclosed) cannot be withheld under Exemption 7(D), the Court would conclude that Pickard has not met his burden of demonstrating specific instances of official confirmation—aside from Skinner's name.  See Pickard, 653 F.3d at 786; Mobil Oil Corp. v. EPA, 879 F.2d 698, 702–03 (9th Cir. 1989).  Again, the Court cannot imagine that what Pickard seeks in this motion are entire documents with everything redacted but Skinner's name.  Moreover, the government might argue (although it has not yet) that releasing the exact number of times the file mentions Skinner's name might reveal more than the information in the public domain (such as, the degree of interaction he had with the DEA).

**United States District Court**
For the Northern District of California

1   verify whether all such information is covered by Exemption 7(D).  However, the

2   government represented to the Court at the motion hearing that all of the "information

3   Skinner has publicly disclosed" is covered by Exemption 7(D), the Court's in camera review

4   of the broader set of responsive materials gives it no reason to doubt this characterization,

5   and—though he contends that the government/Skinner has <u>waived</u> Exemption 7(D)—Pickard

6   has not disputed that the relevant materials "could reasonably be expected to disclose the

7   identity of a confidential source" or constitute "information furnished by a confidential

8   source."  <u>See</u>  5 U.S.C. § 552 (b)(7)(D).

9        **D.      Exemptions 7(F) and 7(C)**

10       The next individual exemptions the government asserts for Skinner's name and the

11  information he has publicly disclosed are Exemptions 7(F) and 7(C).  Exemption 7(F) allows

12  the government to withhold law enforcement records or information if they "could

13  reasonably be expected to endanger the life or physical safety of any individual."  <u>See</u> 5

14  U.S.C. § 552 (b)(7)(F).  Exemption 7(C) allows the government to withhold law enforcement

15  records or information if they "could reasonably be expected to constitute an unwarranted

16  invasion of personal privacy."  <u>See</u> 5 U.S.C. § 552 (b)(7)(C).  Both of these exemptions

17  require the Court to do a document-by-document review—in the case of 7(F), to determine

18  whether material in one document might endanger Skinner's life but material in another

19  might not, and in the case of 7(C), to balance the relevant privacy and public interests

20  implicated by material in each document.  <u>See</u> <u>Van Bourg v. NLRB</u>, 656 F.2d 1356, 1358

21  (9th Cir. 1981) (courts are to "state in reasonable detail the reasons for its decision as to each

22  document in dispute").

23       Because the Court does not know which portions of which of the documents in the in

24  camera materials are "information Skinner has publicly disclosed," the Court cannot conduct

25  such a review.  The Court is also concerned that Pickard's request, which would require the

26  government to compile a subset of the in camera documents in a form that is presently

27  unavailable to the general public, is problematic under <u>Department of Justice v. Reporters</u>

28

United States District Court
For the Northern District of California

Committee For Freedom of the Press, 489 U.S. 749 (1989).[17]  Accordingly, rather than opine

on matters in the abstract, the Court does not reach the parties' arguments as to Exemptions

7(F) or 7(C).

### E.    Exemption 7(E)

Finally, the government asserts Exemption 7(E) as the basis for its withholding of

Skinner's NADDIS number. 2d Mot. for De Novo Review at 18–20.  Exemption 7(E) allows

the government to withhold law enforcement records or information if they "would disclose

techniques and procedures for law enforcement investigations or prosecutions, or would

disclose guidelines for law enforcement investigations or prosecutions if such disclosure

could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552 (b)(7)(E).

The Ninth Circuit recently clarified that the restrictive language, "if such disclosure could

reasonably be expected to risk circumvention of the law," only applies to the second clause,

which means that the first clause, "would disclose techniques and procedures for law

enforcement investigations or prosecutions," is sufficient for withholding.  See Hamdan v.

Dep't of Justice, 797 F.3d 759, 778 (9th Cir. 2015).  In other words, the first clause "provides

categorical protection for techniques and procedures used in law enforcement investigations

or prosecutions" and "requires no demonstration of harm or balancing of interests."  See

Keys v. Dep't of Homeland Sec., 510 F. Supp. 2d 121, 129 (D.D.C. 2007) (internal quotation

marks, citations and brackets omitted).  However, "7(E) only exempts investigative

techniques not generally known to the public."  See Rosenfeld v. Dep't of Justice, 57 F.3d

803, 815 (9th Cir. 1995) (affirming the district court's decision that a pretext phone call is a

well-known investigative technique, and thus not protected by exemption 7(E)).

The government argues that disclosing Skinner's NADDIS number would disclose a

law enforcement technique, and that the use of NADDIS numbers is not generally known to

the public.  2d Mot. for De Novo Review at 19.  In support of those assertions, the

---

[17]  Reports Committee, 489 U.S. at 764, recognized that "[p]lainly there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information."

**United States District Court**
For the Northern District of California

government relies primarily on their agent's declaration. Id. The declaration states that NADDIS numbers are a part of the DEA's procedure; they are "part of the DEA's system of identifying information and individuals" and are used "within the DEA investigative records system as directed by the DEA Agents Manual." Tenth Supp. Little Decl. ¶ 17. NADDIS numbers are "assigned to drug violators and suspected drug violators known to DEA and entities that are of investigative interest. Each number is unique and is assigned only to one violator within DEA NADDIS indices." Id. ¶ 19. They "are assigned by DEA for internal use only" and "relate solely to internal DEA investigative practices and guidelines." Id. ¶ 17. "The precise manner in which NADDIS functions and the manner in which NADDIS numbers are assigned and utilized by DEA is not commonly known to the general public." Id. ¶ 21.

At the motion hearing, the Court challenged the notion that disclosing a single NADDIS number really "would disclose techniques and procedures." See 5 U.S.C. § 552 (b)(7)(E). Pickard had argued in his briefing that he does not "seek information about how the government uses the NADDIS system. . . only . . . the release of a single number." Opp'n to 2d Mot. for De Novo Review at 25. At first blush, it appeared that the government had disclosed more information about the NADDIS procedures in its declaration in this case than would be disclosed if the government were to simply release Skinner's NADDIS number to Pickard. But the government argued persuasively that the DEA uses a particular method to assign NADDIS numbers, and that the more NADDIS numbers get out, the more people will be able to discern that methodology. Documents released pursuant to FOIA are released to all of the world; the Court must therefore consider the release of Skinner's NADDIS number not only to Pickard but to "the general public." See Lahr v. NTSB, 569 F.3d 964, 977 n.12 (9th Cir. 2009). If Skinner's number is released, and other numbers are released, then the public might be able to deduce, for example, that the DEA assigns individuals NADDIS numbers starting with 1 if those individuals are cooperating with the government, or live in a particular state, or have a criminal history, or have a particular racial makeup, or any number of other characteristics.

Pickard argues that a NADDIS number is a technique generally known to the public. See Response to Tentative at 8 (dkt. 237).[18] He cites to a few instances in which NADDIS numbers have surfaced, although that evidence does not support his position.  See Opp'n to 2d Mot. for De Novo Review at 25.  In Zavala v. DEA, 667 F. Supp. 2d 85, 97 (D.D.C. 2009), the court did refer to an individual's NADDIS number—by number—but held that NADDIS numbers properly and "routinely are withheld" under Exemption 2.  Rumold Decl. Ex. J, which pertained to the purported NADDIS number of an individual named Owsley Stanley involves a deceased individual; moreover, the government objects to this evidence as unauthenticated, see 2d Mot. for De Novo Review at 20, re doc. # 173-1, Ex 1, Ex. A.  And in Marino v. DEA, 15 F. Supp. 3d 141, 146 (D.D.C. 2014), while the court observed that "Marino suspected that 3049901 was the NADDIS number assigned to Lopez, and therefore, his request effectively sought the DEA's investigative file on Lopez," the court did not disclose (or confirm) the NADDIS number and merely held that the government could not use a Glomar response.  None of Pickard's cases involve courts granting FOIA requests to disclose NADDIS numbers.

On the other hand, there is precedent for withholding NADDIS numbers under Exemption 7(E).  In Miller v. Dep't of Justice, 872 F. Supp. 2d 12, 29 (D.D.C. 2012), the court stated that "[b]ecause the NADDIS numbers were created for a law enforcement purpose and their disclosure may disclose techniques and procedures for law enforcement investigation, this Court finds that they are properly withheld under Exemption 7(E)."  The court also observed that NADDIS numbers "reflect procedures prescribed by the DEA Agents Manual, which according to defendant, identify law enforcement techniques."  Id. at 28–29 (internal quotation marks omitted).  Other courts have also so held.  See, e.g., Dorsey

---

[18]  Pickard also argues that Skinner has publicly released his NADDIS number.  See id. at 7; Opp'n to 2d Mot. for De Novo Review at 25.  The government objects to the authenticity of the number because the DEA did not release it.  See D Reply to Tentative (dkt 239) at 8.  It appears that Skinner released a number himself, see P Response at 7, and so this is not an official confirmation issue.  In any case, this appears to be a red herring: whether or not Skinner's NADDIS number has been released (or whether Pickard already knows it), see Reply re 2d Mot. for De Novo Review at 25 ("Skinner's NADDIS number, 2002804, is already publicly available through a number of channels.  In fact, it has been in the record of this case for years."), what matters is whether the investigative technique is generally known, not whether one individual's number is known.

v. Executive Office for U.S. Attorneys, 83 F. Supp. 3d 347, 357 (D.D.C. 2015); Ortiz v. Dep't of Justice, 67 F. Supp.3d 109, 123 (D.D.C. 2014); Higgins v. Dep't of Justice, 919 F. Supp. 2d 131, 150–51 (D.D.C. 2013).[19]  And the Ninth Circuit appears to have adopted its reasoning on this exemption from the D.C. district courts.  See Rosenfeld, 57 F.3d at 815 (citing D.C. district court opinions, stating, "[w]e agree with these courts' reasoning, and adopt it as the law of this Circuit.").

Because the Court concludes that disclosing Skinner's NADDIS number would reveal techniques and procedures that are not generally known to the public, the Court holds that withholding is proper under Exemption 7(E).

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion for de novo review, and HOLDS that the government may withhold (1) Skinner's name and information Skinner has publicly released under Exemption 7(D), and (2) Skinner's NADDIS number under Exemption 7(E).

**IT IS SO ORDERED.**

Dated: November 15, 2016

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

---

[19] See also O'Reilly, Federal Information Disclosure § 17:120 ("Because NADDIS numbers were created for a law enforcement purpose and their disclosure may disclose techniques and procedures for law enforcement investigation, the codes are properly withheld under Exemption 7(E)." (citing Miller, 872 F. Supp. 2d 12).